## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

J.F., by and through J.A., and J.A.,

*Plaintiff,*

v.

FULTON COUNTY SCHOOL
DISTRICT,
*Defendant.*

CIVIL ACTION
FILE NO.

## COMPLAINT FOR PREVAILING PARTY
## ATTORNEYS' FEES AND COSTS

## COMPLAINT

This is an action for reasonable attorneys' fees and costs for prevailing in

an action under the Individuals with Disabilities Education Improvement Act

("IDEA"), 20 U.S.C. § 1400, *et seq.* pursuant to the process set out for recovery of

fees in Mitten v. Muscogee County School District, 877 F.2d 932 (11th Cir. 1989).

1.

Plaintiffs, J.F. ("J.F."), a student with disabilities as defined by IDEA, by

and through his mother, J.A., and J.A. individually (collectively "the Family")

bring this civil action for Attorneys' Fees and Costs of Litigation against

Defendant Fulton County School District ("District" or "FCSD"), after having

prevailed against FCSD on IDEA claims before an administrative law judge[1] ("ALJ") of the Office of State Administrative Hearings, State of Georgia ("OSAH"). The Family, having prevailed on the merits of their IDEA claims and having been awarded the relief sought in that administrative action, are entitled to bring an action in this Court and recover the reasonable fees and costs for all actions and proceedings brought under the Act pursuant to 20 U.S.C. § 1415(i)(3) and 34 C.F.R. § 300.517. FCSD did not appeal the decisions of the ALJ against it with the entry of the "Final Decision" of the extensive administrative hearing procedure established under federal and state law. Affixed hereto is a true and accurate copy of the "Final Decision" of the Georgia ALJ.  Attached hereto as Exhibit A.

2.

IDEA creates a system of procedural protections for the child with a disability, including the challenge and hearing upon which the Family prevailed, and "[f]inally and most importantly, parents may recovery attorney fees if they prevail," *Schaffer v. Weast*, 546 U.S. 49, 61 (2005). This right lies in a specifically created independent statutory cause of action for attorney's fees and costs for a parent who prevails in the IDEA administrative hearing under 20 U.S.C. § 1415(f), (i)(2004).  This cause of action is separate and distinct from claims

---

[1] See 20 U.S.C. § 1415(i)(3)(2004).  IDEA recognizes independent claims for the student, J.F., and the parent, J.A.  For the purposes of this complaint no distinction is necessary and we will refer to the plaintiff solely as J.F.

challenging a district's program and placement for the child and that is subject to its own statute of limitations. <u>Mitten</u>, *infra*; <u>Zipperer v. Sch. Bd. of Seminole Cnty, Fla.</u>, <u>111 F.3d 847</u> (11th Cir. 1997); <u>see also e.g.</u>, <u>Meridian Joint Sch. Dist. No. 2 v. D.A.</u>, <u>792 F.3d 1054</u> (9th Cir. 2015); <u>Suarez Martinez v. Commonwealth of Puerto Rico</u>, <u>31 F.Supp.3d 334</u> (D.P.R. 2014); <u>P.M. v. Evans-Brant Cent. Sch. Dist.</u>, 58 IDELR 72 (W.D.N.Y.2012)[2]; <u>Doe v. Boston Public Schools</u>, 64 IDELR 296 (D. Mass. Jan. 23, 2015).[3] The Family's claims are timely. <u>Zipperer</u>, <u>111 F.3d at 847</u>.  As the administrative court does not have jurisdiction to award fees and costs, <u>see Mitten</u>, the Family's claims necessarily must be brought separately from the administrative action and in federal court.  See <u>Zipperer</u>, <u>111 F.3d at 847</u>.   In the absence of a specific IDEA fee provision, which was initially enacted in the Handicapped Children's Protection Act of 1986, Pub. L. 99-372, <u>100 Stat. 796</u> (Aug. 6, 1986) and currently found at Section 1415(i)(3)(B), the fee jurisprudence under <u>42 U.S.C. § 1983</u> generally applies. <u>Mitten</u>, <u>877 F.2d at 936</u>.

3.

The Family has attempted to confer with FCSD to resolve these claims before filing this case, but they have been unable to do so.  Once the impasse was apparent to the Family, the Family gave Defendant notice of their intent to

---

[2] The IDELR is the Individuals with Disabilities Education Law Reporter.
[3] Under earlier codifications of IDEA when <u>Mitten</u> and <u>Zipperer</u> were entered by the Eleventh Circuit Court of Appeals the fee provision was found at <u>20 U.S.C. § 1415(e)(2)</u> and <u>(4)</u>, but was recodified at <u>20 U.S.C. § 1415(i)(3)(B)-(G)(2004)</u>.

proceed with this matter.  Though the matter is final and the right to fees clear,

FCSD has made no offer, nor engaged in any discussions or negotiations to try

and resolve this claim.

4.

The Family having substantially succeeded on the material claims brought

in the administrative due process case are "prevailing parents" as that term is

used under IDEA's fee provision. 20 U.S.C. § 1415(i)(3)(B)-(F) (2004). See 20

U.S.C. § 1415(i)(3)(B)(i)(I) ("to a prevailing party who is the parent").

5.

The Family, as prevailing parents, were forced into due process seeking to

enforce J.F.'s right to receive appropriate educational services in the least

restrictive environment.  The Family having significantly prevailed on the

objectives of the case as it has through an order and *judical imprimatur*

significantly and finally altered the legal relationship between the parties by

contesting and prevailing on the inappropriateness of FCSD's placement of J.F. in

a segregated program exclusively for students with disabilities that exhibit

chronic and severe behavioral challenges, when such placement should have

been restricted under FCSD procedures and state law only to students who

cannot be educated in the traditional public school setting.  J.F. further prevailed

at trial on the impropriety of J.F.'s placement in the more restrictive segregated

program for the duration of the 2018-2019 school year, and the first half of the

2019-2020 school year.  J.F. further significantly prevailed at trial on their contesting of FCSD's continuing failure to provide J.F. "free appropriate educational services" (FAPE), 20 U.S.C. § 1401(9)(2004), consisting of necessary "special education and related services," 34 C.F.R. §§ 300.34 and 300.37, in the least restrictive environment (LRE), 20 U.S.C. § 1412(a)(5); 34 C.F.R. §§ 300.114-300.117.

6.

J.F. obtained a final order from the ALJ for an immediate removal from the segregated placement.  J.F. further obtained an order of an IEP Team meeting, 34 C.F.R. §§ 300.21-300.22, 300.320-300.328 (2006) to provide the new appropriate and intensive educational services for J.F. he required but had been denied, as the method to implement the relief he sought in his hearing.  J.F.'s request, and the Court's award, includes significant additional speech/language therapy, reading instruction, social skills training, sensory integration services and occupational therapy.  J.F. further obtained an order that FCSD provide eighteen (18) months of compensatory educational services to J.F. as a further remedy for the inappropriate services and placement during the time J.F. was unilaterally required to attend school in the segregated setting, much of this time during the hearing procedure when Defendant insisted that he remain in the disputed placement and offered and provided special education and related and support services which were found inadequate, i.e., which denied FAPE.

7.

The case arose as Defendant sought inappropriately to segregate J.F. when he was just five (5), restricting his educational program and limiting "mainstreaming[4]," while offering inadequate specialized instruction and related services. The Plaintiff's mother first removed J.F. from school and then when enrollment became mandatory after his sixth (6th) birthday, J.A. reenrolled him in the contested placement and sought due process under IDEA. After trial, an IDEA "Final Order" was entered by the Chief Judge of OSAH, and this as a final decision under Georgia's IDEA hearing procedures, found materially for the Family and entered remedies for FCSD's failures and therefore as IDEA provides, J.A. seeks an award of reasonable attorneys' fees and costs of litigation.

## JURISDICTION AND VENUE

8.

This action arises under the Individuals with Disabilities Education Act (the "IDEA"), 20 U.S.C. § 1400, *et seq.* (2004); 34 C.F.R. § 300.1 *et seq*. See Mitten 877 F.2d at 935; Zipperer, 111 F.3d at 841, 851. The Court has jurisdiction pursuant to 20 U.S.C. § 1415(i)(3)(A); 34 C.F.R. § 300.516; and 28 U.S.C. § 1331.

---

[4] "Mainstreaming" is a general term addressing a student's maintenance of instruction and therapies with nondisabled peers. More modern terms use the phrase "inclusions." Both lie within the Act's "least restrictive environment" mandate.

9.

Because the Defendant resides within the Northern District of Georgia, Atlanta Division, venue is appropriate in this Court pursuant to 28 U.S.C. § 1391(b).

## PARTIES

10.

At the time the case began, J.F. was a six-year (6) old child with a disability attending school in FCSD for the very first time.  J.F. and his mother reside in the FCSD and he has the right to a free, appropriate public education from the FCSD. J.A., his mother, brings this action in his behalf, as she is authorized to do under state and federal law, and in her own behalf as an adult citizen of the United States and a "parent" under IDEA.

11.

FCSD is the relevant local educational agency obligated to provide education to J.F. pursuant to IDEA and Georgia law.  FCSD has the obligation to provide J.F. a free appropriate public education (FAPE) in the least restrictive environment (LRE).  FCSD has agreed to provide FAPE in the LRE, and has accepted federal and state funds under the special education laws and consented to suit concerning IDEA and IDEA fee provisions. It may be sued as the applicable educational entity providing services to children in that part of Fulton County, Georgia, not within the City of Atlanta, where Plaintiffs reside.

## RELEVANT FACTS

### 12.

Following an IEP meeting in the spring of 2018 where FCSD recommended the continued and even more extensive segregation of her son, J.F., J.A. unsuccessfully attempted to resolve the dispute with FCSD and then was forced to file due process on December 14, 2018 raising claims against FCSD for, *inter alia*, denial of FAPE and violation of J.F.'s right to special education in the least restrictive environment.

### 13.

The parties attended the statutorily required early "resolution session"[5] on January 14, 2019 where J.F. sought removal from the segregated setting as the primary problem that required resolution by FSCD.  At that time, and throughout this litigation, FCSD has refused to offer in the case any change in J.F.'s placement and insisted that the initial and continuing placement of J.F. in the segregated setting was appropriate and compliant with IDEA.  The Family had no option for J.F. but to turn to preparing for a hearing on his services and placement.

---

[5] See 20 U.S.C. § 1415(f)((1)(B)(2004); 34 C.F.R. § 300.520 (2006).

14.

The matter was set for four to five days of administrative hearings beginning on May 7, 2019 at the Georgia Office of State Administrative Hearings (OSAH). The parties exchanged all evidence five business days before the hearing, including thousands of pages of hearing exhibits of J.F.'s educational records, evaluations, manuals and expert witness vitas and reports. 20 U.S.C. § 1415(f)(2) and (3); 34 C.F.R. § 300.511(2006). FCSD presented J.F. with eighteen (18) potential witnesses that could be called during the hearing.  Except for the right to have the intended evidence five (5) days in advance, there is no discovery in the OSAH administrative hearing. Ga. Conf. (OSAH) r. 616-1-2-.39 (2010).

15.

On May 7, 2019, the case was called at OSAH by Chief Judge Michael Malahi. Prior to testimony being taken, the parties agreed to the Court's suggestion that mediation[6] may be beneficial.  At that time, the Court suggested, and both counsel agreed, that the parties were seemingly "not far apart" on the primary issue of J.F.'s educational placement.  The case was taken off the calendar to allow the parties an opportunity to mediate and a procedure for exchanging proposals was part of this stipulation.

---

[6] IDEA has its own mediation provision seeking consensual resolution of disputes and integrating it into the due process procedure. See 20 U.S.C. § 1415(e)(2004); 34 C.F.R. § 300.506(2006).

16.

On June 25, 2019, the parties participated in the agreed upon mediation.  The

mediation ended without resolution to any issue in the case.  Identical to the

position taken at the early resolution session, FCSD refused to address terms

related to the removal of J.F. from the more restrictive segregated setting.

17.

The case was again set for a four to five-day hearing that began on September

4, 2019.  Plaintiff presented a full day of testimony from four direct and adverse

witnesses, however, as a result of an intervening personal health emergency

raised by defense counsel the next morning, the case was delayed for several

more weeks.  Due to the emergent nature of the delay, Plaintiffs were required to

again cancel witness attendance at the hearing, seek availability of many

witnesses for an undetermined future hearing date, and pay the costs and spend

the time associated with the last-minute change allowed Defendant.

18.

The administrative trial of the case resumed on September 24, 2020, with the

delay causing a degree of renewed trial preparation.  Plaintiff presented

testimony from three (3) witnesses, for a total of seven (7) witnesses, including

witnesses called adversely as FCSD controlled the educational location and

documents surrounding the educational program and placement.  Defendants

presented three days of testimony from eleven (11) witnesses, including a

witness Plaintiff had called during its case in chief and the Plaintiff J.A. Each side presented or examined multiple expert witnesses, evaluators, behavioral therapists, speech and language pathologists, occupational therapists, teachers and the Plaintiff.

19.

At the request of the Administrative Court, the parties submitted proposed findings of fact and conclusions of law to the administrative law judge on December 4, 2019 citing to the record and testimony.  The ALJ issued the Final Decision in the Family's favor on January 21, 2020, finding that J.F.'s right to FAPE was denied by FCSD, that FSCD violated J.F.'s right to receive instruction in the least restrictive environment, and that J.F. was entitled to appropriate educational services as determined by J.F.'s experts that had testified, as well as eighteen (18) months of compensatory educational services.  A substantial part of the ordered services cited back into the Plaintiffs' expert witness testimony. The ALJ ordered an IEP team meeting to implement the terms of his Final Decision.[7] Exhibit A to this Complaint is a true copy of the Final Decision.

20.

---

[7] Ordinarily time spent at IEP team meetings is not compensable as fees, "unless such meeting is convened as a result of an administrative proceeding or judicial action …" 20 U.S.C. § 1415(i)(3)(D)(ii)(2004). This time qualifies for compensation and is sought in this Complaint. It is time spent completely on prevailing issues.

From January 21, 2020 to about March 15, 2020[8], FCSD had not complied with the Court's order and J.F. remained in the segregated setting. FCSD failed to timely create and implement an IEP as per the Court's order, failed to provide the ordered educational services, and failed to even initiate any appropriate transition from the segregated setting to the Court ordered inclusive setting. At this time, some aspects of the Final Decision requirements were not within the IEP and some were in a draft IEP consensually, or as demanded by Plaintiffs in light of the terms of the Final Decision.

21.

Under IDEA a local educational agency such as FCSD is obligated to implement the changes sought by a family if order by the ALJ immediately upon entry of the Final Decision and pending any appeal period, to protect the child and as part of the "maintenance of placement" right. See 20 U.S.C. § 1415(l)(2004); 34 C.F.R. § 300.518(2006)[9]. Despite multiple demands for implementation, FCSD had not altered the placement or services, or scheduled

---

[8] This was through the closure of school attendance in Fulton County due to the COVIG-19 emergency. At that time, the IEP had not been finalized in compliance with the Final Order, nor had any changes been implemented or compensatory services initiated, even those which were still not in dispute.

[9] This provision is the "maintenance of placement" or as called by the United States Supreme Court the "stay-put" provision. See Honig v. Doe, 484 U.S. 305, 308, 108 S.Ct. 592 (1988). It now provides that when a parent and child prevail the services and changes are implemented immediately even pending and through any appeal by the educational agency. See 34 C.F.R. § 300.518(d)(2006).

new services even where the Final Order explicitly described such new services.
<u>See</u> Final Order, Exh. A., at 15-17 and 22-23.

22.

In the Final Decision the ALJ determined that the Defendant, then
Respondent, had violated Section 615, <u>20 U.S.C. § 1415</u> of the IDEA. Further,
FCSD unreasonably protracted the final resolution of the proceeding.  <u>See</u> Final
Order, p. 20.

23.

Plaintiffs seek reasonable "hourly rates prevailing in the community for
similar services by attorneys of reasonably comparable skill, reputation and
experience." <u>20 U.S.C. § 1415(i)(3)((f)(ii)(2004)</u>.

24.

Plaintiffs, as Petitioners below, have not during the "course of the action or
proceeding, unreasonably protracted the final resolution of the controversy." <u>20
U.S.C. § 1415(i)(3)(F)(i)(2004)</u>.

25.

Plaintiffs time and legal services were not excessive and they seek reasonable
time and therefore fees "considering the nature of the action," and the course of
the proceedings, including the actions and defenses raised.  <u>See 20 U.S.C. §
1415(i)(3)(F)(iii)(2004)</u>.

26.

The Plaintiffs, as Petitioners in the administrative proceeding, provided the information required under Section 1415(b)(7), initiating the proceeding and during the course of the proceeding. <u>See</u> U.S.C. § 1415(i)(3)(F)(iv)(2004).

27.

The OSAH court has no mechanism or jurisdiction to award attorney fees or costs of litigation. Such right arises under IDEA in this Court. <u>See</u> U.S.C. § 1415(i)(3)(B) (2004).

COUNT I
CLAIM FOR ATTORNEY'S FEES AND COSTS OF LITIGATION
<u>20 U.S.C. § 1415(i)(3)(A)</u>; <u>34 C.F.R. §§ 300.516</u> – 300.517

28.

Paragraphs 1 through 27 are incorporated by reference herein.

29.

The Family sought and obtained all appropriate relief from the ALJ after a full due process hearing on the merits of their claims.

30.

The Family achieved each and every objective of the litigation through the order of the ALJ dated January 21, 2020.

31.

The Family prevailed on all material claims in the litigation thereby significantly altering the relationship between the parties.

32.

The Family are prevailing parties or as described under IDEA, "parents who have prevailed" for the purposes of this litigation and entitled to all reasonable attorneys' fees as defined by IDEA and 42 U.S.C. § 1988.

33.

The Family, as Petitioners below, and Plaintiffs here, have incurred expenses or costs of litigation which are reasonable and compensable, and seek an award of costs as defined by IDEA and 42 U.S.C. § 1988.

34.

The Family further seeks and will seek an award of attorneys' fees and costs for the pursuit and for prevailing in this action under IDEA, Fed. R. Civ. P. 54 and the Local Rules of this Court.

WHEREFORE the Plaintiffs pray the Court:

1.      Take jurisdiction of this matter;

2.      Review and receive, if needed, the administrative record and Final Decision;

3.      After due consideration award the Plaintiffs a fully compensatory award of their attorneys' fees and costs of litigation;

4.      Award Plaintiffs the attorneys' fees and costs of this litigation under Fed. R. Civ. P. 54(d), IDEA and as otherwise authorized by law; and

5.      Any other necessary and appropriate relief.

This the 20th day of April 2020.[10]

/s/Craig Goodmark
Craig Goodmark
Georgia Bar No. 301428
Counsel for Plaintiffs

GOODMARK LAW FIRM
1425A Dutch Valley Place
Atlanta, GA  30324
404-719-4848
cgoodmark@gmail.com

ZIMRING LAW FIRM
1425-A DUTCH VALLEY PLACE
ATLANTA, GA 30324
zimring@zlawyers.com
404-607-1600

/s/Jonathan A. Zimring
JONATHAN A. ZIMRING, Esq.
Georgia Bar No.785250
Counsel for PLAINTIFFS

---

[10] Counsel certifies that this brief was prepared using Book Antiqua point 13, a font and type approved by Local Rule 5.1 and consistent with all type and format requirements of the Local Rules.