EXHIBIT 21

 Gmail

Craig Goodmark <cgoodmark@gmail.com>

---

## Ford, Jamir: Draft IEP and Eligibility

1 message

---

**Samantha Lewis** <samantha.lewis@nelsonmullins.com>                          Mon, Mar 9, 2020 at 12:42 PM
To: "Craig Goodmark (cgoodmark@gmail.com)" <cgoodmark@gmail.com>, Jon Zimring <zimring@zlawyers.com>

Jon/Craig:

Attached are the Districts DRAFT IEP and Eligibility. Anything can be changed as it is a DRAFT. I would also note that the placement section of the IEP does not accurately reflect what the school and Mom discussed at their meeting last week. It seems they are having some logistical issues revising this and I wanted to get it over to you and didn't want issues inputting info into the IEP program to delay the process. However, it should reflect the following plan: transition into the Co-Taught setting in three phases, 2 weeks at a time in each phase: (1) RELA and Recess (2)Sci/SS and Lunch (3) Math, Homeroom, and Dismissal. He already goes to General Ed Specials.

- Transition will begin as soon as the IEP is locked
- Phases will be 2 weeks each, except that JF will not switch phases immediately after Spring Break
- JF will go with his para to observe the classes that he will be joining for the Thursday and Friday prior to beginning that phase the following Monday
- The Social Worker (Ms. Kim) will help JF process the transition
- JF will receive a printout of his schedule with each change, to keep in his agenda
- JF will begin to carry an agenda
- The point sheet/bucks system that was used in Mr. Jordan's class will continue to be in place during the transition. JF's para will review the point sheet with him and deliver the bucks contingent upon performance. JF will continue to be able to cash in those bucks weekly for rewards, TBD, possibly including some time in Fun Friday at first with a plan to fade out.
- The General Ed teacher will also deliver her "dollars" to JF and include him in her classroom reinforcement system.
- Mr. Jordan will consult with the new teachers to help facilitate a smooth transition (phrases used, how to manage behaviors)

Let me know if you have any questions.

Samantha

 NELSON MULLINS

---

SAMANTHA P. LEWIS  OF COUNSEL

samantha.lewis@nelsonmullins.com

ATLANTIC STATION | SUITE 1700

**201 17TH STREET NW | ATLANTA, GA 30363**

T 404.322.6166   F 404.322.6050

NELSONMULLINS.COM   VCARD   VIEW BIO

Confidentiality Notice

This message is intended exclusively for the individual or entity to which it is addressed. This communication may contain information that is proprietary, privileged, confidential or otherwise legally exempt from disclosure. If you are not the named addressee, you are not authorized to read, print, retain, copy or disseminate this message or any part of it. If you have received this message in error, please notify the sender immediately either by phone (800-237-2000) or reply to this e-mail and delete all copies of this message.

**2 attachments**

 **Ford.Jamir_DRAFT IEP_2.25.20_3.5.2020.pdf**
806K

**Ford.Jamir_eligibility_2.25.2020.pdf**
464K

EXHIBIT 22

 Gmail

Craig Goodmark <cgoodmark@gmail.com>

**Re: Ford, Jamir: Draft IEP and Eligibility**
1 message

**Craig Goodmark** <cgoodmark@gmail.com>                                    Tue, Mar 10, 2020 at 10:37 AM
To: Samantha Lewis <samantha.lewis@nelsonmullins.com>
Cc: Jon Zimring <zimring@zlawyers.com>

 Samantha - We are evaluating the draft IEP and updated Consent Form provided to our client last week.  We intend to respond today.  However, we still require information that has been requested but not yet produced including:

- All data and educational information that informs these present levels of performance (particularly the portions that are reported from this school year and not accounted for in any standardized assessment or prior testing);
- Explanations regarding the District's position on why they have excluded  what services, instructions and accommodations that we have proposed but the District has not included in their version of the IEP;
- Identification of an alternative assessment for Jamir's math present levels of performance given the dispute over the use of any variation of the iReady Math assessment.

We understand this document is in draft form, however, the proposals in the document reflect the position of the District, and if we agreed to them would be Jamir's plan.  For that to happen, we require more information.  This would have happened at the IEP meeting on 2/25, however, the District unilaterally ended that meeting before it had been completed. We view this as the result of the District not providing sufficient time to create the plan and then injecting even more delay into this transition.

Jamir continues to be served in an illegal placement.  The District's constant maneuvering to delay complying with the Order they have admitted they do not wish to implement while at the same time avoid any culpability for that harms Jamir, and entitles him to even more compensatory educational services which we intend to seek recovery for.

Craig


On Mon, Mar 9, 2020 at 12:42 PM Samantha Lewis <samantha.lewis@nelsonmullins.com> wrote:

 Jon/Craig:


 Attached are the Districts DRAFT IEP and Eligibility.  Anything can be changed as it is a DRAFT.  I would also note that the placement section of the IEP does not accurately reflect what the school and Mom discussed at their meeting last week.  It seems they are having some logistical issues revising this and I wanted to get it over to you and didn't want issues inputting info into the IEP program to delay the process.  However, it should reflect the following plan:  transition into the Co-Taught setting in three phases, 2 weeks at a time in each phase: (1) RELA and Recess (2)Sci/SS and Lunch (3) Math, Homeroom, and Dismissal. He already goes to General Ed Specials.


- Transition will begin as soon as the IEP is locked
- Phases will be 2 weeks each, except that JF will not switch phases immediately after Spring Break
- JF will go with his para to observe the classes that he will be joining for the Thursday and Friday prior to beginning that phase the following Monday
- The Social Worker (Ms. Kim) will help JF process the transition
- JF will receive a printout of his schedule with each change, to keep in his agenda
- JF will begin to carry an agenda
- The point sheet/bucks system that was used in Mr. Jordan's class will continue to be in place during the transition. JF's para will review the point sheet with him and deliver the bucks contingent upon performance. JF will continue to be able to cash in those bucks weekly for rewards, TBD, possibly including some time in Fun Friday at first with a plan to fade out.

- The General Ed teacher will also deliver her "dollars" to JF and include him in her classroom reinforcement system.
- Mr. Jordan will consult with the new teachers to help facilitate a smooth transition (phrases used, how to manage behaviors)

Let me know if you have any questions.

Samantha



SAMANTHA P. LEWIS   OF COUNSEL

samantha.lewis@nelsonmullins.com

ATLANTIC STATION | SUITE 1700

201 17TH STREET NW | ATLANTA, GA 30363

T 404.322.6166    F 404.322.6050

NELSONMULLINS.COM    VCARD    VIEW BIO

Confidentiality Notice

This message is intended exclusively for the individual or entity to which it is addressed. This communication may contain information that is proprietary, privileged, confidential or otherwise legally exempt from disclosure. If you are not the named addressee, you are not authorized to read, print, retain, copy or disseminate this message or any part of it. If you have received this message in error, please notify the sender immediately either by phone (800-237-2000) or reply to this e-mail and delete all copies of this message.

--

CRAIG GOODMARK
1425 Dutch Valley Place
Atlanta, GA  30324
Phone: 404-719-4848

**EXHIBIT 23**

 Gmail

Craig Goodmark <cgoodmark@gmail.com>

---

## RE: Ford, Jamir: Draft IEP and Eligibility
1 message

---

**Samantha Lewis** <samantha.lewis@nelsonmullins.com>                    Tue, Mar 10, 2020 at 10:58 AM
To: Craig Goodmark <cgoodmark@gmail.com>
Cc: Jon Zimring <zimring@zlawyers.com>

Craig,

As Im sure you are aware, the District is closed today due to COVID-19 so I cannot get you any additional information today.

However, I have responded on the Math Assessment issue. I have asked if you all have any assessment to propose but you continue to only respond stating that you want an assessment. We plan to use the paper and pencil iReady for Math. That is the alternate assessment. I consider this issue addressed. I also sent Jon many documents last week. What is it that you all are still missing. I need specifics not just "educational information". You have progress reports, assessments, work samples, etc. What else is it that you are looking for?

Again, I deny all your allegations. They don't serve to move this matter forward.

If you all have an alternate proposal please send it, but just rejecting what we propose is not helpful or collaborative at all.

Samantha

 NELSON MULLINS

---

SAMANTHA P. LEWIS   OF COUNSEL

samantha.lewis@nelsonmullins.com

ATLANTIC STATION | SUITE 1700

201 17TH STREET NW | ATLANTA, GA 30363

T 404.322.6166   F 404.322.6050

NELSONMULLINS.COM   VCARD   VIEW BIO

---

Samantha - We are evaluating the draft IEP and updated Consent Form provided to our client last week.  We intend to respond today.  However, we still require information that has been requested but not yet produced including:

- All data and educational information that informs these present levels of performance (particularly the portions that are reported from this school year and not accounted for in any standardized assessment or prior testing);
- Explanations regarding the District's position on why they have excluded  what services, instructions and accommodations that we have proposed but the District has not included in their version of the IEP;
- Identification of an alternative assessment for Jamir's math present levels of performance given the dispute over the use of any variation of the iReady Math assessment.

We understand this document is in draft form, however, the proposals in the document reflect the position of the District, and if we agreed to them would be Jamir's plan.  For that to happen, we require more information.  This would have happened at the IEP meeting on 2/25, however, the District unilaterally ended that meeting before it had been completed.  We view this as the result of the District not providing sufficient time to create the plan and then injecting even more delay into this transition.

Jamir continues to be served in an illegal placement.  The District's constant maneuvering to delay complying with the Order they have admitted they do not wish to implement while at the same time avoid any culpability for that harms Jamir, and entitles him to even more compensatory educational services which we intend to seek recovery for.

Craig

On Mon, Mar 9, 2020 at 12:42 PM Samantha Lewis <samantha.lewis@nelsonmullins.com> wrote:

Jon/Craig:

Attached are the Districts DRAFT IEP and Eligibility.  Anything can be changed as it is a DRAFT.  I would also note that the placement section of the IEP does not accurately reflect what the school and Mom discussed at their meeting last week.  It seems they are having some logistical issues revising this and I wanted to get it over to you and didn't want issues inputting info into the IEP program to delay the process.  However, it should reflect the following plan:  transition into the Co-Taught setting in three phases, 2 weeks at a time in each phase: (1) RELA and Recess (2)Sci/SS and Lunch (3) Math, Homeroom, and Dismissal. He already goes to General Ed Specials.

- Transition will begin as soon as the IEP is locked
- Phases will be 2 weeks each, except that JF will not switch phases immediately after Spring Break
- JF will go with his para to observe the classes that he will be joining for the Thursday and Friday prior to beginning that phase the following Monday
- The Social Worker (Ms. Kim) will help JF process the transition
- JF will receive a printout of his schedule with each change, to keep in his agenda
- JF will begin to carry an agenda

- The point sheet/bucks system that was used in Mr. Jordan's class will continue to be in place during the transition. JF's para will review the point sheet with him and deliver the bucks contingent upon performance. JF will continue to be able to cash in those bucks weekly for rewards, TBD, possibly including some time in Fun Friday at first with a plan to fade out.
- The General Ed teacher will also deliver her "dollars" to JF and include him in her classroom reinforcement system.
- Mr. Jordan will consult with the new teachers to help facilitate a smooth transition (phrases used, how to manage behaviors)

Let me know if you have any questions.

Samantha



SAMANTHA P. LEWIS   OF COUNSEL

samantha.lewis@nelsonmullins.com

ATLANTIC STATION | SUITE 1700

201 17TH STREET NW | ATLANTA, GA 30363

T 404.322.6166   F 404.322.6050

NELSONMULLINS.COM   VCARD   VIEW BIO

Confidentiality Notice

This message is intended exclusively for the individual or entity to which it is addressed. This communication may contain information that is proprietary, privileged, confidential or otherwise legally exempt from disclosure. If you are not the named addressee, you are not authorized to read, print, retain, copy or disseminate this message or any part of it. If you have received this message in error, please notify the sender immediately either by phone (800-237-2000) or reply to this e-mail and delete all copies of this message.

--

CRAIG GOODMARK
1425 Dutch Valley Place
Atlanta, GA  30324
Phone: 404-719-4848

EXHIBIT 24



## Ford IEP/Transition Initiation

1 message

**Craig Goodmark** <cgoodmark@gmail.com>                                        Wed, Mar 11, 2020 at 4:16 PM
To: Samantha Lewis <samantha.lewis@nelsonmullins.com>, Jon Zimring <zimring@zlawyers.com>

Samantha - I, along with Jon, will interpret your response as there is no information forthcoming about the District's reasons for rejecting the proposed items.  On this you have an independent duty to provide Prior Written Notice. We are still without any information about the training, criteria for success during transition and who, how and when data will be collected.  We continue to disagree with the IEP's exclusion of the items listed below and proposed by the Family in advance of the 2/25 meeting.

As in any other situation, our disagreement does not prevent the District from moving forward with meeting their obligations to provide FAPE.  As we do not agree, one way to handle this issue would be to provide the information and include the actions we have sought.  In this refusal, you still need to move forward and we simply do not agree this is adequate. The District must initiate the transition of Jamir out of GNETS immediately, now 49 days after this obligation arose as a matter of law.  Any reference to waiting for an IEP to be locked raises issues we simply do not understand, cannot find in the law and avoids compliance. This ignores the reality that Jamir is entitled to FAPE immediately and that the Court's Order must be followed as of January 21.  The District can not condition compliance with the Order on an agreement from the Family as to the IEP while rejecting actions we sought. So, the end result is that you need to have Jamir moved out of the GNETS even though your client objected to the Court's conclusion and now objects to a number of available actions.

## LIST OF ITEMS NOT INCLUDED AS OF 2/25:

## TRANSITION

1. Observation/Training for New Prospect Teachers/para to receive Jamir

2. Feedback sessions for new teacher/para

3. Use of social stories for transition

4. Establish peer buddies

5. Lunch with student not as a reward but scheduled

6. 1:1 activities with student (10- 15 min)

7. Create Yes situations,

8. Give jobs/ responsibilities around the classroom

9. Use warm eye contact/ watch your tone of voice/ body language

10. Positive touch such as touch arm to get attention

11. Proximity when giving directions

12. Clear simple words

13. Give choices ( "Would you like to write with a  blue or a green marker" , "Would you like to sit on the carpet or on your chair")

14. Prepare student for daily transitions

15. AT Evaluation

16. Establishing reasonable expectation for transition

17. Plan times for push-in services that are best for Jamir's overall instruction and established with the parents as part of the planning of the schedule

18. Review accommodations for training and use in transition

19. Debrief with Jamir

20. Develop Crisis Plan


## IEP ACCOMMODATIONS (WHICH HAVE BEEN REJECTED)

1. Study guide preview
2. Use cover sheets, visual organizers
3. Read aloud instructions, passages and questions
4. Pre-test previewing of test, procedure and schedule
5. Read aloud grade level content
6. Appropriate sized desk and chair
7. Use of stadium seat for floor activities
8. Use of instructional programs such as Orton Gillingham or Wilson reading, or others as agreed to, consistent with direct recommendations of program publishers and with trained personal, pursuant to the scope and sequence of programs
9. System of baseline, assessment, reporting of data to track progress in reading, reading fluency, reading comprehension, math and math skills.
10. Instructional plan for intervention and fading of Para and other supports
11. Planning time allocated for Team and for Para, for meeting and addressing para plans, instructional plan, compensatory instruction (when applicable), and supports
12. Time allocated for weekly math probes and weekly reading fluency and reading comprehension probes, embedded into instruction and data collection
13. Training in implementation of sensory diet and plan


## IEP GOALS & OBJECTIVES (not including OT)

1. All Language Processing and Phonological Awareness Goals/Objectives proposed
2. Objectives related to decoding as in III. A, B, & F of SLP Proposed Goals
3. Speech/Language Goals/Objectives IV. 1, 3, 5, 6
4. Social Language Goal/Objectives 1a through 1f (Note: the failure to implement these is a particularly serious disregard of the findings and Order, as it explicitly incorporates these services)

It has been our unfortunate experience to confront this recalcitrance from your client as to initiating action, scheduling, providing data, providing any semblance of proposals, an IEP meeting and documents with unsupported claims, then delay again, rejection of proposals we provide, and its expressed intent to reject many of the protections and "celebration" it would afford a student who "earned" removal on its terms, rather than one who had to have a Judge "Order" this action. Jamir needs to be moved <u>now</u>, and we can agree on that and require it be done <u>now</u>, though we do not agree with the plan or the IEP you intend to enforce.

Craig Goodmark
Jon Zimring
--



CRAIG GOODMARK
1425 Dutch Valley Place
Atlanta, GA  30324
Phone: 404-719-4848

**EXHIBIT 25**

 Gmail



## Ford, Jamir: Response and Consent Issues

1 message

**Samantha Lewis** <samantha.lewis@nelsonmullins.com>                Tue, Mar 17, 2020 at 9:51 AM
To: Jon Zimring <zimring@zlawyers.com>, "Craig Goodmark (cgoodmark@gmail.com)" <cgoodmark@gmail.com>

My response is below in red.

Samantha - I, along with Jon, will interpret your response as there is no information forthcoming about the District's reasons for rejecting the proposed items. We wouldn't have known specifically which things you want an explanation for until this email. I've provided you a response to each thing below. Also, be a little reasonable, the District was dealing with closures of an unprecedented level last week when you sent this and I told you we would get you a response ASAP. On this you have an independent duty to provide Prior Written Notice. We are still without any information about the training (Dr. Alexander (and the District's BCBA) would provide this training, but see below regarding Dr. Alexander.), criteria for success during transition and who, how and when data will be collected (Data collection would've bene driven by Dr. Alexander once she obtained consent – she would have observed and made recommendations for this.). (We did not include criteria for success as the transition is court ordered and therefore previously offered plan is negated.) We continue to disagree with the IEP's exclusion of the items listed below and proposed by the Family in advance of the 2/25 meeting. See below…..

As in any other situation, our disagreement does not prevent the District from moving forward with meeting their obligations to provide FAPE. As we do not agree, one way to handle this issue would be to provide the information and include the actions we have sought. In this refusal, you still need to move forward and we simply do not agree this is adequate. The District must initiate the transition of Jamir out of GNETS immediately, now 49 days after this obligation arose as a matter of law. Any reference to waiting for an IEP to be locked raises issues we simply do not understand, cannot find in the law and avoids compliance. This ignores the reality that Jamir is entitled to FAPE immediately and that the Court's Order must be followed as of January 21. The District can not condition compliance with the Order on an agreement from the Family as to the IEP while rejecting actions we sought. So, the end result is that you need to have Jamir moved out of the GNETS even though your client objected to the Court's conclusion and now objects to a number of available actions. Fine. Dr. Alexander has contacted us and informed us that due to your additions to her consent she cannot agree to work with Jamir. We need you to remove the restriction from Dr. Alexander's consent so that she can train people, observe, start a new FBA, plan to be present when they transition him, etc. – which we can do ASAP after we get the consent (and school returns). Otherwise we need you to identify another BCBA that you want to use. However, be advised that Dr. Alexander has stated that the additions to her consent violate her BCBA code of ethics. As such, I do not know what BCBA out there will agree to the terms you have included. You have essentially negated the consent with your additions. Courts don't tend to look too favorably upon this or do I need to point you to the case from Muscogee county?h So, either send us back a consent with your additions removed or send us someone else you want us to attempt to contract with. And if this is an attempt to just get a different BCBA and you aren't going to jerk them around with a consent issue, I am NOT going to be amused.

**LIST OF ITEMS NOT INCLUDED AS OF 2/25:**


**TRANSITION**

1. Observation/Training for New Prospect Teachers/para to receive Jamir <span style="color:red">We need the consent for Dr. A to observe and make recommendations – as well as train staff.</span>

2. Feedback sessions for new teacher/para <span style="color:red">With who? Dr. A? She would automatically do this if she was involved.</span>

3. Use of social stories for transition <span style="color:red">This is not, or never was an issue. Robert is asking the school to do this ASAP.</span>

4. Establish peer buddies <span style="color:red">Again, not an issue. He will also let the school know.</span>

5. Lunch with student not as a reward but scheduled <span style="color:red">What does this mean? Go to lunch with his gen ed class? We do not withhold lunch from students. I'm not sure what you are getting at here.</span>

6. 1:1 activities with student (10- 15 min) <span style="color:red">I do not know what this means, please clarify.</span>

7. Create Yes situations, <span style="color:red">Again, what is this?</span>

8. Give jobs/ responsibilities around the classroom <span style="color:red">We will add this to the list for the school.</span>

9. Use warm eye contact/ watch your tone of voice/ body language <span style="color:red">Ok</span>

10. Positive touch such as touch arm to get attention <span style="color:red">Ok</span>

11. Proximity when giving directions <span style="color:red">Ok</span>

12. Clear simple words <span style="color:red">Ok</span>

13. Give choices ( "Would you like to write with a  blue or a green marker" , "Would you like to sit on the carpet or on your chair") <span style="color:red">Ok</span>

14. Prepare student for daily transitions <span style="color:red">Ok</span>

15. AT Evaluation <span style="color:red">We need consent. Again you have added to the consent in such a way that it is not viable.  Our AT evaluators are District employees.  There is no way we can have an employee agree to not communicate with other employees.</span>

16. Establishing reasonable expectation for transition <span style="color:red">What is reasonable? Dr. A could address.</span>

17. Plan times for push-in services that are best for Jamir's overall instruction and established with the parents as part of the planning of the schedule <span style="color:red">This was discussed when the team met with Mom and is included in the plan.</span>

18. Review accommodations for training and use in transition <span style="color:red">Added to the list for the school.</span>

19. Debrief with Jamir <span style="color:red">Added to the list for the school.</span>

20. Develop Crisis Plan <span style="color:red">Dr. A would assist with this after observing.</span>


**IEP ACCOMMODATIONS (WHICH HAVE BEEN REJECTED)** <span style="color:red">**These were worded differently before.**</span>

     1. Study guide preview <span style="color:red">We can do this.</span>

2. Use cover sheets, visual organizers <span style="color:red">We can do this.</span>

3. Read aloud instructions, passages and questions <span style="color:red">We can do this.</span>

4. Pre-test previewing of test, procedure and schedule <span style="color:red">We can preview the schedule but not the actual test items.</span>

5. Read aloud grade level content <span style="color:red">He is only slightly below grade level and he is not a non-reader. Why would we do this, this doesn't serve to help him make progress?</span>

6. Appropriate sized desk and chair <span style="color:red">We can do this.</span>

7. Use of stadium seat for floor activities <span style="color:red">I need a picture of this to know what you are referencing.</span>

8. Use of instructional programs such as Orton Gillingham or Wilson reading, or others as agreed to, consistent with direct recommendations of program publishers and with trained personal, pursuant to the scope and sequence of programs <span style="color:red">This is a methodology; an not accommodation. However, he is already getting OG instruction as we discussed several times.</span>

9. System of baseline, assessment, reporting of data to track progress in reading, reading fluency, reading comprehension, math and math skills. <span style="color:red">We collect data on goals and objectives.</span>

10. Instructional plan for intervention and fading of Para and other supports <span style="color:red">Dr. A would build this out.</span>

11. Planning time allocated for Team and for Para, for meeting and addressing para plans, instructional plan, compensatory instruction (when applicable), and supports <span style="color:red">School staff will plan for this. You can't dictate staff schedules as this is an administrative and HR issue, but all teachers have planning time in their day.</span>

12. Time allocated for weekly math probes and weekly reading fluency and reading comprehension probes, embedded into instruction and data collection <span style="color:red">Again, we have goals for reading that we will collect data on. He has no math goals.</span>

13. Training in implementation of sensory diet and plan <span style="color:red">OT addressed this. It is in the IEP.</span>

### **IEP GOALS & OBJECTIVES (not including OT)** <span style="color:red">In reference to the section below: The court order does not state that you just write every goal and we have to automatically adopt it. It says it needs to be a team effort. We included many of your goals, but goals and objectives were ultimately written by our team because they feel they are appropriate given multiple factors.</span>

1. All Language Processing and Phonological Awareness Goals/Objectives proposed Objectives related to decoding as in III. A, B, & F of SLP Proposed Goals

2. Speech/Language Goals/Objectives IV. 1, 3, 5, 6

3. Social Language Goal/Objectives 1a through 1f (Note: the failure to implement these is a particularly serious disregard of the findings and Order, as it explicitly incorporates these services)

<span style="color:red">This chart addresses your accommodations and our responses.:</span>

| <span style="color:red">Proposed Accommodation:</span> | <span style="color:red">Concerns:</span> |
| --- | --- |
| <span style="color:red">Word bank for instruction including unit words for ELA, math, social studies and science. Includes keywords with direct instruction in math</span> | <span style="color:red">This was not discussed by the IEP team as necessary for the student for instruction.</span> |
| <span style="color:red">Use of assistive technology after full evaluation</span> | <span style="color:red">An Assistive Technology Consult was not discussed at the IEP meeting. If a request for an Assistive Technology Consult is being requested, then we will need to provide informed consent and get a consent for evaluation signed. Once an AT Consult has been conducted, then of course accommodations developed from that consult would be incorporated in the IEP.</span> |

| | |
|---|---|
| Adjust place in line in transitions to allow Jamir to be first or last in line | This was not discussed at the IEP meeting. This also does not help Jamir to learn to cope when things do not go his way. |
| Pre-test previewing of test, procedure and schedule | This was not discussed at the IEP meeting. |
| Read aloud grade level content | This was not discussed at the IEP meeting. It is not clear that he needs grade level content read aloud. |
| Compensatory instruction (when applicable), setting goals and criteria for instruction, coordinating with direct placement and instruction and reporting of data and information | This was not discussed at the IEP meeting. We will be providing compensatory education , but compensatory education would not fall in the Accommodations section of the IEP. |
| Use of instructional programs such as Orton Gillingham or Wilson reading, or others as agreed to, consistent with direct recommendations of program publishers and with trained personal, pursuant to the scope and sequence of programs | OG or Wilson Reading would not be mentioned specifically in the IEP as these are specific teaching methodologies. |
| System of baseline, assessment, reporting of data to track progress in reading, reading fluency, reading comprehension, math and math skills. | Data on all goals and objectives is taken on a regular basis. |
| Appropriate sized desk and chair | Desks and chairs are appropriately sized for students. |
| Use of stadium seat for floor activities | Is this referring to the seats that some people take to sit on at a stadium? If so, it is not clear that this is necessary for Jamir. |
| Training in applicable instructional program such as Orton Gillingham, or Wilson Reading | OG or Wilson Reading would not be mentioned specifically in the IEP as these are specific teaching methodologies. |
| Time allocated for weekly math probes and weekly reading fluency and reading comprehension probes, embedded into instruction and data collection | Data on all goals and objectives is taken on a regular basis. |

It has been our unfortunate experience to confront this recalcitrance from your client as to initiating action, scheduling, providing data, providing any semblance of proposals, an IEP meeting and documents with unsupported claims, then delay again, rejection of proposals we provide, and its expressed intent to reject many of the protections and "celebration" it would afford a student who "earned" removal on its terms, rather than one who had to have a Judge "Order" this action. Jamir needs to be moved <u>now</u>, and we can agree on that and require it be done <u>now</u>, though we do not agree with the plan or the IEP you intend to enforce. The order also doesn't include a "celebration" be held. And the team said they would still give him one, so I don't know your point here other than to be argumentative.



**SAMANTHA P. LEWIS** OF COUNSEL

samantha.lewis@nelsonmullins.com

**ATLANTIC STATION | SUITE 1700**

**201 17TH STREET NW | ATLANTA, GA 30363**

T 404.322.6166    F 404.322.6050

**NELSONMULLINS.COM**    VCARD  VIEW BIO

Confidentiality Notice

This message is intended exclusively for the individual or entity to which it is addressed. This communication may contain information that is proprietary, privileged, confidential or otherwise legally exempt from disclosure. If you are not the named addressee, you are not authorized to read, print, retain, copy or disseminate this message or any part of it. If you have received this message in error, please notify the sender immediately either by phone (800-237-2000) or reply to this e-mail and delete all copies of this message.

EXHIBIT 26

 Gmail

Craig Goodmark <cgoodmark@gmail.com>

## Ford, Jamir: Outstanding Issues and Remote Transition

1 message

**Samantha Lewis** <samantha.lewis@nelsonmullins.com>                    Thu, Apr 2, 2020 at 9:57 AM
To: Jon Zimring <zimring@zlawyers.com>, "Craig Goodmark (cgoodmark@gmail.com)" <cgoodmark@gmail.com>

Craig and Jon,

I wanted to touch base about the outstanding issues with this matter.

1. I have attached a revised IEP.  It SHOULD include everything we indicated we would agree to in my last email. If there appears to be something missing or it looks incorrect, let me know.
2. Reimbursement for IEEs an IEP meeting:
    a. Can you please provide us with updated invoices from Mindy Cohen and Kimberlee Wing to reflect their charges for attendance at the IEP as well as their IEE?  We need it all on one invoice to process through our finance department.  Please send to me and I will pass along for payment.
3. Here are the outstanding items the District was seeking clarification on (we are not necessarily rejecting these items, we just need more explanation to determine our position):
    a. Lunch with student not as a reward but scheduled <span style="color:red">What does this mean?</span>
    b. 1:1 activities with student (10- 15 min) <span style="color:red">I do not know what this means, please clarify</span>
    c. Create Yes situations, <span style="color:red">Again, what is this</span>
    d. Use of stadium seat for floor activities <span style="color:red">I need a picture of this to know what you are referencing.</span>
4. Here are the items that we are awaiting consent for to begin:
    a. AT Evaluation (Im not sure how these are progressing given the current state of world affairs)
    b. Updated FBA with Dr. A as well as the following items she was going to work on:

        i.   Observation/Training for New Prospect Teachers/para to receive Jamir <span style="color:red">We need the consent for Dr. A to observe and make recommendations – as well as train staff.</span>

        ii.  Feedback sessions for new teacher/para <span style="color:red">With who? Dr. A? She would automatically do this is she was involved.</span>

        iii. Establishing reasonable expectation for transition <span style="color:red">What is reasonable? Dr. A could address.</span>

        iv.  Develop Crisis Plan <span style="color:red">Dr. A would assist with this after observing.</span>

        v.   Instructional plan for intervention and fading of Para and other supports <span style="color:red">Dr. A would build this out.</span>

Transition Plan: The District intends to proceed with the transition plan even though we are now in remote learning. Jamir is currently receiving general education curriculum and materials with support from his GNETS teacher Jordan Raphael.  The District has proposed maintaining that support from Mr. Jordan and adding him to the classroom support from the non-GNETS general education teacher, Lauren Lemasters and non-GNETS special education co-teacher, Donna Paduano for both Reading/English Language Arts and Math, since Science and Social Studies is not required by the district during this period of remote learning.

Bona Kim, GNETS social worker will continue to provide therapeutic support via checks with the parent and with the student on a weekly basis.  (Please let us know any objection to this)

We stated that we would need to revise this plan as schools become open again; however, at of 3/20/20 we did not have a definite date for when that would occur. (and now we know that wont be until next year, so we will likely have to

hold some sort of tele-meeting; let me know if you all have any thoughts on this).

5. Given these revisions and the online transition plan please let me know what items you do not agree with in the IEP and if there are still outstanding items that are not included that you object to not being included so I can respond appropriately.

Very truly yours,

Samantha Lewis



SAMANTHA P. LEWIS   OF COUNSEL

samantha.lewis@nelsonmullins.com

ATLANTIC STATION | SUITE 1700

201 17TH STREET NW | ATLANTA, GA 30363

T 404.322.6166   F 404.322.6050

NELSONMULLINS.COM   VCARD   VIEW BIO

Nelson Mullins is continuing to monitor developments related to COVID-19, including guidance from the Centers for Disease Control ("CDC"); World Health Organization; various health officials; and federal, state, and local government authorities. The firm is taking appropriate precautionary actions and has implemented plans to ensure the continuation of all firm services to clients from both in office and remote work arrangements across our 25 geographically dispersed offices.

Confidentiality Notice

This message is intended exclusively for the individual or entity to which it is addressed. This communication may contain information that is proprietary, privileged, confidential or otherwise legally exempt from disclosure. If you are not the named addressee, you are not authorized to read, print, retain, copy or disseminate this message or any part of it. If you have received this message in error, please notify the sender immediately either by phone (800-237-2000) or reply to this e-mail and delete all copies of this message.

 **JF Draft IEP_4.1.20.pdf**
825K



EXHIBIT 27

Craig Goodmark <cgoodmark@gmail.com>

## RE: Ford, Jamir: Outstanding Issues and Remote Transition
1 message

**Jon Zimring** <zimring@zlawyers.com>                                              Fri, Apr 3, 2020 at 4:48 PM
To: Samantha Lewis <samantha.lewis@nelsonmullins.com>, Craig Goodmark <cgoodmark@gmail.com>
Cc: Jon Zimring <zimring@zlawyers.com>

Samantha, I am glad you are well. I am responding as Craig is out of the loop today and may have other issues to
address, especially as to No. 5, below.  My concern is with delay and with what feels like a merry-go-round on Dr.
Alexander, or any BCBA. First, we were concerned to learn from her that though she was brought by Fulton to the IEP
meeting, she said she was unprepared and mostly unwilling to contribute to an IEP and BIP then, as was the imperative of
the meeting, as she had been eliminated from the program. She said she required new observations as her last
involvement was March 2018, then 23 months old. Of course, as North Metro had no BCBA or behavioral supports, we
were without that also. We also felt she could have been brought up to date for the meeting if Fulton had acted after the
entry of the Order requiring the meeting.  If Jamir had been given direct and real BCBA services, this also would have
avoided that problem.

We want to be sure that our concerns are not misconstrued concerning the consent issue. We have a right to consent
under IDEA, Sec. 300.9, and under the BACB Ethical Standards, and further any BCBA and Dr. Alexander have an
obligation to resolve conflicts and confidentiality issues, BCBA no. 1.04(d), (e), 1.06(a), 2.04 and 2.04(d). These foresee
multiple parties as school BCBA are commonplace, and the "ultimate" client is Jamir and his mother. No. 2.00, 2.02, 2.05.
The latter includes protecting our clients' rights. One of these rights is that discussions that may otherwise infringe on
confidentiality or other rights is only really for treatment or scientific needs. No. 206(d).

We think that FCSD and Dr. Alexander know this, and her obligations here are reflected in the contract documents you
sent us under a document request at trial. Our objection is really only for this to be even-handed, and done so we can
trust with confidence in the recommendations.  This means that there are no "secret" discussions with Dr. Alexander and
certainly none for the purposes of FCSD seeking to influence her opinions and recommendations, and none with
attorneys for FCSD. The standards require our client to be fully informed, especially about the data and treatment
recommendations. This current request that our client consent to private FCSD attorney and BCBA communications, as a
condition for services in the IEP and for transition, seems to be the more serious to your client and we simply see no basis
for such contacts and communications at this stage of the process. My client wants the BCBA to be for professional
purposes, and protected from the pressures of the contractor unbeknownst to her with the contractee concerning the
assessment and treatment recommendations for her child,  and wants to be involved in all substantive discussions, i.e.,
non-procedural-scheduling, payment, etc. communications.  Our position is consistent with the ethical standards, and
simply not a roadblock.  We see the issue as not our client withholding consent but Alexander perhaps limited by a
problematic contract obligation of your client, and either pushing that on to Ms. Amour, or by your clients' refusal to restrict
unilateral access to her from its attorney. We ask that you take steps to ensure that this condition does not further interfere
in this service. If it is Dr. Alexander who is the roadblock for any reason other than FCSD's contractual insistence, then we
need to look for another contractor BCBA, perhaps Jeron from SBG, who has some existing knowledge of Jamir.  In any
situation, we see no basis for insisting that our client by contract waive BCBA ethical standards for BCBA services.

We will address other issues in your email response but as to several that you identify that you do not understand, these
are long standing requests with the same language for a competent transition and have been given to your client back to
May 2019, and again at trial and again for the IEP meeting. These needs such as scheduled and regular social skills
support are not new or unusual. We tried to stay within earlier proposals even at the IEP meeting as we thought these
were earlier reviewed by your client.

Concerning the timing of the demand, it may have been sent just several weeks ago but we tried to get some discussion
without response for several weeks and to be frank, are surprised that the Board has not already had this case before it.
We have no idea which of your two emails to rely on, i.e., the current one or the one that it would be the 16th, and have to
just say that we cannot park this until after the 16th. Please expressly let us know if the 16th is the earliest your client could
consider the demand, and if so, whether you want to set up a call at 11:00 am on the 17th to address that. In the interim,
we have to proceed understanding this is the schedule you have allowed, though it may increase the costs. Craig has also
asked whether your client is going to appeal, now about 9 weeks after the decision, and we would also appreciate an
answer as that may loosen up the negotiations but requires more direct action on the implementation.
Have a good weekend  but please take some effort to cure whether our client will receive BCBA support. JAZ

Thank you. Jonathan A. Zimring, Zimring Law Firm, 1425A Dutch Valley Place, Atlanta, GA 30324. 404.607.1600; fax 404.607.1355; d-404.692.5665.

THIS EMAIL AND ATTACHMENTS CONTAIN CONFIDENTIAL AND PRIVILEGED INFORMATION PROTECTED BY LAW. ANY UNAUTHORIZED DISCLOSURE OR COPYING IS PROHIBIT. IF YOU RECEIVE THIS MESSAGE IN APPARENT ERROR, PLEASE DELETE IT AND ITS ATTACHMENTS AND PLEASE NOTIFY THE SENDER.

**From:** Samantha Lewis <samantha.lewis@nelsonmullins.com>
**Sent:** Friday, April 03, 2020 10:57 AM
**To:** Craig Goodmark <cgoodmark@gmail.com>
**Cc:** Jon Zimring <zimring@zlawyers.com>
**Subject:** RE: Ford, Jamir: Outstanding Issues and Remote Transition

Craig,

These are decisions the Board has to make. I don't have the authority to make them, nor does anyone in my office. As such, I am awaiting guidance from them. They met last night. I am unsure if they discussed this matter as there were several pressing matters they needed to handle that affect the entire District. I am waiting to hear and will let you know when I get an answer.

Samantha



SAMANTHA P. LEWIS   OF COUNSEL

samantha.lewis@nelsonmullins.com

ATLANTIC STATION | SUITE 1700

201 17TH STREET NW | ATLANTA, GA 30363

T 404.322.6166   F 404.322.6050

NELSONMULLINS.COM   VCARD   VIEW BIO

**From:** Craig Goodmark <cgoodmark@gmail.com>
**Sent:** Friday, April 3, 2020 10:55 AM
**To:** Samantha Lewis <samantha.lewis@nelsonmullins.com>
**Cc:** Jon Zimring <zimring@zlawyers.com>
**Subject:** Re: Ford, Jamir: Outstanding Issues and Remote Transition

Samantha - We will review these items and respond more fully in a separate email. I am writing to follow up on the proposal sent to you on March 20 - two weeks ago. Given the COVID-19 delays, I understand that other matters have

intervened, but your email response to me indicated that you would not be able to get us any substantive answers to the question of settlement, and particularly whether your client intends to appeal the decision of Judge Malahi until after April 16.   That delay is untenable and creates more unnecessary expense by potentially protracting this litigation when a resolution is possible.  I again am seeking information about your clients intention to appeal this case.  Whether your client intends to engage in a good faith discussion about implementation of the Court's order, compensatory educational services Jamir is entitled to as well as Jamir's status as prevailing party and his entitlement to attorneys' fees.   A response after April 16 is not timely and only protracts this litigation unnecessarily.

Please let us know your client's intentions immediately.

Craig

On Thu, Apr 2, 2020 at 9:57 AM Samantha Lewis <samantha.lewis@nelsonmullins.com> wrote:

Craig and Jon,

I wanted to touch base about the outstanding issues with this matter.

1.  I have attached a revised IEP.  It SHOULD include everything we indicated we would agree to in my last email.  If there appears to be something missing or it looks incorrect, let me know.

2.  Reimbursement for IEEs an IEP meeting:

   a.  Can you please provide us with updated invoices from Mindy Cohen and Kimberlee Wing to reflect their charges for attendance at the IEP as well as their IEE?  We need it all on one invoice to process through our finance department.  Please send to me and I will pass along for payment.

3.  Here are the outstanding items the District was seeking clarification on (we are not necessarily rejecting these items, we just need more explanation to determine our position):

   a.  Lunch with student not as a reward but scheduled What does this mean?

   b.  1:1 activities with student (10- 15 min) I do not know what this means, please clarify

   c.  Create Yes situations, Again, what is this

   d.  Use of stadium seat for floor activities I need a picture of this to know what you are referencing.

4.  Here are the items that we are awaiting consent for to begin:

   a.  AT Evaluation (Im not sure how these are progressing given the current state of world affairs)

   b.  Updated FBA with Dr. A as well as the following items she was going to work on:

      i.  Observation/Training for New Prospect Teachers/para to receive Jamir We need the consent for Dr. A to observe and make recommendations – as well as train staff.

      ii.  Feedback sessions for new teacher/para With who? Dr. A? She would automatically do this is she was involved.

      iii.  Establishing reasonable expectation for transition What is reasonable? Dr. A could address.

      iv.  Develop Crisis Plan Dr. A would assist with this after observing.

v. Instructional plan for intervention and fading of Para and other supports <span style="color:red">Dr. A would build this out.</span>

Transition Plan: The District intends to proceed with the transition plan even though we are now in remote learning. Jamir is currently receiving general education curriculum and materials with support from his GNETS teacher Jordan Raphael. The District has proposed maintaining that support from Mr. Jordan and adding him to the classroom support from the non-GNETS general education teacher, Lauren Lemasters and non-GNETS special education co-teacher, Donna Paduano for both Reading/English Language Arts and Math, since Science and Social Studies is not required by the district during this period of remote learning.

Bona Kim, GNETS social worker will continue to provide therapeutic support via checks with the parent and with the student on a weekly basis. (Please let us know any objection to this)

We stated that we would need to revise this plan as schools become open again; however, at of 3/20/20 we did not have a definite date for when that would occur. (and now we know that wont be until next year, so we will likely have to hold some sort of tele-meeting; let me know if you all have any thoughts on this).

5. Given these revisions and the online transition plan please let me know what items you do not agree with in the IEP and if there are still outstanding items that are not included that you object to not being included so I can respond appropriately.

Very truly yours,

Samantha Lewis



SAMANTHA P. LEWIS   OF COUNSEL

samantha.lewis@nelsonmullins.com

ATLANTIC STATION | SUITE 1700

201 17TH STREET NW | ATLANTA, GA 30363

T 404.322.6166   F 404.322.6050

NELSONMULLINS.COM   VCARD   VIEW BIO

Nelson Mullins is continuing to monitor developments related to COVID-19, including guidance from the Centers for Disease Control ("CDC"); World Health Organization; various health officials; and federal, state, and local government authorities. The firm is taking appropriate precautionary actions and has implemented plans to ensure the continuation of all firm services to clients from both in office and remote work arrangements across our 25 geographically dispersed offices.

Confidentiality Notice

This message is intended exclusively for the individual or entity to which it is addressed. This communication may contain information that is proprietary, privileged, confidential or otherwise legally exempt from disclosure. If you are not the named addressee, you are not authorized to read, print, retain, copy or disseminate this message or any part of it. If you have received this message in error, please notify the sender immediately either by phone (800-237-2000) or reply to this e-mail and delete all copies of this message.

--

CRAIG GOODMARK
1425 Dutch Valley Place
Atlanta, GA  30324
Phone: 404-719-4848

**EXHIBIT 28**

 

## RE: Ford, Jamir: Outstanding Issues and Remote Transition
1 message

**Samantha Lewis** <samantha.lewis@nelsonmullins.com>                    Tue, Apr 7, 2020 at 11:03 AM
To: Jon Zimring <zimring@zlawyers.com>, Craig Goodmark <cgoodmark@gmail.com>
Cc: Jeff Daniel <jeff.daniel@nelsonmullins.com>

Jon,

The Board's attorney informed me that they did have the opportunity to discuss Jamir at their recent emergency meeting which was called to discuss District-wide matters related to COVID-19. They reject your settlement proposal.

Regarding Dr. Alexander's consent, I do not have authority to negotiate that consent with you. As we have stated MANY times, I do not represent Dr. Alexander. You are well aware that she has her own attorney as you have communicated with that attorney. The consent she needs signed is one for her business; it was not created or proposed by the District. She has informed my client that your inclusions negate consent and she cannot accept it and work with Jamir. You claim your additions merely try to force her to follow her code of ethics. However, your language goes way beyond that and seeks to essentially negate all other contracts she has with the District to serve other students. She works with many students, so to put in a term in your consent that she cannot have any contracts with the District is ridiculous and frankly unconscionable as it would force her to remove herself from working with many students she has built relationships with. I do not understand your long-winded, largely incomprehensible statements about Dr. Alexander and I having "secret" conversations. Dr. Alexander is a consummate professional, so to think she, myself, or any District attorney would put their ethics on the line for Jamir is utterly ridiculous.

I also want to clear up some statements. First, GNETS does have a BCBA who worked with Jamir, so you can continue to state that they don't, but your emails with your opinions do not create facts. Secondly, I do not understand your "concern" about Dr. Alexander's lack of involvement prior to the IEP meeting. You are well-aware she needs consent to be involved in this matter. In fact, you all kept raising claims (which were unfounded by the Judge) that your client wasn't kept involved and informed. So now you are claiming we should have involved a non-District employee without any consent from the parent? This argument doesn't make any sense in light of the rest of the language in your email.

Samantha



SAMANTHA P. LEWIS  OF COUNSEL

samantha.lewis@nelsonmullins.com

ATLANTIC STATION | SUITE 1700

201 17TH STREET NW | ATLANTA, GA 30363

T 404.322.6166   F 404.322.6050

**EXHIBIT 29**

 Gmail

## Ford IEP Response/Objections
1 message

**Craig Goodmark** <cgoodmark@gmail.com>                                      Thu, Apr 9, 2020 at 12:29 PM
To: Samantha Lewis <samantha.lewis@nelsonmullins.com>
Cc: Jon Zimring <zimring@zlawyers.com>

Samantha -- To close the loop on two items:

1.  You still have not indicated whether your client intends to appeal the January decision.  We see this as a courtesy and would like you to respond and indicate what your clients intentions are with respect to any appeal.

2.  In response to your question about the items in the IEP that we disagree, we disagree with the following components of the 2/25 IEP that is currently being implemented by the District:

a. The Impact of the Disability statement fails to accurately describe Jamir's current levels of performance;

b. The present levels of performance that rely on the i-Ready Math assessment are not accurate as they do not accurately describe Jamir's present math skills as reported at the IEP meeting;

c. The reporting of Jamir's math skills are not verifiable and conflict with the i-Ready math assessment;

d. The present levels in speech rely upon a November 2019 checklist administered without any consent from Jamir's mother and do not accurately reflect Jamir's speech/language abilities;

e. The special factors indicate AT is not needed.  This has yet to be determined since an AT evaluation, although requested, has not been completed;

f.  The special factors indicate transportation to New Prospect GNETS, however, Jamir does not attend GNETS;

g. To the extent that the goals and objectives deviate from the recommendations of the IEE's in speech and OT, we disagree. These have been provided and we do not have a credible or written notice as to the reasons for the rejection. This makes a resolution of our concern all but impossible.

h. The student supports/accommodations do not include any transition planning for Jamir, and to the extent that a transition plan has been developed as the minutes indicate, there still is no provision for:

    1. Training of Jamir's new teachers for his transition;

    2. Coordination between GNETS teachers and new New Prospect teachers on effective methods to use with Jamir;

    3. Establishing peer relationships through lunch and short 10 minute activities as Jamir transitions to his new classroom;

4. Preparing Jamir for daily transitions;

5. Any AT support

6. Any behavioral support despite Jamir's mother and Ms. Alexander having discussed and agreed upon a communication protocol that ensures collaboration of all parties;

7. A Crisis Intervention Plan

8. Use of Study Guides to preview classes for Jamir

9. Test accommodations to read aloud instructions, passages and questions, explain and preview test procedures and test schedule

i. The IEP minutes contain statements drafted by FSCD in response to parent concerns and added to the IEP outside of the IEP meeting. We disagree with this language.

j. The IEP says Jamir will receive 25 minutes of OG instruction. We disagree that this meets the recommendation of receiving such instruction from a certified OG teacher; or that such duration and intensity meets Jamir's needs or is appropriate. We further object to the IEP ignoring the scope and sequence of such instruction;

k. The IEP does not contain any baseline data or method to collect such data and report any progress in reading or math;

l. The IEP does not refer or explain how Jamir's new teachers will be trained, will plan for, and will implement the plan for transition for Jamir.

m. The IEP does not contain any of the recommended services ordered by the Court including academic tutoring, Fast ForWard, and compensatory education.


Based on the statements of school personnel at the IEP meeting, we continue to have concerns regarding the motivations of the District to actually implement an appropriate plan for Jamir. We continue to view the responses you and your client make in this process as posturing and obstructionist. Even a basic thing like having an the behaviorist agree to include the student's mother in her communications with the school, something her ethics requires, has been dragged out and now being employed by the District as a reason they can not provide appropriate behavioral services. We view this as nothing more than tactics and wholly inappropriate. Again, we request prior written notice with regards to the District's decision to reject the Family's request for these services so the Family can evaluate the information relied upon by the District when making such decisions.


Craig

--




CRAIG GOODMARK
1425 Dutch Valley Place
Atlanta, GA  30324
Phone: 404-719-4848

**EXHIBIT 30**

 

## RE: Ford IEP Response/Objections
1 message

**Samantha Lewis** <samantha.lewis@nelsonmullins.com>                    Wed, Apr 15, 2020 at 3:48 PM
To: Craig Goodmark <cgoodmark@gmail.com>
Cc: Jon Zimring <zimring@zlawyers.com>

Craig,

You indicate in several areas that you do not agree with the language in the IEP, things in the IEP, things left out.  Please either redline the IEP and send to me or send me proposed language.

Regarding compensatory services we previously proposed the following:  You choose a provider for tutoring for 3 hours per week. The District will vet the provider's credentials and reimburse accordingly.

Same goes for Speech/Language (1 hour per week) and OT (1 hour per week).

Regarding AT, we have agreed to the evaluation, but it cannot take place with the current Shelter in Place order in place. As such, we really cannot address AT needs without an evaluation.

And again, Dr. Alexander is not my client.  She is not a District employee.  She has informed us that she cannot work with Jamir due solely to the language YOU insist be in her consent.  Apparently she and Mom spoke and Mom was ok with removing your additions, but then when she received the consent back it had your language added back in.  I am merely passing along what I am being told.  However, your insistence on altering her consent is holding up the District being able to put many things in place.   So again, either work out the consent with her or send me a name of a BCBA you want to use.

Samantha



SAMANTHA P. LEWIS  OF COUNSEL

samantha.lewis@nelsonmullins.com

ATLANTIC STATION | SUITE 1700

201 17TH STREET NW | ATLANTA, GA 30363

T 404.322.6166   F 404.322.6050

NELSONMULLINS.COM   VCARD   VIEW BIO

**Exhibit 31**



## Ford, Jamir: IEP
1 message

**Samantha Lewis** <samantha.lewis@nelsonmullins.com>     Tue, May 26, 2020 at 8:30 AM
To: Jon Zimring <zimring@zlawyers.com>, "Craig Goodmark (cgoodmark@gmail.com)" <cgoodmark@gmail.com>
Cc: Jeff Daniel <jeff.daniel@nelsonmullins.com>

Jon and Craig,

I wanted to provide you an update on the status of the IEP. We have not received revisions back and, as such, the IEP still remains in draft form and we have been unable to lock it. However, tomorrow Fulton is changing their IEP systems. In order to transfer IEPs to the new system they must be locked.

Rather than rush and push through an IEP that neither party is satisfied with, the District is going to lock the IEP but indicate in the minutes that the IEP is not finalized and is still in the works and it is only being locked to be transferred to the new system.

I just wanted to give you all a heads up on this so it doesn't become an issue down the road and you don't get the idea that the District is finalizing an IEP that isnt final.

Very truly yours,

Samantha Lewis



SAMANTHA P. LEWIS   OF COUNSEL

samantha.lewis@nelsonmullins.com

ATLANTIC STATION | SUITE 1700

201 17TH STREET NW | ATLANTA, GA 30363

T 404.322.6166   F 404.322.6050

NELSONMULLINS.COM   VCARD   VIEW BIO

Nelson Mullins is continuing to monitor developments related to COVID-19, including guidance from the Centers for Disease Control and various health officials; and federal, state, and local government authorities. The firm has

implemented precautionary measures and plans to ensure the continuation of all firm services to clients from both in office and remote work arrangements across our 25 geographically dispersed offices.  Click here to visit the Nelson Mullins Coronavirus Resources page. Information described therein is subject to change.

**Confidentiality Notice**
This message is intended exclusively for the individual or entity to which it is addressed. This communication may contain information that is proprietary, privileged, confidential or otherwise legally exempt from disclosure. If you are not the named addressee, you are not authorized to read, print, retain, copy or disseminate this message or any part of it. If you have received this message in error, please notify the sender immediately either by phone (800-237-2000) or reply to this e-mail and delete all copies of this message.

**Exhibit 32**

 Gmail

Craig Goodmark <cgoodmark@gmail.com>

---

## RE: Ford, Jamir: IEP
1 message

**Jon Zimring** <zimring@zlawyers.com>                                    Tue, May 26, 2020 at 4:31 PM
To: Samantha Lewis <samantha.lewis@nelsonmullins.com>, Jeff Daniel <jeff.daniel@nelsonmullins.com>
Cc: Craig Goodmark <cgoodmark@gmail.com>

Samantha and Jeff:  We are still confused by the Fulton IEP process and now by this email.  We have never understood and have not willingly participated in the issue whether the IEP is locked or not, as that is not an IDEA or State Special Education procedure or limitation. When it appears in Fulton IEP documents, i.e., 4-1-2020 IEP stating that certain services were to be provided once the IEP was locked, we simply did not agree or consent to that limitation, especially as we have no control over this. This confusion runs into your use of "draft."

In the purest form I can find on this – the IEP is the IEP whether locked or unlocked and the path we followed was to try to obtain an appropriate IEP which also meet the data and the Final Decision. We could not do that at the 2/25/20 meeting, nor with Fulton rejecting much of the materials we sent after the meeting and then not on our 3/17/20 extensive review of the IEP document, nor in the 4/1/20 IEP doc or email of 4/2/20 response, so as we had been seeking that new services and a transition plan be implemented, we then said that the IEP portions you were willing to allow needed to be implemented as Fulton's IEP and asked for Prior Written Notice. The IEP document we received said that Fulton was going to implement the IEP from 2/25 on 2/26/20. So that is where we are though the 4/1/20 document has some other material, it appeared to us this was the FCSD IEP and we simply continue to disagree with it. Beyond our Parent's Concerns, and the inaccuracy of the minutes, the goals are not measurable and the objectives are inadequate along an entire spectrum of services. The proviso on p.24 is illegal and outside of IDEA. The identified services are wrong.  When we commented specifically on Fulton carving up and rejecting proposed accommodations, these never were put in the IEP and were not implemented, though you told us as to many "We can do this." We have been told Jamir gets OG instruction, and I asked for the scope and sequence, and material reflecting this but this was ignored, so we simply do not agree that this is appropriate or true, if it is actually the instructional methodology adapted to his needs. We also among other issues do not agree with the rejection of including needed teaching methodologies, as the claim that this is not part of the IEP changed more than 20 years ago when this was added to special education. 34 CFR 300.39(b)(3). The IEP is also not rigorous enough, by example reading fluency is set to mastery at 40 cwpm, which will push Jamir further behind an end of 3rd grade reading target of 112 cwpm @ the 50% level.

So, we understand that what was implemented is the Fulton IEP and we have expressed objection to it, but also do not believe that "locking" it has any consequence to Jamir unless you identify the specifics of that. JAZ

Thank you. Jonathan A. Zimring, Zimring Law Firm, 1425A Dutch Valley Place, Atlanta, GA 30324. 404.607.1600; fax 404.607.1355; d-404.692.5665.

THIS EMAIL AND ATTACHMENTS CONTAIN CONFIDENTIAL AND PRIVILEGED INFORMATION PROTECTED BY LAW. ANY UNAUTHORIZED DISCLOSURE OR COPYING IS PROHIBIT. IF YOU RECEIVE THIS MESSAGE IN APPARENT ERROR, PLEASE DELETE IT AND ITS ATTACHMENTS AND PLEASE NOTIFY THE SENDER.

---

**From:** Samantha Lewis <samantha.lewis@nelsonmullins.com>
**Sent:** Tuesday, May 26, 2020 8:30 AM
**To:** Jon Zimring <zimring@zlawyers.com>; Craig Goodmark (cgoodmark@gmail.com) <cgoodmark@gmail.com>
**Cc:** Jeff Daniel <jeff.daniel@nelsonmullins.com>
**Subject:** Ford, Jamir: IEP

Jon and Craig,

Exhibit 34



**Craig Goodmark <cgoodmark@gmail.com>**

---

## RE: Ford - Consent Form for CBC
1 message

---

**Hayden H. Hooks** <hhooks@perrywalters.com>                    Thu, May 28, 2020 at 1:12 PM
To: Craig Goodmark <cgoodmark@gmail.com>
Cc: Jennifer Alexander <jalexander@compbehavior.com>

Craig,

I think Fulton is interested the consent piece rolling again, per Jennifer. Below is some suggested language that has been agreed to by Nelson Mullins. Please let me know your thoughts.

"All correspondences and communications with parties, including 3rd parties, concerning Jamir will conform with and be in adherence to The Behavior Analyst Certification Board's Professional and Ethical Compliance Code for Behavior Analysts. Jamir's Mother will be copied on all written communications originating from CBC directly concerning Jamir including placement, discipline, and academic progress. CBC shall not be required to include mother in oral or written communications if the matter discussed is excluded from disclosure pursuant to the Georgia Open Records Act or is subject to protection by FERPA, attorney/client privilege, or other state or federal laws. CBC shall further not be required to include the mother in communications with district officials relating to progress (progress as defined herein is meant to include conversations between CBC staff and district officials to determine when additional interventions from CBC staff may be required or when interventions may be scaled back and whether additional training or staff reassignments should take place), scheduling and similar logistical matters. CBC shall also not be required to include the mother in training sessions with teachers, behavior specialists and other service providers."

**From:** Craig Goodmark <cgoodmark@gmail.com>
**Sent:** Tuesday, April 21, 2020 12:40 PM
**To:** Hayden H. Hooks <hhooks@perrywalters.com>
**Subject:** Ford - Consent Form for CBC

Hayden - Sorry I did not get back to you last week. The child is now learning at home, but his placement has moved from the GNETS to New Prospect Elementary School. Our concerns are not with training conversations and feedback to teachers and support staff, but with conversations with FCSD administrators and counsel. If by "outside the local school" you are referring to administrators and counsel, then we should be okay. Here is the consent form with that language. Thanks for looking into this.

Craig

On Thu, Apr 16, 2020 at 1:53 PM Hayden H. Hooks <hhooks@perrywalters.com> wrote:

I haven't talked to her about this specifically in awhile. Remind me—where is Jamir being served now? My main concern is if he is in a classroom setting at FCSD, then Jen would need to communicate with some FCSD at school to help train them and give guidance and it seems inefficient and overly burdensome to have Ms. Ford be a party to all those conversations. Perhaps we could work out a compromise situation where she only communicates with people outside of the local school the mom can participate.

**From:** Craig Goodmark <cgoodmark@gmail.com>
**Sent:** Thursday, April 16, 2020 12:46 PM
**To:** Hayden H. Hooks <hhooks@perrywalters.com>
**Cc:** Jon Zimring <zimring@zlawyers.com>
**Subject:** Consent Form for CBC

Hayden - We are still working on the Ford matter and have been trying to work through the terms of the CBC consent form (latest version attached) so that the student's mother can give Ms. Alexander consent to work with Jamir. Mom has been explaining that she simply does not want conversations about Jamir to happen without her. This consent form has been sent back to her many times by Ms. Alexander.

I didn't know if you were advising Ms. Alexander on this. If so, I was hoping to break through this communication impasse so that Ms. Alexander can work with Jamir. To do that, we simply need language that says that Ms. Alexander will not have conversations with FCSD and/or counsel for FCSD without giving notice and an opportunity to participate to Ms. Armour. We think this is consistent with the ethical obligations for Ms. Alexander's industry, so there should be really no issues there. Also, this is consistent with other consent forms Ms. Alexander has used. If this is objectionable, could you let us know what is the objection? Much appreciated.

Craig

--

CRAIG GOODMARK
1425 Dutch Valley Place
Atlanta, GA  30324
Phone: 404-719-4848

--

**Exhibit 35**

# GOODMARK LAW FIRM, LLC

1425A DUTCH VALLEY PLACE
ATLANTA, GEORGIA 30324
OFFICE 404.719.4848
EMAIL: CGOODMARK@GMAIL.COM

June 17, 2020

**VIA EMAIL (**samantha.lewis@nelsonmullins.com**)**

Ms. Samantha Lewis
Nelson Mullins Riley & Scarborough LLP
201 17th Street NW
Suite 1700
Atlanta, GA 30363

     **RE:   Ford. v. FCSD**

Samantha:

     We write specifically to address the on-going disconnect between the parties regarding the discussion about J.F.'s IEP, the provision of ESY, and the District's efforts to conflate such services into compensatory services as per the Court's Order. This is impacted by the absence of an IEP and the failure to allow for a consensual ESY. We have reviewed the email correspondence between the District through Ms. Gilland and Ms. Armour, and want to clarify and correct several apparent misconceptions and/or outright misrepresentations by the District. Ultimately, the parties will either opt to resolve these disputes or they will be presented to the Court as part of the current matter, as they relate to the counterclaims which will have to be raised by the Family.

     **THE IEP**:  The IEP the District has been implementing appears to be the April 1, 2020 IEP that was created well after the parties met on February 25, 2020.  Setting aside the procedural issues with the creation of this IEP outside of an IEP meeting, and the absence of a PWN as has been requested, the District's proposed IEP:

1. Is not based on grade level standards and for two years J.F. was subjected to a lack of instruction and his GNETS teacher either would not or could not teach grade level standards;
2. Fails to propose an adequate amount of support from either the special education teacher or the regular education teacher;
3. Has inappropriate goals and objectives that do not meet J.F.'s needs or confer any meaningful educational benefit in light of J.F.'s circumstances, they are neither ambitious nor are they measurable. Suggesting that a goal that says that J.F. will progress is adequate is something we will not agree to. The goals and objectives are not adequate in scope or content;
4. Contains proposed services and instruction that is not based on appropriate grade level standards.  J.F. is moving into the third grade, and there is no data to support he performs anywhere near that level in reading or math.  The District continues to ignore this reality

and in doing so is merely setting J.F. up to fail. He is to be in a 3rd grade co-taught class with some goals and objectives designed for the first grade;

5. Fails to identify any appropriate program or curriculum, and without any such programming, there is no clear recommendations as to the scope, sequence, time, frequency, or the assessment of J.F.'s progress. This is akin to saying "he got some OG" and not clarifying any further to the IEP Team. The District needs to explain to the Family details about the program, his placement in it, its scope and sequence and how if not implemented as the producer provides, what will be done;

6. Fails to properly and completely identify J.F.'s educational weaknesses, i.e., his impairment or what he has lost or missed. Without this clear statement of lost achievement and missing skills, the IEP Team and J.F.'s teachers have no roadmap for how he will recover the skills lost over the past two years. We expect that by end of ESY J.F. will be achieving 2nd Grade Reading and Writing standards, so as he moves onto third grade he does not remain two grade levels behind in reading. Similarly, in math, J.F. remains over one grade level behind, but the objectives do not reflect instruction on appropriate grade level standards such as telling analog and digital time, rote addition of digit numbers, solving word problems with money, understanding place values up to three digits. Similarly, in writing J.F. is well behind grade level standards yet his IEP does not adequately address this skill; and,

7. Has inadequate accommodations and modifications and fails to identify why some that have been suggested are ignored or rejected by the District.

The IEP reflects the District's unwillingness to recognize that we are not agreeing to "business as usual" and that will not work in this case. J.F. has intensive educational needs as a result of his time at GNETS. He will need intensive instruction to recoup that lost time and gain the skills required for him to matriculate into the upper elementary grades (4 through 6). Since J.F. is not on track to learn to read before the end of the third grade, and he will not be ready to read to learn moving forward. This must be addressed immediately and intensively.

**ESY**: With regards to the on-going discussions about ESY, Ms. Armour has disagreed with the District proposals for ESY based on the inappropriateness of the goals and objectives and the amount and type of special education instruction and services proposed by the District. Ms. Gilland has several times repeated that these goals and special education were "agreed to by the IEP Team." This is not correct. There has not been any agreement by Ms. Armour with respect to the goals and objectives, the special education instruction, the related services, and the placement proposed by the District. Ms. Armour has stated this several times in communications with Ms. Gilland, and most recently via email on June 2, 2020 she wrote, "*I do not agree that the District's proposed ESY services are appropriate or constitute FAPE for Jamir*; I am NOT withholding any consent for the initiation of those services that were to be provided from the special education teacher," and "*I do not agree that the related services being suggested are appropriate* and am seeking private services **FOR ESY**…"

The District has not provided any appropriate ESY, as they have not properly assessed, recommended, or implemented an educational plan that meets J.F.'s intensive needs. ESY started in the District on or about June 1, 2020. J.F. is entitled to compensatory educational

services for this delay and the failure to recommend appropriate services.  He is also entitled to more ESY on more and different goals and different objectives than provided.

**COMPENSATORY EDUCATION**: The manner by which the District has conflated the compensatory education award set out in the Court's Order and the initiation of ESY has only served to delay the provision of appropriate services to J.F. and entitles J.F. to even more compensatory education.  On this issue, Ms. Armour has again been very direct.  In her email on June 1, 2020, Ms. Armour gave the District notice that, "[W]e are entitled to additional compensatory services for several reasons: Fulton's delay after the Court's Order which was based at first on the time Jamir was held in the GNETS but that this continued, and additionally on the inadequacy of the Covid-19 services to meet his transition and instruction."  In response, Ms. Gilland proposed five hours per week of compensatory services, with one hour per week of SLP and OT.  The amount of *appropriate* compensatory instruction, as you know, is determined not by mere appropriateness, but is an amount "place children in the position they would have been but for the violation of the Act."  *Draper vs. AISS*, 518 F.3d 1275 (11th Cir. 2008).  "[O]rdinary [educational programs] need only provide 'some benefit,' *compensatory awards must do more-they must compensate*."  Id. citing Reid ex rel. Reid v. District of Columbia, 401 F.3d 516, 525 (D.C.Cir.2005).

The District's offer, ignoring the very specific direction of the Court with regards to the adoption of both Ms. Cohen's and Ms. Wing's expert recommendations, is neither appropriate nor compensatory as defined by *Draper*.  In addition, Ms. Gilland stated that the compensatory services were for 18 months, however, this ignores the time from January 22 to date that J.F. has continued to be denied FAPE and is entitled to a remedy of compensatory educational services.  There is nothing that supports that compensatory services of 5 hours a week were adequate to meet the 32 hours of week of inappropriate instruction. We have never been allowed an explanation for this and simply do not agree.

When this case started J.F. was not even six years old.  He is now entering the third grade and has not progressed in any meaningful way since being served by Fulton County Schools.  This is over a course of time when there is no evidence in the record of behavior materially interfering in instruction, whereas there are findings of the absence of language therapy and other needs. Needless to say, J.F. is now at a serious risk of not being able to read by the end of the third grade – a critical benchmark for any successful student.  There can be no further delay in providing the appropriate services to Jamir.

We have repeatedly made settlement overtures as the District has shown little to no interest in actually serving this student.  We refer your client back to the offer of settlement made in my letter dated March 20, 2020, that was rejected out of hand, and invite the District to make a good faith counter offer. Alternatively, we can discuss the compensatory services separately, once we get the ESY underway and understand from you the efficacy of five (5) hours a week, and by who(m).  In any event, J.F. has a right to be educated like every other student in the District and that is not limited by his disability, the color of his skin, or the fact that your client does not agree with the Court's order.

Sincerely,

***<u>/s/ Craig Goodmark</u>***
***<u>/s/ Jonathan Zimring</u>***
Craig Goodmark
Jonathan Zimring

**Exhibit 36**

# GOODMARK LAW FIRM, LLC

1425A DUTCH VALLEY PLACE
ATLANTA, GEORGIA 30324
OFFICE 404.719.4848
EMAIL: CGOODMARK@GMAIL.COM

July 14, 2020

**VIA EMAIL** (samantha.lewis@nelsonmullins.com)

Ms. Samantha Lewis
Nelson Mullins Riley & Scarborough LLP
201 17th Street NW
Suite 1700
Atlanta, GA 30363

  RE: Jamir Ford; 2020-2021 School Year

Dear Samantha:

  We write to address the recent emails received by our client, Jatoyia Amour, with respect to the Fulton County School (FSC) options for student attendance in school in August 2020 as either individual remote learning or "face to face" instruction. We appreciate the new and difficult challenges created by COVID-19 and the need to take system-wide administrative action, however FCS's failed to acknowledge that students with disabilities are guaranteed an appropriate, individualized educational experience. Their "all or nothing" approach ignores both the IDEA and the anti-discrimination statues protecting students with disabilities. For our part, we are willing to collaborate to find creative and workable solutions that ensure that students with disabilities continue to receive the meaningful educational benefit that IDEA guarantees them. We trust that FCS will show a commitment to the same.

  As a general matter, FCS's two option offer places families in an "all or nothing" circumstance where they will have to forego "face to face" instruction because they do not want their child to return to the school building, or consider it unsafe to their child, or then to their family. Additionally, there are problems with the offer of FAPE notwithstanding the location and implementation of the services.

  These "one or the other" presents a false dichotomy that either a student comes to school to get live instruction or that student simply does not get live

instruction. For many non-disabled students that may approach being a substitute or approach the emergency minimum standards, but for students protected by IDEA those limitations do not exist. Indeed, individualized instruction means just that – fitted to each individual child and in the manner and location of services that is appropriate. Specialized instruction further fits this understanding. While some children may make progress in a virtual situation, many children with attention, sensory, cognitive or other similar challenges will not. And for those children, they now risk either being exposed to COVID-19 or not get any meaningful instruction. There is no current interpretation of IDEA that allows for such a circumstance.

Second, to the extent that any child's election of either option impacts the implementation of the child's IEP, such election does not constitute waiver of any or all of the services in the students' IEP. An election in the face of these limited options cannot be construed as any type of waiver, nor is it permissible under IDEA/504/ADA to present options that ask parents to waive their federal and state statutory rights.

If a students' IEP requires modification based on the present circumstances and inherent limitations on full implementation, then the procedures to review and revise an IEP must be followed. In that context, the parent may take the lessor of evils, but will still retain their rights to FAPE and to compensatory services. Such a process preserved the parent's right to meaningfully collaborate with the school about the proposed change, consider other delivery models and locations on the continuum, raise issues as they arise. All parents retain the right to disagree with proposed changes, offers, and any admitted failure to implement a full continuum and file an administrative due process hearing request. These are pillars of IDEA procedure, and FCS has failed to account for this legal reality and unfortunately seems to fail to give the parents adequate notice of the legal situation and their rights.

Third, FSC has not considered the full continuum of placement options and services available in the community. Students *can* receive live face to face instruction in their homes or other neutral and safe locations. They could receive small group instruction in the community or by attending school for only part of a school day or on specific school days during the week, or receive therapies in isolated safe places within the school and community, thereby limiting COVID exposure. For some students, direct services in the community or in low risk outdoor settings may be appropriate. The current options from the

District simply do not consider these things and by failing to do so, limit a Families ability to access live instruction. Many non-disabled students are not subjected to these same limitations and the impact of that on students with disabilities constitutes illegal discrimination on the basis of disability in violation of Section 504 and the Americans with Disabilities Act.

With respect to the two options presented to Ms. Amour regarding Jamir, neither would satisfy the requirements of IDEA or provide Jamir appropriate educational instruction, nor constitute a placement based on a full consideration of locations and services. Face to face instruction in a traditional school setting is not appropriate for Jamir. Jamir's Family is not willing to risk the certain exposure to COVID-19 that will occur in the school environment and does not agree that classrooms can be kept reasonably safe for her child. Thus, as a result of FCS's all or nothing offer of school, the only remaining option is for Jamir to enroll in a virtual learning environment that will not be directly administered by FCS. This too, is inappropriate. Neither of these address the problems with the inadequacy of his "IEP" or the failure to develop one that meet his needs.

As we have stated several times, Ms. Amour disagrees with the IEP as written and currently implemented. Ms. Amour has sought relief for several procedural and substantive violations of IDEA and the ADA arising from FCS's failure to implement the Court's January 21 Order and the subsequent inability to create or implement an appropriate IEP. Thus, even if Ms. Amour is forced to accept the virtual option, she does not agree that FCS has, can or will provide FAPE to Jamir.

Ms. Amour reserves all rights under IDEA, Section 504 and the ADA, related to Jamir Ford and his educational experience in FCS. Ms. Amour is seeking live, non-school based instruction where Jamir can finally learn to read and will be cognitively engaged and emotionally supported.[1]

---

[1] This response does not address Jamir and Ms. Armour's entitlement to compensatory education under the ALJ Final Decision, nor there right to such relief in the case in the United States District Court, nor the right to additional compensatory instruction and therapy due to the Covid-19 response. These all require that FAPE be first established so the services can be "truly" compensatory.

We have written several times to manage some collaborative response to the planning and implementation of FAPE, COVID-19, ALJ ordered services and compensatory education with little success. In lieu of a response on the merits of these requests our client has been sued, we have been asked several times to explain what we want – which we have done with no success – and any collaborative response has been ignored. Further, FCS has taken to overriding what we thought were discussions with counsel with direct contacts to Ms. Armour on the same issues, often without correlation to the prior discussions. We regret this approach, and again make it clear that we are available to discuss this issue and see if a less onerous path for Jamir's education can be created.

We appreciate communication through counsel on the issues raised in this letter and if Ms. Armour receives any information that may affect Jamir's legal rights, related to the Court's January 21 Order, or in any way relate to the issues raised in litigation, which include prospective provision of FAPE, we receive notice and copy of that communication.

Sincerely,

*/s/ Craig Goodmark*

*/s/ Jonathan Zimring*
Craig Goodmark
Jonathan Zimring

C: JA

**Exhibit 37**



## Ford, Jamir: Return to School

1 message

**Samantha Lewis** <samantha.lewis@nelsonmullins.com>                    Thu, Jul 16, 2020 at 11:54 AM
To: Jon Zimring <zimring@zlawyers.com>, "Craig Goodmark (cgoodmark@gmail.com)" <cgoodmark@gmail.com>

Jon and Craig,

I am in receipt of your correspondence from this week.  We appreciate the concerns you have raised about the student.  If the family has concerns about the safety of the District's plan for re-opening, they should feel free to contact the District to voice those concerns.  As you well-know from the news, this situation is changing rapidly by the minute and Fulton's plan for re-opening just changed less than an hour ago.  The District will be in touch with all special education families in the very near future to discuss individual plans for individual students for the fall semester.  Furthermore, the District has offered several dates to your client for an IEP meeting with Jamir's team for this coming year, but they have received no response.

Very truly yours,

Samantha Lewis



SAMANTHA P. LEWIS   OF COUNSEL

samantha.lewis@nelsonmullins.com

ATLANTIC STATION | SUITE 1700

201 17TH STREET NW | ATLANTA, GA 30363

T 404.322.6166   F 404.322.6050

NELSONMULLINS.COM   VCARD   VIEW BIO

Nelson Mullins is continuing to monitor developments related to COVID-19, including guidance from the Centers for Disease Control and various health officials; and federal, state, and local government authorities. The firm has implemented precautionary measures and plans to ensure the continuation of all firm services to clients from both in office and remote work arrangements across our 25 geographically dispersed offices.  Click here to visit the Nelson Mullins Coronavirus Resources page. Information described therein is subject to change.

**Confidentiality Notice**
This message is intended exclusively for the individual or entity to which it is addressed. This communication may contain information that is proprietary, privileged, confidential or otherwise legally exempt from disclosure. If you are not the named addressee, you are not authorized to read, print, retain, copy or disseminate this message or any part of it. If you

have received this message in error, please notify the sender immediately either by phone (800-237-2000) or reply to this e-mail and delete all copies of this message.





**Exhibit 38**

**Fulton County School District**
6201 Powers Ferry Road
Atlanta, GA 30339
Phone: 470-254-3600

---

## SERVICES FOR EXCEPTIONAL CHILDREN
### Individual Education Program (IEP)

**Meeting Date:** 02/25/2020

| Student: Jamir Yelstine Ford | Student ID #: 2000132774 | Birthdate: 06/09/2012 | Age: 7 | Grade at Meeting: 2nd Grade |
|---|---|---|---|---|
| Attending School: New Prospect Elementary | | Case Manager: Rafael Jordan | | Proposed School: New Prospect Elementary |

**Meeting Purpose:** Annual Review

**IEP Implementation Date:** 02/26/2020
**Primary Eligibility Date:** 10/10/2018

**IEP Ending Date:** 02/24/2021
**Psychological Testing Date:** 10/12/2017

**Primary Exceptionality:** Significant Developmental Delay
**Tertiary Exceptionalities:**

**Secondary Exceptionalities:**

**Additional Exceptionalities:**

**Relationship to Student:** Mother
**Name:** Jatoyia Armour
**Address:** 4645 Valais Ct #84 Alpharetta, GA 30022
**Home Phone:** (770)837-1967     **Work Phone:**          **Cell Phone:**

**Relationship to Student:** Father
**Name:** Aman Muhammad
**Address:** 4645 Valais Ct #84 Alpharetta, GA 30022
**Home Phone:** (770)837-1967     **Work Phone:**          **Cell Phone:**

---

### IEP Meeting Participants

The following individuals attended the IEP Committee Meeting and participated in the development of this Individualized Education Program:

| Name | Title | Signature |
|---|---|---|
| Aman Muhammad | **Father** | |
| General Education Teacher | **General Education Teacher** | |
| Jatoyia Armour | **Mother** | |
| Rafael Jordan | **Case Manager** | |
| Shelly S Howman | **Related Service Lead** | |

**Page: 1**



Parental Rights Given:     Parental Rights Explained by:   on

The parent/guardian of this student was unable to attend the IEP Meeting.



**Student:** Jamir Yelstine Ford
**Student ID#:** 2000132774

**DOB:** 06/09/2012
**School:** New Prospect Elementary

**Date of Meeting:** 02/25/2020
**Grade at Meeting:** 2nd Grade

## Impact of the Disability and Parental Input

**Summarize the student's current educational performance:** Jamir is 7 years old and currently being served in the GNETS PROGRAM at New prospect Elementary School, Alpharetta. He is currently eligible for Significant Developmental Delay (SDD) for emotional and behavior development. He is currently receiving special education services in all academic areas in the special education classroom. Jamir also has a categorical paraprofessional from arrival to dismissal. Jamir participates in the general education setting during specials with same age peers.

**Parental concerns regarding their child's education:** Will be discussed at the meeting

**Impact of the disability on involvement and progress in the general education curriculum (for preschool, how the disability affects participation in appropriate activities):** Jamir's Significant Developmental Delay in emotional and behavior development are characterized by his inability to control his behavior. He displays physical aggression and property destruction inside the classroom. The severity, frequency, & intensity of student's problem behavior directly impacts his ability to safely and effectively participate and progress in the general education curriculum. Jamir requires specialized instruction (BIP) from his special education teacher and staff throughout the day.

## Present Levels of Performance and Educational Needs

### PSYCHOLOGICAL

**Present Level of Performance based on the recent evaluation results and current functioning:**

Academic Achievement: The Kaufman Test of Educational Achievement, Third Edition (KTEA-3) was designed to measure school achievement of children enrolled in Grades 1-12. The Comprehensive Form also provides criterion-referenced assessment data to analyze the students' errors in each subtest content area. Additionally, all standard scores in both forms are set at a mean of 100, with a standard deviation of 15, to allow for comparisons between the KTEA-3 and previously obtained standard IQ scores. Jamir's results were as follows: Jamir's performance on Math Concepts and Applications yielded a standard score of 106, which fell within the Average range. This subtest required Jamir to orally respond to items that require applications of mathematical principles to real life situations. Jamir's performance on Letter & Word Recognition yielded a standard score of 87, which fell within the Below Average range. Jamir was required understand phonemes presented. Jamir's performance on Math Computation yielded a standard score of 107 which fell within the Average range. This subtest required Jamir to write answers to as many math calculation problems as possible. Jamir's performance on Reading Comprehension yielded a standard score of 89, which fell within Below Average range. Jamir was required to read symbols, words, sentences, and passages appropriate to his grade level, and then respond to comprehension questions. Jamir's performance on Written Expression yielded a standard score of 75, which fell within the Low range. Jamir heard a story presented with pictures in a booklet and completed the story by writing letters, words and sentences. Jamir's performance on Spelling yielded a standard score of 88, which fell within the Below Average range. Jamir wrote single letters and spelled words dictated by the examiner. On March 15, 2019 Mr. Jordan completed the SDQ. The results are as follows: Overall Stress: 19(Very High), Emotional Distress: 4 (Slightly Raised), Behavioral Difficulties: 4 (High), Hyperactivity and Concentration: 6 (Slightly Raised), Difficulties getting along with other children: 5 (High), Kind and Helpful Behavior: 4 (Low), Difficulties on Child's Life: 5 (Very High). The Behavior Assessment System for Children, Third Edition (BASC-3) was administered on 10/30/2018. Mr. Jordan completed the BASC-3 Teacher Rating Scale, which resulted in the following profile: Externalizing Problems: 54 (Average), Internalizing Problems: 40 (Average), School Problems: 44 (Average), Behavioral Symptoms: 47 (Average), and Adaptive Skills: 48 (Average). During the last comprehensive evaluation which was

Fulton County School District Individualized Education Program

| Distribution: | Central Office | Parent/Guardian | Student File | General Education Teacher |
| --- | --- | --- | --- | --- |

Page: 3



**Student:** Jamir Yelstine Ford
**Student ID#:** 2000132774

**DOB:** 06.09.2012
**School:** New Prospect Elementary

**Date of Meeting:** 02/25/2020
**Grade at Meeting:** 2nd Grade

completed in June 2018. Jamir was administered the Wechsler Preschool and Primary Scales of Intelligence, Fourth Edition (WPPSI-IV). The WPPSI-IV is used to measure the general thinking and reasoning skills of children. Jamir's Full Scale IQ score, a measure of overall intellectual ability, was in the Average range compared to other children who are 5 years and 11 months old. FSIQ = 104. Jamir's performance on various subtests of the WPPSI-IV suggested a pattern of cognitive strengths and weakness. Difficulties in the areas of working memory, attention and concentration may have contributed to Jamir's performance weaknesses on some of the subtests. In addition, administration of the Kaufman Test of Educational Achievement, Third Edition (KTEA-3) placed Jamir in the Below Average range on the Academic Skills Battery Composite. The Behavior Assessment System for Children, Third Edition (BASC-3) was also completed by two teachers, along with Jamir's mother and his caregiver. All profiles completed placed Jamir either in the Clinically Significant or At-Risk range in the areas of overall Behavioral Symptoms Index, Aggression, Internalizing and Externalizing Problems. Last, completion of the Vineland Adaptive Behavior Rating Scales, Third Edition (Vineland-3) by Jamir's mother suggested that while Jamir's overall adaptive behavior is in the Average range, he demonstrated significant maladaptive behaviors such as harming himself or wandering away without regard for safety.

---

## ACADEMIC

**Present Level of Performance based on the recent evaluation results and current functioning:**

The most recent i-Ready diagnostic test (12-3-19) shows Jamir's reading scores as follows: Overall: Grade K 418 (Scale Score) -Phonological Awarenesss: Max Score 486 (scale score)- Phonics: Grade K 410 (scale score)- High frequency words: Grade K 375 (scale score )- Vocabulary: Grade K 394 (scale score)- Comprehension Literature: Grade K 408 (scale score)- Comprehension Informational Text: Grade 1 441 (scale score).

The most resent i-Ready diagnostic test (12-12-19) shows Jamir's Math scores as follows: Overall Grade 1 427 (scale score) -Numbers and operations: Grade 1 407(scale score)- Algebra and Algebraic Thinking: Early 2 436 (scale score)- Measurement and Data: Early 2 433 (scale score)- Geometry: Mid 2 437 (scale score).

Reading/Language Arts: Jamir is currently receiving instruction using a combination of Fountas & Pinnell Leveled Literacy Intervention System (LLI) and Orton Gillingham. Within the LLI Program, Jamir is currently reading on an Instructional Level F (grade level equivalent 1) and Independent Level E (grade level equivalent 1). Based on i-Ready assessment data, and classroom observations and data, Jamir can read 20/20 Grade/Stage K sight words, 40/41 Grade/Stage 1 sight words and 7/55 Grade/Stage 2 sight words. He is also able to read beginning and ending blends, vowel endings, and decode regularly spelled one-syllable words with short vowels. Jamir is currently working on reading comprehension, and with support he can identify cause-and-effect relationships. Jamir is currently working on writing sentences that retell an event from a story.

Math: Jamir is following the general curriculum for 2nd grade math utilizing accommodations and modifications. Jamir can read and write numbers up to 1,000 using number words, standard form, and expanded form. He understands place value for numbers up to 3 digits. Jamir can skip count by 5, 10, & 100 and compare 3-digit numbers using greater than/less than/equal to symbols. Jamir is also able to create and analyze picture graphs, bar graphs, and line plots for 4 categories of data. Jamir can also add and subtract three digit numbers with regrouping. Currently Jamir is working on recognizing and drawing shapes with specified attributes, such as a given number of angles or a given number of equal faces. He is also working on Identifing triangles, quadrilaterals, pentagons, hexagons, and cubes.

Science: Jamir is following the general curriculum for Science with accommodations and modifications. So far this year Jamir has learned about the properties of matter and the property changes that can occur. He is currently working on the phases moon, the stars, the sun, day and night and seasons.

Social Studies: Jamir is following the general curriculum for Social Studies utilizing accommodations and modifications.

**Fulton County School District Individualized Education Program**

| Distribution: | Central Office | Parent/Guardian | Student File | General Education Teacher |
| --- | --- | --- | --- | --- |
| | | Page: 4 | | |



| Student: Jamir Yelstine Ford | DOB: 06/09/2012 | Date of Meeting: 02/25/2020 |
|---|---|---|
| Student ID#: 2000132774 | School: New Prospect Elementary | Grade at Meeting: 2nd Grade |

So far this year, Jamir has learned about the topographical features of Georgia and the Georgia regions and rivers. We will be introducing next the lives and contributions of Jackie Robinson, Juliet Gordon and Jimmy Carter.

**Student needs including most recent evaluation results and current functioning:**

Reading/Language Arts: Based on most recent assessments and classroom data, Jamir needs to continue working to increase the number of sight words he is able to identify and read and continue working to improve his academic and domain specific vocabulary.

## VISION

**Present Level of Performance based on the recent evaluation results and current functioning:**

Student wears glasses.

## HEALTH/MEDICAL

**Present Level of Performance based on the recent evaluation results and current functioning:**

According to the social history on February 3rd 2019, Jamir is currently taking concerta and clonidine.

## EMOTIONAL/SOCIAL/BEHAVIORAL

**Present Level of Performance based on the recent evaluation results and current functioning:**

Jamir comes in every day ready to learn. He has made friends and engages with same aged peers. He is currently following a very structured work break schedule and he is very invested in our classroom token economy. Jamir has made progress with all of his behavioral objectives. He is following directions with one verbal prompt at an average 93% of the time and he is responding appropriately to peers 97% of the time. Jamir has exhibited physical aggression/property destruction an average of 12 times per day from 1/06/2020 to 2/13/2020.

**Student needs including most recent evaluation results and current functioning:**

Jamir can be easily angered and/or frustrated when things don't go his way or he perceives that things are too hard. When this happens, he can engage in work refusal, active defiance, property destruction and physical aggression. Jamir needs to continue working on reducing the frequency of aggressive behaviors and property destruction. According to the results of the functional analysis, Jamir's problem behavior (physical aggression and property destruction) is maintained by (a) negative reinforcement in the form of escape from demands, (b) negative reinforcement in the form of escape from interruption of ongoing activities, and (c) positive reinforcement in the form of access to preferred items/activities.

Fulton County School District Individualized Education Program

| Distribution: | Central Office | Parent/Guardian | Student File | General Education Teacher |
|---|---|---|---|---|
| | | Page: 5 | | |



Fulton County School District
Services for Exceptional Children

**Student:** Jamir Yelstine Ford
**Student ID#:** 2000132774

**DOB:** 06/09/2012
**School:** New Prospect Elementary

**Date of Meeting:** 02/25/2020
**Grade at Meeting:** 2nd Grade

## Present Level of Performance - Consideration of Special Factors

**Does the student have behavior which impedes their learning or the learning of others?** Yes
   **If yes, consider the appropriateness of developing a Behavior Intervention Plan.**
   **Is a Behavior Plan Developed?** Yes

**Does the student have Limited English Proficiency?** No

**Is the student blind or visually impaired?** No

**Does the student have communication needs?** No

**Is the student deaf or hard of hearing?** No

**Does the student need assistive technology devices or services?** No

**If yes, describe the type of assistive technology and how it is used. If no, describe how the student's needs are being met in deficit areas.** Jamir is currently able to access the curriculum with standard based classroom tools.

**Does the student require alternative format for instructional materials?** No

**Does the student require special transportation?** Yes

   **Description of the type of specialized transportation needed:** Transportation to New Prospects (GNETS) without accommodations.

**What type of physical education does the student require?** Regular

**Graduation Diploma:** High School Diploma

**Does the student have any health/medical issues that impedes learning?** No

**Will the student be following the alternative math sequence?** Not Applicable
**If yes, complete the document, Math Matrix.**



**Student:** Jamir Yelstine Ford
**Student ID#:** 2000132774

**DOB:** 06/09/2012
**School:** New Prospect Elementary

**Date of Meeting:** 02/25/2020
**Grade at Meeting:** 2nd Grade

## Measurable Annual Goals and Short Term Objectives

**Area of Need:** *Emotional/Social/Behavioral*
**Position(s) Responsible:** Special Education Teacher
**Annual Goal 1:** *Jamir will improve behavior skills from present levels of performance to criteria listed in objectives*
**Goal/Objective Review Dates:**
Progress on goals and objectives will be reported on the same schedule as performance reporting for all students.

**Objectives/Benchmarks:**
*1) Jamir will reduce aggressive behaviors to 0 incidents per day for 6 consecutive weeks.*

| Method of Evaluation | Performance Criteria |
|---|---|
| Data Collection : Daily | 0 incidents per day for 6 consecutive weeks |

**Objectives/Benchmarks:**
*2) Jamir will reduce property destruction to 0 incidents per day for 6 consecutive weeks.*

| Method of Evaluation | Performance Criteria |
|---|---|
| Data Collection : Daily | 0 incidents per day for 6 consecutive weeks |

**Area of Need:** *Academic*
**Position(s) Responsible:**
**Annual Goal 1:** *Jamir will improve academics skills from present levels of performance to criteria listed in objectives*
**Goal/Objective Review Dates:**
Progress on goals and objectives will be reported on the same schedule as performance reporting for all students.

**Objectives/Benchmarks:**
*1) Jamir will read 32 additional sight words at his instructional level using an appropriate reading program.*

| Method of Evaluation | Performance Criteria |
|---|---|
| Data Collection : Twice a Week | 32 sight words |

**Objectives/Benchmarks:**
*2) When provided with 5 new words weekly, from an appropriate instructional material, Jamir will define the word with fill in the blank or multiple-choice format.*

| Method of Evaluation | Performance Criteria |
|---|---|
| | 80% accuracy for 9 consecutive weeks |



### Fulton County School District
### Services for Exceptional Children

**Student:** Jamir Yelstine Ford
**Student ID#:** 2000132774

**DOB:** 06/09/2012
**School:** New Prospect Elementary

**Date of Meeting:** 02/25/2020
**Grade at Meeting:** 2nd Grade

## Student Supports

To advance appropriately toward attaining annual goals; to be involved and progress in the general curriculum; to be educated and participate with other children in academic, non-academic, and extracurricular activities, the following accommodations, supplemental aids and services, and/or supports for school personnel will be provided:



**Instructional Accommodations:**
Adjusted length of assignments
Check for understanding
Chunk assignment/scaffolding
Extended time
1 or 2 step instructions
Clarify instructions/directions

**General Classroom Testing Accommodations:**
Extended time - 50%
Frequent monitored breaks
Small group
Preferential seating

**Supplemental Aids and Services** (those services and personnel needed by the child or on behalf of the child in order to participate in the general curriculum or educational programs):
A 1:1 paraprofessional will work with Jamir in all academic areas, transitions, lunch, recess, and grade level activities to assist Jamir with accessing the curriculum, maintain behavior, and/or participate safely.
Follow BIP

**Supports for School Personnel:**
A 1:1 paraprofessional will work with Jamir in all academic areas, transitions, lunch, recess, and grade level activities to assist Jamir with accessing the curriculum, maintain behavior, and/or participate safely. Training on Behavior Intervention Plan, training for data collection and review data quarterly by BCBA.


**Student:** Jamir Yelstine Ford
**Student ID#:** 2000132774

**DOB:** 06/09/2012
**School:** New Prospect Elementary

**Date of Meeting:** 02/25/2020
**Grade at Meeting:** 2nd Grade

## Assessment Determination for District and Statewide Assessments for Grades K-12

a) The student will participate in all required assessments WITHOUT accommodations: **Yes**

Tests the student will participate in without accommodations:

b) The student will participate in required assessments WITH accommodations: **No**

c) The student will participate in the Georgia Alternate Assessment (GAA): **No**
If yes, provide a statement of why the child cannot participate in regular assessment.

**Student:** Jamir Yelstine Ford
**Student ID#:** 2000132774

**DOB:** 06/09/2012
**School:** New Prospect Elementary

**Date of Meeting:** 02/25/2020
**Grade at Meeting:** 2nd Grade

## Placement Options Considerations

| | |
|---|---|
| General Education Setting Only | |
| General Education with Consultative Services | |
| General Education setting with Supportive Instruction | |
| General Education setting with Collaboration | |
| General Education setting with Co-teaching | |
| Special Education Setting | |
| Alternative Placement | |
| Related Services | |

## SPECIAL EDUCATION and RELATED SERVICES

School Year: 2019-2020
*Instructional Services in the General Education Classroom:* None

*Related Services in the General Education Classroom:* None

*Instructional Services Outside the General Education Classroom:* None

*Related Services Outside the General Education Classroom:* None



Fulton County School District
Services for Exceptional Children

**Student:** Jamir Yelstine Ford
**Student ID#:** 2000132774

**DOB:** 06/09/2012
**School:** New Prospect Elementary

**Date of Meeting:** 02/25/2020
**Grade at Meeting:** 2nd Grade

School Year: 2020-2021
*Instructional Services in the General Education Classroom:* None

*Related Services in the General Education Classroom:* None

*Instructional Services Outside the General Education Classroom:* None

*Related Services Outside the General Education Classroom:* None

This IEP will be implemented on days public school programs and the servicing school are in operation during the regular school year. Scheduled IEP services, despite any other statement in the IEP to the contrary, are not delivered on, or made up on or for, days the District or servicing school closes for any reason, such as inclement weather, holidays, partial days, professional learning days, early release days, and summer unless specified in the Extended School Year section of the IEP.



Fulton County School District
Services for Exceptional Children

**Student:** Jamir Yelstine Ford
**Student ID#:** 2000132774

**DOB:** 06/09/2012
**School:** New Prospect Elementary

**Date of Meeting:** 02/25/2020
**Grade at Meeting:** 2nd Grade

## Extended School Year Summary

**A)**    Are extended school year services necessary?

**B)**    Goals to be extended or modified:

Proposed



Fulton County School District
Services for Exceptional Children

**Student:** Jamir Yelstine Ford
**Student ID#:** 2000132774

**DOB:** 06/09/2012
**School:** New Prospect Elementary

**Date of Meeting:** 02/25/2020
**Grade at Meeting:** 2nd Grade

## Documentation of Prior Written Notice of IEP Meeting

|  | Date | Method of Notification | By Whom |
|---|---|---|---|
| **1st Notification** | 02/01/2020 | [X] Invitation<br>[X] Phone Call<br>[ ] In Person<br>[ ] Reminder Notice<br>[ ] Other | Samad Knight |
| **2nd Notification** |  | [ ] Invitation<br>[ ] Phone Call<br>[ ] In Person<br>[ ] Reminder Notice<br>[ ] Other |  |
| **3rd Notification** |  | [ ] Invitation<br>[ ] Phone Call<br>[ ] In Person<br>[ ] Reminder Notice<br>[ ] Other |  |



Fulton County School District
Services for Exceptional Children

**Student:** Jamir Yelstine Ford
**Student ID#:** 2000132774

**DOB:** 06/09/2012
**School:** New Prospect Elementary

**Date of Meeting:** 02/25/2020
**Grade at Meeting:** 2nd Grade

---

### Parent Participation in the IEP Process

---

[ ] Parent/Guardian attended the IEP meeting. My signature below indicates that I was invited to participate in the IEP preparation and that I understand its content. I have had explained to me the due process rights and procedures and have received a copy of the following documents:

[ ] Parental Rights in Special Education
[ ] Individual Education Program (IEP) and Meeting Minutes
[ ] Eligibility Report(s) (Initial or Reevaluation)
[ ] Evaluation Report(s) (Initial or Reevaluation)


[ ] Parent/Guardian was unable to attend the IEP meeting.

[ ] Parental Rights in Special Education
[ ] Individual Education Program (IEP) and Meeting Minutes
[ ] Eligibility Report(s) (Initial or Reevaluation)
[ ] Evaluation Report(s) (Initial or Reevaluation)

On _____(date) the documents were
[ ] Mailed
[ ] Given in person
[ ] Sent via student
[ ] Other:_____

School personnel responsible for forwarding documents to parents: Rafael Jordan, Case Manager

**Follow-up Contacts:**

| Date | Method | Result |
|------|--------|--------|
|  |  |  |
|  |  |  |


Parent/Guardian Signature: _____   Date: _____

**Signature/Special Education Teacher:** _____   **Date:** _____

Exhibit 39



**Fulton County School District**
6201 Powers Ferry Road
Atlanta, GA 30339
Phone: 470-254-3600

## SERVICES FOR EXCEPTIONAL CHILDREN
### Individual Education Program (IEP)

**Meeting Date:** 02/25/2020

| Student: Jamir Yelstine Ford | Student ID #: 2000132774 | Birthdate: 06/09/2012 | Age: 7 | Grade at Meeting: 2nd Grade |
|---|---|---|---|---|
| **Attending School:** New Prospect Elementary | | **Case Manager:** Rafael Jordan | | **Proposed School:** New Prospect Elementary |

**Meeting Purpose:**    Annual Review

**IEP Implementation Date:** 02/26/2020        **IEP Ending Date:** 02/24/2021
**Primary Eligibility Date:** 10/10/2018        **Psychological Testing Date:** 10/12/2017

**Primary Exceptionality:** Significant Developmental Delay        **Secondary Exceptionalities:**
**Tertiary Exceptionalities:**        **Additional Exceptionalities:**

**Relationship to Student:** Mother
**Name:** Jatoyia Armour
**Address:** 4645 Valais Ct #84 Alpharetta, GA 30022
**Home Phone:** (770)837-1967        **Work Phone:**        **Cell Phone:**

**Relationship to Student:** Father
**Name:** Aman Muhammad
**Address:** 4645 Valais Ct #84 Alpharetta, GA 30022
**Home Phone:** (770)837-1967        **Work Phone:**        **Cell Phone:**

## IEP Meeting Participants

The following individuals attended the IEP Committee Meeting and participated in the development of this Individualized Education Program:

| Name | Title | Signature |
|---|---|---|
| Aman Muhammad | **Father** | _____ |
| Amy Booms Lemons | **School Administrator** | _____ |
| Aron N Pollack | **Occupational Therapist** | _____ |
| Attorney for family | **Other** | _____ |
| Emily Z Lamos | **Related Service Lead** | _____ |
| General Education Teacher | **General Education Teacher/General Education Teacher** | _____ |





**Fulton County School District**
6201 Powers Ferry Road
Atlanta, GA 30339
Phone: 470-254-3600

| | | |
|---|---|---|
| Gilberto M Rodriguez | **IST** | _____ |
| Jaime K Uribe | **Related Service Lead** | _____ |
| Jatoyia Armour | **Mother** | _____ |
| Jennifer Alexander, Comprehensive Behavioral Change | **Other** | _____ |
| Patricia E Gilland | **LEA/SEC Admin** | _____ |
| Rafael Jordan | **Case Manager/Special Education Teacher/Special Education Teacher** | _____ |
| Robert W Abernathy | **Coordinator** | _____ |
| Samad Knight | | _____ |
| School Administrator | **School Administrator** | _____ |
| Shelly S Howman | **Related Service Lead** | _____ |
| Sherry M Johnson | **Related Service Lead** | _____ |
| _____ | _____ | _____ |
| _____ | _____ | _____ |
| _____ | _____ | _____ |

**Parental Rights Given:**    **Parental Rights Explained by:   on**

**The parent/guardian of this student was unable to attend the IEP Meeting.**



**Student:** Jamir Yelstine Ford
**Student ID#:** 2000132774

**DOB:** 06/09/2012
**School:** New Prospect Elementary

**Date of Meeting:** 02/25/2020
**Grade at Meeting:** 2nd Grade

---

## Impact of the Disability and Parental Input

**Summarize the student's current educational performance:** Jamir is 7 years old and currently being served in the GNETS PROGRAM at New prospect Elementary School, Alpharetta. He is currently eligible for Significant Developmental Delay (SDD) for emotional and behavior development. He is currently receiving special education services in all academic areas in the special education classroom. Jamir also has a categorical paraprofessional from arrival to dismissal. Jamir participates in the general education setting during specials with same age peers.

**Parental concerns regarding their child's education:** Will be discussed at the meeting

**Impact of the disability on involvement and progress in the general education curriculum (for preschool, how the disability affects participation in appropriate activities):** Jamir's Significant Developmental Delay in emotional and behavior development are characterized by his inability to control his behavior. He displays physical aggression and property destruction inside the classroom. The severity, frequency, & intensity of student's problem behavior directly impacts his ability to safely and effectively participate and progress in the general education curriculum. Jamir requires specialized instruction (BIP) from his special education teacher and staff throughout the day.

---

## Present Levels of Performance and Educational Needs

---

### PSYCHOLOGICAL

**Present Level of Performance based on the recent evaluation results and current functioning:**

Academic Achievement: The Kaufman Test of Educational Achievement, Third Edition (KTEA-3) was designed to measure school achievement of children enrolled in Grades 1-12. The Comprehensive Form also provides criterion-referenced assessment data to analyze the students' errors in each subtest content area. Additionally, all standard scores in both forms are set at a mean of 100, with a standard deviation of 15, to allow for comparisons between the KTEA-3 and previously obtained standard IQ scores. Jamir's 2/8/19 KTEA-3 results were as follows: Jamir's performance on Math Concepts and Applications yielded a standard score of 106, which fell within the Average range. This subtest required Jamir to orally respond to items that require applications of mathematical principles to real life situations. Jamir's performance on Letter & Word Recognition yielded a standard score of 87, which fell within the Below Average range. Jamir was required understand phonemes presented. Jamir's performance on Math Computation yielded a standard score of 107 which fell within the Average range. This subtest required Jamir to write answers to as many math calculation problems as possible. Jamir's performance on Reading Comprehension yielded a standard score of 89, which fell within Below Average range. Jamir was required to read symbols, words, sentences, and passages appropriate to his grade level, and then respond to comprehension questions. Jamir's performance on Written Expression yielded a standard score of 75, which fell within the Low range. Jamir heard a story presented with pictures in a booklet and completed the story by writing letters, words and sentences. Jamir's performance on Spelling yielded a standard score of 88, which fell within the Below Average range. Jamir wrote single letters and spelled words dictated by the examiner.

On March 15, 2019 Mr. Jordan completed the SDQ. The results are as follows: Overall Stress: 19(Very High), Emotional Distress: 4 (Slightly Raised), Behavioral Difficulties: 4 (High), Hyperactivity and Concentration: 6 (Slightly Raised), Difficulties getting along with other children: 5 (High), Kind and Helpful Behavior: 4 (Low), Difficulties on Child's Life: 5 (Very High).


**Student:** Jamir Yelstine Ford          **DOB:** 06/09/2012          **Date of Meeting:** 02/25/2020
**Student ID#:** 2000132774          **School:** New Prospect Elementary          **Grade at Meeting:** 2nd Grade

The Behavior Assessment System for Children, Third Edition (BASC-3) was administered on 10/30/2018. Mr. Jordan completed the BASC-3 Teacher Rating Scale, which resulted in the following profile: Externalizing Problems: 54 (Average), Internalizing Problems: 40 (Average), School Problems: 44 (Average), Behavioral Symptoms: 47 (Average), and Adaptive Skills: 48 (Average).

During the last comprehensive evaluation which was completed in June 2018, Jamir was administered the Wechsler Preschool and Primary Scales of Intelligence, Fourth Edition (WPPSI-IV). The WPPSI-IV is used to measure the general thinking and reasoning skills of children aged 2 to 7 years. Jamir's Full Scale IQ score, a measure of overall intellectual ability, was in the Average range compared to other children who are 5 years and 11 months old (FSIQ = 104). Jamir's performance on various subtests of the WPPSI-IV suggested a pattern of cognitive strengths and weakness. Difficulties in the areas of working memory, attention and concentration may have contributed to Jamir's performance weaknesses on some of the subtests. In addition, administration of the Kaufman Test of Educational Achievement, Third Edition (KTEA-3) placed Jamir in the Below Average range on the Academic Skills Battery Composite. The Behavior Assessment System for Children, Third Edition (BASC-3) was also completed by two teachers, along with Jamir's mother and his caregiver. All profiles completed placed Jamir either in the Clinically Significant or At-Risk range in the areas of overall Behavioral Symptoms Index, Aggression, Internalizing and Externalizing Problems.

On the 5/18/18 completion of the Vineland Adaptive Behavior Rating Scales, Third Edition (Vineland-3) by Jamir's mother suggested that while Jamir's overall adaptive behavior is in the Average range, he demonstrated significant maladaptive behaviors such as harming himself or wandering away without regard for safety.

On 4/5/19 Tyler Whitney, Psy.D. evaluated Jamir. At that time Jamir's nonverbal IQ on the CTONI-2 fell within the average range. At that time Jamir fell within the non-autistic range on the ADOS-G.

---

## ACADEMIC

**Present Level of Performance based on the recent evaluation results and current functioning:**

The most recent i-Ready diagnostic test (12-3-19) shows Jamir's reading scores as follows: Overall: Grade K 418 (Scale Score) -Phonological Awareness: Max Score 486 (scale score)- Phonics: Grade K 410 (scale score)- High frequency words: Grade K 375 (scale score )- Vocabulary: Grade K 394 (scale score)- Comprehension Literature: Grade K 408 (scale score)- Comprehension Informational Text: Grade 1 441 (scale score).

The most recent Fountas & Pinnell Benchmark Assessment Systems (BAS) to determine the student's independent and instructional reading levels was done on 12-17-19. He score at a instructional Level E (Grade 1) and a independent Level D (Grade 1). His previous 1/31/19 Fountas & Pinnell levels were at the Kindergarten range (Independent level A and Instructional level B).

The most recent fluency evaluation was done on 2-21-2020. Jamir is reading at 28 CWPM.

The most resent i-Ready diagnostic test (12-12-19) shows Jamir's Math scores as follows: Overall Grade 1 427 (scale score) -Numbers and operations: Grade 1 407(scale score)- Algebra and Algebraic Thinking: Early 2 436 (scale score)- Measurement and Data: Early 2 433 (scale score)- Geometry: Mid 2 437 (scale score).

Reading/Language Arts: Jamir is currently receiving instruction using a combination of Fountas & Pinnell Leveled Literacy Intervention System (LLI) and Orton Gillingham. Within the LLI Program, Jamir is currently reading on an Instructional Level F (grade level equivalent 1) and Independent Level E (grade level equivalent 1). Based on i-Ready assessment data, and classroom observations and data, Jamir can read 20/20 Grade/Stage K sight words, 40/41 Grade/Stage 1 sight words and 7/55 Grade/Stage 2 sight words. He is also able to read beginning and ending blends, vowel endings, and decode regularly



## Fulton County School District
## Services for Exceptional Children

**Student:** Jamir Yelstine Ford  **DOB:** 06/09/2012  **Date of Meeting:** 02/25/2020
**Student ID#:** 2000132774  **School:** New Prospect Elementary  **Grade at Meeting:** 2nd Grade

spelled one-syllable words with short vowels. Jamir is currently working on reading comprehension, and with support he can identify cause-and-effect relationships. Jamir is currently working on writing sentences that retell an event from a story.

Math: Jamir is following the general curriculum for 2nd grade math utilizing accommodations and modifications. Jamir can read and write numbers up to 1,000 using number words, standard form, and expanded form. He understands place value for numbers up to 3 digits. Jamir can skip count by 5, 10, & 100 and compare 3-digit numbers using greater than/less than/equal to symbols. Jamir is also able to create and analyze picture graphs, bar graphs, and line plots for 4 categories of data. Jamir can also add and subtract three digit numbers with regrouping. Currently Jamir is working on recognizing and drawing shapes with specified attributes, such as a given number of angles or a given number of equal faces. He is also working on Identifing triangles, quadrilaterals, pentagons, hexagons, and cubes.

Science: Jamir is following the general curriculum for Science with accommodations and modifications. So far this year Jamir has learned about the properties of matter and the property changes that can occur. He is currently working on the phases moon, the stars, the sun, day and night and seasons.

Social Studies: Jamir is following the general curriculum for Social Studies utilizing accommodations and modifications. So far this year, Jamir has learned about the topographical features of Georgia and the Georgia regions and rivers. We will be introducing next the lives and contributions of Jackie Robinson, Juliet Gordon and Jimmy Carter.

**Student needs including most recent evaluation results and current functioning:**

Reading/Language Arts: Based on most recent assessments and classroom data, Jamir needs to continue working to increase the number of sight words he is able to identify and read and continue working to improve his academic and domain specific vocabulary.

---

### COMMUNICATION/SPEECH LANGUAGE

**Present Level of Performance based on the recent evaluation results and current functioning:**

The classroom teacher, Mr. Jordan, completed the Fulton County language checklist (11-7-2019). The checklist rates Jamir's ability to understand and use spoken language in the classroom when compared to his same-age peers. He demonstrates the following skills as meeting or exceeding expectations: demonstrates understanding of curriculum vocabulary, states common opposites when prompted, determines the meaning of multiple-meaning words within the context of a sentence/story presented orally, states one similarity and one difference when presented with two pictures/words, asks and answers factual questions about text or information presented orally, retells familiar stories in sequence to include beginning, middle, and end, identifies the topic and two key details of a text presented orally with prompting and support, identifies effect when given a cause related to material presented orally with prompting and support, identifies effect when given a cause related to material presented orally, predicts what will happen next when provided with a 3-picture or 3-sentence sequence presented orally, uses frequent occurring irregular plural nouns (e.g., feet, children, teeth, mice, fish) and verbs (e.g., sat, hid, told) when speaking, uses sentence structures when speaking that incorporate prepositions, conjunctions or adjectives, follows oral 2-step directions related to daily routines with one repetition, asks and answers questions during conversation, chooses appropriate topic for the setting/situation, responds to speaker while maintaining the same topic. The following skill was checked as approaching expectations: request help when needed. Mr. Jordan completed the Fulton county social language checklist. Skills are rated as below expectations, approaching expectations, meets expectations, and exceeds expectations. Jamir demonstrates the following skills as meeting expectations: may interrupt or blurt out infrequently, will stop with one cue, demonstrates moderate awareness of level of interest and can change or end topic with assistance from an adult, can understand indirect language with some explanation from an adult or peer, can understand jokes, irony and sarcasm with



**Student:** Jamir Yelstine Ford     **DOB:** 06/09/2012     **Date of Meeting:** 02/25/2020
**Student ID#:** 2000132774     **School:** New Prospect Elementary     **Grade at Meeting:** 2nd Grade

some explanation from an adult or peer. The following skills were rated as exceeding expectation: will initiate with others independently, extends conversation (turn-taking) by asking relevant questions or making appropriate comments, remains on topic during conversation/discussions, consistently provides relevant information when answering a question, can accept the opinion of another person, even if it differs from their own, can restate or clarify independently. According to the IEE (speech evaluation) conducted by Mindy Cohen, SLP (6/2019), Jamir's strengths were noted in the following areas. Jamir's vocal pitch, loudness, and vocal quality were reported as appropriate. The Goldman Fristoe Test of Articulation-Third Edition (GFTA-3) was administered, and Jamir received a standard score of 87, which is within the average range. The Test of Auditory Comprehension of Language -4 (TACL-4) was administered, and he received above average scores in the areas of Vocabulary (SS 13), Grammatical Morphemes (SS 13), and Elaborated Phrases and Sentences (SS 13). The Test of Expressive Language was given and Jamir scored within the average range in the areas of Vocabulary (SS 9), Grammatical Morphemes (SS 8), Elaborated Phrases & Sentences (SS 11). Portions of the Clinical Evaluation of Language Fundamentals Fifth Edition (CELF-5) were administered. He scored within the average range in the areas of Linguistic Concepts (SS 9), Understanding Spoken Paragraphs (SS 9). The formulated sentences subtest from the CELF-5 was administered. He received a scaled score of 7. The examiner reports that this score is below the average range. However, according to Wing, Semel, Secord (2013), a scaled score of 7 is described as falling in the marginal/borderline/at-risk range. The IEE evaluator administered the SCAN-3 for Children-Test for Auditory Processing, and Jamir received scaled scores within the average range on the following subtests: Filtered Words (SS 8) and Auditory Figure Ground (SS 11).

**Student needs including most recent evaluation results and current functioning:**

According to the IEE (speech evaluation) conducted by Mindy Cohen, SLP (6/2019), Jamir's needs were noted in the following areas. The GFTA-3 revealed the following articulation errors: f/th(voiceless- teef/teeth, d/th (voiced-dat for that), omission of /r/ (gi affe for giraffe), consonant cluster reduction b/br (zeba/zebra), vowels (crayin/Crayon). The error substitution of f/th and d/th are both considered a dialectal difference and not a disorder in the African American English Language (AAE) (ASHA, 1983; ASHA, 2008; Kester, 2014). The Test of Word Finding-3 (TWF-3) was administered and Jamir obtained a standard score of 76, which is below the average range. He received below average scaled scores on two subtests from the SCAN-C: Competing Words (SS 1) and Competing Sentences (SS 1). The IEE evaluator gave the Comprehensive Test of Phonological Processing-2 (CTOPP-2). Jamir received below average scores in the areas of Phonological Awareness (Composite Score 71) and Phonological Memory (Composite Score 79). A Rapid Symbolic Naming composite score from the CTOPP-2 was not obtained due to Jamir having difficulty naming written letters. The Test of Early Reading Ability-4 (TERA-4) was administered and Jamir obtained below average scores in the areas of Alphabet (SS 3) and Meaning (SS 6).

---

## VISION

**Present Level of Performance based on the recent evaluation results and current functioning:**

Student wears glasses.

---

## HEALTH/MEDICAL

**Present Level of Performance based on the recent evaluation results and current functioning:**

According to the social history on February 3rd 2019, Jamir is currently taking concerta and clonidine.



Fulton County School District
Services for Exceptional Children

**Student:** Jamir Yelstine Ford
**Student ID#:** 2000132774

**DOB:** 06/09/2012
**School:** New Prospect Elementary

**Date of Meeting:** 02/25/2020
**Grade at Meeting:** 2nd Grade

---

**SENSORY/MOTOR**

**Present Level of Performance based on the recent evaluation results and current functioning:**

Jamir is sensitive to loud sounds, but successfully uses noise cancelling headphones independently.

**Student needs including most recent evaluation results and current functioning:**

From Private OT evaluation 04/16/2019 Sensory regulation presents as problematic for Jamir, demonstrating both a high and low threshold for input within the home environment. This is an environment where he feels safe, and more likely to demonstrate all aspects of his regulation. With the high threshold for input Jamir is likely to have low tone and fatigue easily, have difficulty finding things from a busy environment, notice all that is going on around him, distractibility, jump from one thing to another, and have a strong preference for certain foods. The low threshold Jamir experiences appears to be more significant, noted by his cautiousness, avoidance, sensitivity to input, emotional reactions, heed for predictability, and tendency to quickly mover through, "fright, flight and fight". When he becomes overwhelmed, frustrated or uncertain, he will over react as a method of self preservation. Based on the School Companion, it appears that overtime teachers have learned to understand Jamir's triggers and have been able to adapt the environment, tasks and situations to allow him to predict outcomes more successfully as well as to implement strategies for improved behavioral responses, such as the reward system in conjunction with self regulatory strategies. The dysregulation Jamir demonstrates, with a low threshold for input, appears to be due to his need for external organization, predictability and routine. When things don't go as he expects he will likely over react, such as with transitions, new situations, changes in his routine, etc. He appears to be a "perfectionist", needing to predict his success and control over his environment. It will be important for those working with Jamir to understand his need for the external organization and to provide it for him in various ways so that he is able to predict outcomes. Teaching himstrategies to deal with unexpected situations will be helpful so that he has a predictable manner to explore theunpredictable. The aggressive and impulsive behaviors he is reported to demonstrate at school appears to be due in part to the discrepancy between his cognitive potential and the inefficient organization of his body for motor output, resulting his frustration and learned behaviors to avoid the tasks and situations which he finds to be threatening. In order for Jamir to feel "safe" and to predict his environment, he has developed a repertoire of learned behavioral reactions to avoid the potential for the threatening situations. It appears that his teachers have learned to "read" his body language and to prepare Jamir and the environment for predictability and success. amir demonstrates several residual reflexes which are likely to interfere with his motor patterns, efficient motor actions, posture, crossing his midline, anxiety, and behavior. He was observed to use an inefficient motor approach to writing, using bottom up and segmentation, which will impact his control and autornaticity for writing. The residual reflexes Jamir demonstrates impact the volitional control of movement patterns. His Moro and Tendon Guard Reflexes will result in him being "on guard" especially with tasks which he perceives as difficult or unfamiliar, and at times resulting in avoidance either verbally or physically as well as a need for control. In conjunction with his vestibular based weakness, Jamir will tend to be in a state of "fright, flight or fight" in order to feel safe and have his world predictable. The discrepancy between Jamir's apparent perceptual and cognitive potential and his fine motor precision and manual dexterity, is likely to result in frustration and avoidance. He will tend to seek out what feels good to him and avoid that which is difficult.

---

**EMOTIONAL/SOCIAL/BEHAVIORAL**

**Present Level of Performance based on the recent evaluation results and current functioning:**

**Fulton County School District Individualized Education Program**

| Distribution: | Central Office | Parent/Guardian | Student File | General Education Teacher |
| --- | --- | --- | --- | --- |

**Page: 7**

**Student:** Jamir Yelstine Ford          **DOB:** 06/09/2012          **Date of Meeting:** 02/25/2020
**Student ID#:** 2000132774          **School:** New Prospect Elementary          **Grade at Meeting:** 2nd Grade

Jamir comes in every day ready to learn. He has made friends and engages with same aged peers. He is currently following a very structured work break schedule and he is very invested in our classroom token economy. Jamir has made progress with all of his behavioral objectives. He is following directions with one verbal prompt at an average 93% of the time and he is responding appropriately to peers 97% of the time. Jamir has exhibited physical aggression/property destruction an average of 12 times per day from 1/06/2020 to 2/13/2020. From Private OT evaluation 04/16/2019 Interpretation of Results: Jamir was referred for an independent occupational therapy evaluation due to concerns with his behavior at school. He presented as a wonderful young man during the two hour evaluation. He attended well to all tasks presented, with good focus and posture. He was observed to be somewhat cautious, needing to predict his success with tasks, and verbalizing his dislike of being timed. He was able to easily follow 2-3 step instructions with minimal redirection or explanation. Jamir demonstrated slow processing speed, requiring more time to complete tasks at the level he expects of himself. He transitioned well from one task to the next throughout testing, but noted to need closure to tasks. Jamir's eye contact was fleeting and he did not tend to initiate conversation. The classroom observation was completed over a 2 ½ hour period. During that time it was observed that there was predictable structure and routine in the classroom, which Jamir sought out and responded well to. He received 1:1 as well as small group instruction. He demonstrated good insight and understanding of the material, beyond what his classmates exhibited. His processing speed for written work appeared somewhat slow, due to his need for "perfection" as well as closure. Jamir demonstrated some frustration when he noted the discrepancy between the schedule on the board with words. and pictures and the responses of the other boys, but was able to obtain closure when Mr. Jordan noted that the pictures were inaccurate. He also was frustrated with the boy to his right when working in the group, as the boy appeared to impinge on Jamir's space and need for predictability with the colored pencils. This was easily addressed by having the other boy move further to the right.

**Student needs including most recent evaluation results and current functioning:**

Jamir can be easily angered and/or frustrated when things don't go his way or he perceives that things are too hard. When this happens, he can engage in work refusal, active defiance, property destruction and physical aggression. Jamir needs to continue working on reducing the frequency of aggressive behaviors and property destruction. According to the results of the functional analysis, Jamir's problem behavior (physical aggression and property destruction) is maintained by (a) negative reinforcement in the form of escape from demands, (b) negative reinforcement in the form of escape from interruption of ongoing activities, and (c) positive reinforcement in the form of access to preferred items/activities.

---

### PHYSICAL (FINE/GROSS MOTOR)

**Present Level of Performance based on the recent evaluation results and current functioning:**

Current classroom writing samples show adequate spacing, maintenance of horizontal line even without drawn lines, legibility to an unfamiliar reader, and overall neatness. Student is able to draw a person with substantial detail including laugh lines, a variable hairline, reciprocal arm and leg movement with predictive sequencing for the next step and perspective. He is able to write words in the appropriate space in a quote box when drawing. Student writes from bottom to top.

**Student needs including most recent evaluation results and current functioning:**

From Private OT evaluation 04/16/2019 Fine motor skills were observed to be problematic for Jamir, as noted with manual dexterity, strength, bilateral coordination, and motor accuracy. He appears to know what the outcome needs to be, but considerable difficulty organizing his hands for an efficient approach and control to produce what he expects, and requiring more processing time to complete the task at the level he is capable. When writing he was also noted to use an inefficient approach to letter formation, with formation bottom up, which may cause difficulty as the writing tasks increase. The school



Fulton County School District
Services for Exceptional Children

**Student:** Jamir Yelstine Ford

**DOB:** 06/09/2012

**Date of Meeting:** 02/25/2020

**Student ID#:** 2000132774

**School:** New Prospect Elementary

**Grade at Meeting:** 2nd Grade

assessment stated appropriate letter formation, however, Jamir demonstrates a bottom up approach to writing most of his letters, which is inefficient, especially when more writing will become expected of him. The bottom up approach also indicates lack of reflex integration and interhemispheric organization.Recent classroom work samples show handwriting formation errors which impact individual letter legibility for the lower case letters a, o,g b,d,n,r and numbers 6,9, 8. He reversed the lower case h three times on one work sample.

---

<h3 align="center">Present Level of Performance - Consideration of Special Factors</h3>

---

**Does the student have behavior which impedes their learning or the learning of others?**   Yes
   **If yes, consider the appropriateness of developing a Behavior Intervention Plan.**
   **Is a Behavior Plan Developed?** Yes

**Does the student have Limited English Proficiency?**   No

**Is the student blind or visually impaired?**   No

**Does the student have communication needs?** No

**Is the student deaf or hard of hearing?**   No

**Does the student need assistive technology devices or services?**   No

**If yes, describe the type of assistive technology and how it is used.  If no, describe how the student's needs are being met in deficit areas.** Jamir is currently able to access the curriculum with standard based classroom tools.

**Does the student require alternative format for instructional materials?**   No

**Does the student require special transportation?**   Yes

   **Description of the type of specialized transportation needed:** Transportation to New Prospects (GNETS) without accommodations.

**What type of physical education does the student require?**   Regular

**Graduation Diploma:** High School Diploma

**Does the student have any health/medical issues that impedes learning?** No

**Will the student be following the alternative math sequence?**  Not Applicable
**If yes, complete the document, Math Matrix.**


**Student:** Jamir Yelstine Ford     **DOB:** 06/09/2012     **Date of Meeting:** 02/25/2020
**Student ID#:** 2000132774     **School:** New Prospect Elementary     **Grade at Meeting:** 2nd Grade

### Measurable Annual Goals and Short Term Objectives

**Area of Need:** *Emotional/Social/Behavioral*
**Position(s) Responsible:** Special Education Teacher

**Annual Goal 1:** *Jamir will improve behavior skills from present levels of performance to criteria listed in objectives*
**Goal/Objective Review Dates:**
Progress on goals and objectives will be reported on the same schedule as performance reporting for all students.

**Objectives/Benchmarks:**
*1) Jamir will reduce aggressive behaviors to 0 incidents per day for 6 consecutive weeks.*

| Method of Evaluation | Performance Criteria |
|---|---|
| Data Collection : Daily | 0 incidents per day for 6 consecutive weeks |

**Objectives/Benchmarks:**
*2) Jamir will reduce property destruction to 0 incidents per day for 6 consecutive weeks.*

| Method of Evaluation | Performance Criteria |
|---|---|
| Data Collection : Daily | 0 incidents per day for 6 consecutive weeks |

**Area of Need:** *Academic*
**Position(s) Responsible:**

**Annual Goal 1:** *Jamir will improve academics skills from present levels of performance to criteria listed in objectives*
**Goal/Objective Review Dates:**
Progress on goals and objectives will be reported on the same schedule as performance reporting for all students.

**Objectives/Benchmarks:**
*1) Jamir will read 32 additional sight words at his instructional level using an appropriate reading program.*

| Method of Evaluation | Performance Criteria |
|---|---|
| Data Collection : Twice a Week | 32 sight words |

**Objectives/Benchmarks:**
*2) When provided with 5 new words weekly, from an appropriate instructional material, Jamir will define the word with fill in the blank or multiple-choice format.*

| Method of Evaluation | Performance Criteria |
|---|---|
| | 80% accuracy for 9 consecutive weeks |

**Objectives/Benchmarks:**


**Student:** Jamir Yelstine Ford      **DOB:** 06/09/2012      **Date of Meeting:** 02/25/2020
**Student ID#:** 2000132774      **School:** New Prospect Elementary      **Grade at Meeting:** 2nd Grade

*3) When presented with a reading passage at his instructional level, Jamir will independently read and answer multiple choice comprehension questions related to the passage.*

| Method of Evaluation | Performance Criteria |
|---|---|
| Work Sample : Twice a Week | 80% accuracy for 9 consecutive weeks |

---

**Area of Need:** *Communication-Speech Language*
**Position(s) Responsible:** SLP

**Annual Goal 1:** *Jamir will improve his communication skills from present levels of performance to mastery of objectives.*
**Goal/Objective Review Dates:**
Progress on goals and objectives will be reported on the same schedule as performance reporting for all students.

**Objectives/Benchmarks:**
*1) When presented with a social scenario or short story with a problem, Jamir will verbally identify the problem.*

| Method of Evaluation | Performance Criteria |
|---|---|
| Data Collection : Twice a Month | 80% accuracy across 3 sessions |

**Objectives/Benchmarks:**
*2) When presented with a social scenario or short story with a problem, Jamir will provide one plausible solution to the problem.*

| Method of Evaluation | Performance Criteria |
|---|---|
| | 80% accuracy across 3 sessions |

**Objectives/Benchmarks:**
*3) Jamir will maintain the topic of conversation over 3 conversational turns with a peer by asking a question and making a comment.*

| Method of Evaluation | Performance Criteria |
|---|---|
| Data Collection : Twice a Month | 80% accuracy across 3 sessions |

**Objectives/Benchmarks:**
*4) Jamir will orient his body toward the speaker and/or listener using whole body listening (e.g., body in group, body facing speaker, looking toward the speaker, thinking about what is said) in a conversation or structured speech activity.*

| Method of Evaluation | Performance Criteria |
|---|---|
| Data Collection : Twice a Month | 3/4 observable opportunities each reporting period |

**Objectives/Benchmarks:**


**Student:** Jamir Yelstine Ford  **DOB:** 06/09/2012  **Date of Meeting:** 02/25/2020
**Student ID#:** 2000132774  **School:** New Prospect Elementary  **Grade at Meeting:** 2nd Grade

*5) When presented a picture of a social scenario or story, Jamir will make a smart guess about what the person might be thinking, feeling, or saying (e.g., reading verbal/non-verbal cues–facial expressions) given verbal and visual prompts.*

| Method of Evaluation | Performance Criteria |
|---|---|
| Data Collection : Twice a Month | 80% accuracy across 3 sessions |

**Objectives/Benchmarks:**
*6) When given a graphic organizer, Jamir will describe objects using 4 descriptors (e.g., category, function, parts, and appearance.).*

| Method of Evaluation | Performance Criteria |
|---|---|
| Data Collection : Twice a Month | 80% accuracy across 3 sessions |

**Objectives/Benchmarks:**
*7) Jamir will retell a short story including beginning, middle, end and provide 3 key details.*

| Method of Evaluation | Performance Criteria |
|---|---|
| Data Collection : Twice a Month | 80% accuracy across 3 sessions |

**Objectives/Benchmarks:**
*8) Jamir will answer cause and effect questions from a passage read aloud with 1 verbal and 1 visual cue.*

| Method of Evaluation | Performance Criteria |
|---|---|
| Data Collection : Twice a Month | 80% accuracy across 3 sessions |

**Area of Need:** *Communication-Speech Language*
**Position(s) Responsible:** SLP
**Annual Goal 2:** *Jamir will improve his articulation skills from present levels of performance to mastery of objectives below stated*
**Goal/Objective Review Dates:**
Progress on goals and objectives will be reported on the same schedule as performance reporting for all students.

**Objectives/Benchmarks:**
*1) Jamir will produce correctly produce the /r/ phoneme in all word positions at the sentence level with a model and 1 verbal cue (placement).*

| Method of Evaluation | Performance Criteria |
|---|---|
| Data Collection : Twice a Month | 80% accuracy over 3 sessions |

**Objectives/Benchmarks:**
*2) Jamir will correctly produce /r/ blends in all positions of words at the sentence level.*

| Method of Evaluation | Performance Criteria |
|---|---|



Fulton County School District
Services for Exceptional Children

**Student:** Jamir Yelstine Ford      **DOB:** 06/09/2012      **Date of Meeting:** 02/25/2020
**Student ID#:** 2000132774      **School:** New Prospect Elementary      **Grade at Meeting:** 2nd Grade

| Data Collection : Twice a Month | 80% accuracy over 3 sessions |
|---|---|

| | |
|---|---|

**Objectives/Benchmarks:**
*3) Jamir will correctly produce the /th/ sound in all word positions at the sentence level with a model and 1 verbal cue (placement)*

| Method of Evaluation | Performance Criteria |
|---|---|
| Data Collection : Twice a Month | 80% accuracy over 3 sessions |

Proposed

| | |
|---|---|

**Objectives/Benchmarks:**
*4) Jamir will produce multi-syllabic words (4-5 syllables) in isolation and phrases with a model and 1 verbal cue.*

| Method of Evaluation | Performance Criteria |
|---|---|
| Data Collection : Twice a Month | 80% accuracy over 3 sessions |

**Fulton County School District Individualized Education Program**

**Distribution:**     **Central Office**     **Parent/Guardian**     **Student File**     **General Education Teacher**
**Page: 13**



**Student:** Jamir Yelstine Ford          **DOB:** 06/09/2012          **Date of Meeting:** 02/25/2020
**Student ID#:** 2000132774          **School:** New Prospect Elementary          **Grade at Meeting:** 2nd Grade

---

### Student Supports

---

**To advance appropriately toward attaining annual goals; to be involved and progress in the general curriculum; to be educated and participate with other children in academic, non-academic, and extracurricular activities, the following accommodations, supplemental aids and services, and/or supports for school personnel will be provided:**

**Instructional Accommodations:**
Chunk assignment/scaffolding 
Extended time
1 or 2 step instructions
Adjusted length of assignments
Check for understanding
Clarify instructions/directions

**General Classroom Testing Accommodations:**
Extended time - 50%
Frequent monitored breaks
Small group
Preferential seating

**Supplemental Aids and Services** (those services and personnel needed by the child or on behalf of the child in order to participate in the general curriculum or educational programs):
A 1:1 paraprofessional will work with Jamir in all academic areas, transitions, lunch, recess, and grade level activities to assist Jamir with accessing the curriculum, maintain behavior, and/or participate safely.
Follow BIP

**Supports for School Personnel:**
A 1:1 paraprofessional will work with Jamir in all academic areas, transitions, lunch, recess, and grade level activities to assist Jamir with accessing the curriculum, maintain behavior, and/or participate safely. Training on Behavior Intervention Plan, training for data collection and review data quarterly by BCBA.



**Student:** Jamir Yelstine Ford      **DOB:** 06/09/2012      **Date of Meeting:** 02/25/2020
**Student ID#:** 2000132774      **School:** New Prospect Elementary      **Grade at Meeting:** 2nd Grade

---

### Assessment Determination for District and Statewide Assessments for Grades K-12

a) The student will participate in all required assessments WITHOUT accommodations:  Yes

Tests the student will participate in without accommodations:

b) The student will participate in required assessments WITH accommodations:  No

c) The student will participate in the Georgia Alternate Assessment (GAA): No
If yes, provide a statement of why the child cannot participate in regular assessment.



Fulton County School District
Services for Exceptional Children

**Student:** Jamir Yelstine Ford                **DOB:** 06/09/2012                **Date of Meeting:** 02/25/2020
**Student ID#:** 2000132774          **School:** New Prospect Elementary          **Grade at Meeting:** 2nd Grade

## Placement Options Considerations

| | | |
|---|---|---|
| General Education Setting Only | | |
| General Education with Consultative Services | | |
| General Education setting with Supportive Instruction | | |
| General Education setting with Collaboration | | |
| General Education setting with Co-teaching | | |
| Special Education Setting | | |
| Alternative Placement | | |
| Related Services | | |

## SPECIAL EDUCATION and RELATED SERVICES

School Year: 2019-2020
*Instructional Services in the General Education Classroom:* None

*Related Services in the General Education Classroom:* None

*Instructional Services Outside the General Education Classroom:* None

*Related Services Outside the General Education Classroom:* None



Fulton County School District
Services for Exceptional Children

**Student:** Jamir Yelstine Ford          **DOB:** 06/09/2012          **Date of Meeting:** 02/25/2020
**Student ID#:** 2000132774          **School:** New Prospect Elementary          **Grade at Meeting:** 2nd Grade

School Year:  2020-2021

*Instructional Services in the General Education Classroom:*  None

*Related Services in the General Education Classroom:*   None

*Instructional Services Outside the General Education Classroom:*   None

*Related Services Outside the General Education Classroom:*   None

This IEP will be implemented on days public school programs and the servicing school are in operation during the regular school year.  Scheduled IEP services, despite any other statement in the IEP to the contrary, are not delivered on, or made up on or for, days the District or servicing school closes for any reason, such as inclement weather, holidays, partial days, professional learning days, early release days, and summer unless specified in the Extended School Year section of the IEP.



Fulton County School District
Services for Exceptional Children

**Student:** Jamir Yelstine Ford      **DOB:** 06/09/2012      **Date of Meeting:** 02/25/2020
**Student ID#:** 2000132774      **School:** New Prospect Elementary      **Grade at Meeting:** 2nd Grade

---

**Extended School Year Summary**

---

**A)**      **Are extended school year services necessary?**

**B)**      **Goals to be extended or modified:**

Proposed



**Student:** Jamir Yelstine Ford      **DOB:** 06/09/2012      **Date of Meeting:** 02/25/2020
**Student ID#:** 2000132774      **School:** New Prospect Elementary      **Grade at Meeting:** 2nd Grade

## Documentation of Prior Written Notice of IEP Meeting

| | Date | Method of Notification | By Whom |
|---|---|---|---|
| **1st Notification** | 02/01/2020 | [X] Invitation<br>[X] Phone Call<br>[ ] In Person<br>[ ] Reminder Notice<br>[ ] Other | Samad Knight |
| **2nd Notification** | | [ ] Invitation<br>[ ] Phone Call<br>[ ] In Person<br>[ ] Reminder Notice<br>[ ] Other | |
| **3rd Notification** | | [ ] Invitation<br>[ ] Phone Call<br>[ ] In Person<br>[ ] Reminder Notice<br>[ ] Other | |


**Student:** Jamir Yelstine Ford      **DOB:** 06/09/2012      **Date of Meeting:** 02/25/2020
**Student ID#:** 2000132774      **School:** New Prospect Elementary      **Grade at Meeting:** 2nd Grade

## Parent Participation in the IEP Process

[  ]  Parent/Guardian attended the IEP meeting. My signature below indicates that I was invited to participate in the IEP preparation and that I understand its content. I have had explained to me the due process rights and procedures and have received a copy of the following documents:

[  ]  Parental Rights in Special Education
[  ]  Individual Education Program (IEP) and Meeting Minutes
[  ]  Eligibility Report(s) (Initial or Reevaluation)
[  ]  Evaluation Report(s) (Initial or Reevaluation)


[  ]  Parent/Guardian was unable to attend the IEP meeting.

[  ]  Parental Rights in Special Education
[  ]  Individual Education Program (IEP) and Meeting Minutes
[  ]  Eligibility Report(s) (Initial or Reevaluation)
[  ]  Evaluation Report(s) (Initial or Reevaluation)

On _____(date) the documents were
[  ]  Mailed
[  ]  Given in person
[  ]  Sent via student
[  ]  Other:_____

School personnel responsible for forwarding documents to parents:  Rafael Jordan, Case Manager

**Follow-up Contacts:**

| Date | Method | Result |
|---|---|---|
|  |  |  |
|  |  |  |
|  |  |  |


Parent/Guardian Signature: _____    Date: _____

**Signature/Special Education Teacher:** _____    **Date:** _____



**Fulton County School District**
**6201 Powers Ferry Road**
**Atlanta, GA 30339**
**Services for Exceptional Children**

The following staff members appear on the invitation
but were unable to attend the meeting in part or in full for Jamir Yelstine Ford:

**Name**                                    **Title**

_____           _____

_____           _____

_____           _____

_____           _____

_____           _____

_____           _____

In order to be in compliance with the law, your agreement to continue the IEP meeting in the absence of these individual(s) is required. Please note your agreement or disagreement below.

\_\_\_\_    I agree to allow the IEP Committee to convene in the absence of the aforementioned staff member(s).

\_\_\_\_    It is my desire to reschedule the IEP Committee meeting so the aforementioned staff member(s) can be in attendance.

_____            _____

             Parent/Guardian                                          Date



---

**IEP Meeting Minutes**

---

**MEETING PURPOSE:**   Annual Review

**The Committee convened with introductions.**

**The purpose of the meeting was to develop an IEP for Jamir Yelstine Ford.**

**Present Levels of Academic Achievement and Functional Performance were**

**Parent input:**

**Mastery level of previous goals**

**Student**

**Goals and Objectives for the current IEP**

**The Transition Plan**

**Special Education and Related Services**

**Community-Based Instruction (CBI)**

**Career Technology Instruction (CTI) was**

**Specific Testing Accommodations**

**The Behavior Intervention Plan (BIP)**

**Extended School Year (ESY)**

<u>**Involvement in the Regular Education Program:**</u>
**The IEP written today will be implemented on 02/26/2020.**
**The IEP will remain in effect until 02/24/2021.**

**Exhibit 40**

 Gmail

Jatoyia Armour <jatoyiaarmour@gmail.com>

## ESY For Jamir Ford 2020

Jatoyia Armour <jatoyiaarmour@gmail.com>                                    Fri, May 8, 2020 at 9:09 AM
To: "Gilland, Patricia (Tris)" <gillandp@fultonschools.org>

Good Morning,

As an update on the services Jamir has actually been getting from FCSD since March 15 (the first day of virtual school), please take note of the following:

1. Jamir received instruction in the GNETS from January 21 to March 30;

2. Jamir started in the co-taught classroom for the first time on March 31 (70 total days after the ALJ's order to move him to co-taught classes);

3. Jamir has received a total of 2 hours of speech therapy (2-30 min. sessions/week) since January 21 and have been provided choice boards which is not what was recommended in his IEP;

4. Jamir has received a total of 4 hours of occupational therapy (4-30 min. sessions/week) since January 21 and have been provided choice boards which is not what was recommended in his IEP;

5. Jamir began receiving teleservices on April 21 (over month after school's closed) through video chat with OT and Speech. At that time, the parapro started working with him virtually on ELA assignments.

6. Jamir did not receive any instruction in social studies and science from March 15 to date;

7. Jamir did not receive any direct reading instruction at all, nor has he been provided any time with a reading specialist that is implementing any Orton-Gillingham program.

Given this delay and failure to provide those services listed in Jamir's IEP, I am writing to deeply and strongly request compensatory educational services for Jamir. I am also seeking specific data on Jamir's currently levels of performance in reading, math, speech, OT and behavior. I realize some of this data may not have been collected due to the interruption in service and change in physical location, but there has been some work completed and there were data points that existed on the day schools closed (about March 15), so please provide me the District's data on Jamir's current levels in summary from his teachers as well as levels of performance on March 15. As well, if the District will send assessment tools, I will be happy to compile information about Jamir's current levels of functioning based upon these assessments, as another data point for us to plan with.

Since the school year is about to end and the summer months begin, Jamir will be provided ESY from FCSD. Please provide me contact information for Jamir's participation in ESY during the summer months and the data from which the IEP team can develop ESY goals and objectives (or decided which current IEP objectives should be the focus of Jamir's ESY program). Seeing that reading is still his weakest subject, I would suggest specifically targeting that in addition to writing.


Thank you in advance for your response.



Jatoyia Armour M.Ed
**Mathematics Instructor**
m: (770) 837-1967
e: jatoyiaarmour@gmail.com

**Exhibit 41**

 Gmail

Jatoyia Armour <jatoyiaarmour@gmail.com>

---

## Response for ESY and Compensatory Services

**Jatoyia Armour** <jatoyiaarmour@gmail.com>                                    Tue, Jun 9, 2020 at 4:54 PM
To: "Gilland, Patricia (Tris)" <gillandp@fultonschools.org>
Cc: Craig Goodmark <cgoodmark@gmail.com>, Jon Zimring <zimring@zlawyers.com>


  Good Evening Mrs.Tris,

    I am confused by your email and have to disagree.  The IEP Team did not reach agreements on these goals and objectives or the limited services, and your statement that it did is not correct. When you say the Team decided you must mean Fulton decided and you continue to ignore that I am a member of the Team, as were Ms. Wing and Ms. Cohen. My recollection of the meeting was that the school presented a limited and inadequate plan for Jamir just the day before and I disagreed with that plan, and on other issues it had no plan and no recommendations and no valid data. The school proposed IEP goals are not even close to grade level standards for Jamir and would leave him at a kindergarten or first grade level as he is about to enter the 3rd grade, continuing to deny him access to adequate instruction. These are a path to set him up for failing in co-taught classes.


I also recall that I presented the team through my lawyers, SLP goals and objectives to be discussed at the meeting.  The SLP goals prepared by Ms. Cohen, the private SLP that I believe is appropriate to work with Jamir, are appropriate and meet his needs.  They are part of a large SLP therapy program that Ms. Cohen recommended and that the Court ordered.  That is not being done by the District and I can't state this any clearer -- I want the District to adhere to the Court's order, provide the necessary special education instruction and service for Jamir to make progress on grade level standards.   Since the District has not done this yet, this has to begin with ESY.


The ESY goals are inappropriate for many reasons starting with these are the same inappropriate goals and objectives, and inadequate in number and the amount of time.  The ESY services proposed by the District are not FAPE.  We have tried several times to get this done but now Jamir is sitting with nothing and I have to allow the service to begin even though these are inadequate because Jamir has now gone many months without any services to address his reading/language needs, and you are pushing him further behind.  I am giving notice that these are inappropriate, and again raising my right to pursue compensatory educational service for the denial of FAPE. I do not waive any claims by allowing the only services you have been willing to allow to begin.  I continue to amaze at the reluctance of the District to provide my son what he needs in school.  He remains, as he was when he entered the GNETS, at around a kindergarten level reader -- and that is unacceptable.


With respect to your proposal, you say these things were developed by the Team, but you know that I proposed goals and objectives, and I proposed accommodations and supports, which were rejected by the District. I asked for assessments to support the goals, and the District told me after the meeting that this would not be done, just the same one in different format, and even this was not done. The minutes of this meeting are incomplete and I have asked for a written notice on all of this, and as this has not been done, I ask again on all the decisions you say were made by the "Team" and this should include when and by whom, and all the requests we  have made which have been rejected.

Finally, in response to the offer of compensatory services, we must first determine what is FAPE before we can set a plan for compensatory services.  Such services are based on what it will take for Jamir to recover skills, and that depends on what his educational plan is.  I do not agree that the District has offered compensatory services consistent with the Court's order.  I have asked my attorneys to address this issue as we seem to be at an impasse.

Finally, I am hopeful this District will accept that they need to change the way they have handled Jamir's education, and am ready to collaborate with educators that are willing to work in good faith on his behalf.  If that change does not occur, I will continue to raise my objections and pursue my and Jamir's legal rights. I will not allow you to tell me that the "team" wrote goals when you mean that you rejected my input, rejected specific requests and by yourselves created an inappropriate plan. That is neither collaborative or keeping with the letter or spirit of IDEA.



Jatoyia Armour M.Ed
**Mathematics Instructor**
m: (770) 837-1967
e: jatoyiaarmour@gmail.com

 Gmail                                          **Jatoyia Armour <jatoyiaarmour@gmail.com>**

---

## ESY For Jamir Ford 2020

---

**Gilland, Patricia (Tris)** <gillandp@fultonschools.org>                    Fri, May 15, 2020 at 3:21 PM
To: jatoyiaarmour <jatoyiaarmour@gmail.com>

Good afternoon Ms. Armour,

I apologize for the delay in getting back with you. I was able to gather the information you requested below.

Please see the following information regarding the District's recommendation for ESY. Please note the highlights that detail which service each description is addressing.

**The recommendation for ESY services for Academics is 4 hours for each goal to be scheduled during the ESY period (June 3-26 and July 6-24) . Please note that ESY will be provided virtually and will be scheduled with the individual service providers. You will be provided contact information as teachers are assigned.**

**The following 3 reading goals are recommended:**

- Jamir will read 32 additional sight words at his instructional level using an appropriate reading program.

   (The 8 Lucy Calkins red word lists will be provided for him to work on. This objective is important for help him to help with his sight word vocabulary which will increase his reading fluency.)

- When presented with a reading passage at his instructional level, Jamir will independently read and answer multiple choice comprehension questions related to the passage.
- When provided with a list of 10 one and two syllable words, Jamir will decode and read each word. (He just needs practice decoding words other than CVC.)

**The recommendation for speech/language services is 60 minutes a week for 7 weeks. The objectives recommended for ESY are:**

*3) Jamir will correctly produce the /th/ sound in all word positions at the sentence level with a model and 1 verbal cue (placement)*

| Method of Evaluation | Performance Criteria |
|---|---|
| Data Collection : Twice a Month | 80% accuracy over 3 sessions |

| Objectives/Benchmarks: |  |
| --- | --- |
| *1) When presented with a social scenario or short story with a problem, Jamir will verbally identify the problem.* | |
| **Method of Evaluation** | **Performance Criteria** |
| Data Collection : Twice a Month | 80% accuracy across 3 sessions |

| Objectives/Benchmarks: |  |
| --- | --- |
| *2) When presented with a social scenario or short story with a problem, Jamir will provide one plausible solution to the problem.* | |
| **Method of Evaluation** | **Performance Criteria** |
| Data Collection : Twice a Month | 80% accuracy across 3 sessions |

| Objectives/Benchmarks: |  |
| --- | --- |
| *5) When presented a picture of a social scenario or story, Jamir will make a smart guess about what the person might be thinking, feeling, or saying (e.g., reading verbal/non-verbal cues–facial expressions) given verbal and visual prompts.* | |
| **Method of Evaluation** | **Performance Criteria** |

**\*\*The rationale for these objectives is based on data during the period of remote learning as well as a conversation the SLP had with you this morning regarding priorities for summer support.**

**OT is proposing a 30 minute weekly session and two times a month (30 minutes) push in session into academics to train the teachers on what sensory strategies that might be needed to assist with sensory regulation.  The goals that would be supported would be the writing of letters a, o, g, b, d, n and r and numbers 6, 8 and 9 as well as a sensory objective of identifying his strategies when needed for sensory regulation.**

# The data you requested is below:

**From Mrs. Paduano- IRR Reading-**

**Summary of Reading for PLOPS during Digital Learning Period:**

Jamir struggles with retained recognition of sight words. He attempts to sound them out instead of recognizing them immediately. He is currently at the kindergarten/first grade level for sight words.

Jamir is currently reading at an independent F&P level E. At that level, he can name all story elements (characters, setting, problem, solution), can describe the main idea and details, but struggles with inferential questions (why?).

**Summary of Math for PLOPS during Digital Learning Period:**

In the beginning of the remote learning period, Jamir was scoring over 70% engagement. He was being assisted by mom, and even participated in some optional activities through April. He did well with activities involving arrays. As the work got more difficult in May, he seemed to be struggling with completing tasks. The final weeks have been math standard review, and this seems to have been difficult for him.

**From Jordan-GNETs before March 15th**

Reading/Language Arts: Jamir is currently receiving instruction using a combination of Fountas & Pinnell Leveled Literacy Intervention System (LLI) and Orton Gillingham. Within the LLI Program, Jamir is currently reading on an Instructional Level F (grade level equivalent 1) and Independent Level E (grade level equivalent 1). Based on i-Ready assessment data, and classroom

observations and data, Jamir can read 20/20 Grade/Stage K sight words, 40/41 Grade/Stage 1 sight words and 7/55 Grade/Stage 2 sight words. He is also able to read beginning and ending blends, vowel endings, and decode regularly spelled one-syllable words with short vowels. Jamir is currently working on reading comprehension, and with support he can identify cause-and-effect relationships. Jamir is currently working on writing sentences that retell an event from a story.

**Math:** Jamir is following the general curriculum for 2nd grade math utilizing accommodations and modifications. Jamir can read and write numbers up to 1,000 using number words, standard form, and expanded form. He understands place value for numbers up to 3 digits. Jamir can skip count by 5, 10, & 100 and compare 3-digit numbers using greater than/less than/equal to symbols. Jamir is also able to create and analyze picture graphs, bar graphs, and line plots for 4 categories of data. Jamir can also add and subtract three digit numbers with regrouping. Currently Jamir is working on recognizing and drawing shapes with specified attributes, such as a given number of angles or a given number of equal faces. He is also working on ID triangles, quadrilaterals, pentagons, hexagons, and cubes.

**Science:** Jamir is following the general curriculum for Science with accommodations and modifications. So far this year Jamir has learned about the properties of matter and the property changes that can occur. He is currently working on the phases moon, the stars, the sun, day and night and seasons.

**Social Studies:** Jamir is following the general curriculum for Social Studies utilizing accommodations and modifications. So far this year, Jamir has learned about the topographical features of Georgia and the Georgia regions and rivers. We will be introducing next the lives and contributions of Jackie Robinson, Juliet Gordon and Jimmy Carter.

**Speech-Language Data Collection 4/23/2020-5/14/2020**

| |
|---|
| 1)   When presented with a social scenario or short story with a problem, Jamir will verbally identify the problem.<br><br>5/14/2020: 0/4 independently and ¼ when given 3 answer choices |
| 2)   When presented with a social scenario or short story with a problem, Jamir will provide one plausible solution to the problem.<br><br>5/14/2020: 0/4 independently and 2/4 when given 3 answer choices |
| 3)   Jamir will maintain the topic of conversation over 3 conversational loops with a peer by asking a question and making a comment.<br><br>Unable to target this objective during remote learning. |
| 4)   Jamir will orient his body toward the speaker and/or listener using whole body listening (e.g., body in group, body facing speaker, looking toward the speaker, thinking about what is said) in a conversation or structured speech activity.<br><br>Not introduced. |
| 5)   When presented a picture of a social scenario or story, Jamir will make a smart guess about what the person might be thinking, feeling, or saying (e.g., reading verbal/non-verbal cues–facial expressions) given verbal and visual prompts. |

5/7/2020: 9/9 for labeling feelings in static pictures and 9/9 for reading corresponding facial expressions/nonverbal cues. Jamir demonstrated difficulty with making a smart guess about what the person might be thinking or saying.

---

6) When given a graphic organizer, Jamir will describe objects using 4 descriptors (e.g., category, function, parts, and appearance.).

4/30/2020: 3/3 for 4 descriptors using a graphic organizer

---

7) Jamir will retell a short story including beginning, middle, end and provide 3 key details.

5/14/20: Jamir successfully completed this objective 1/1 opportunities

---

8) Jamir will answer cause and effect questions from a passage read aloud with 1 verbal and 1 visual cue.

4/30/2020: 10/10 independently for 1-2 sentence scenarios.

5/14/2020: 3/3 for story cause and effect questions independently

---

1) Jamir will produce correctly produce the /r/ phoneme in all word positions at the sentence level with a model and 1 verbal cue (placement).

5/7/2020: /r/ 90% accuracy for words and sentences independently.

---

2) Jamir will correctly produce /r/ blends in all positions of words at the sentence level.

5/7/2020: 90% accuracy for words and sentences independently.

---

3) Jamir will correctly produce the /th/ sound in all word positions at the sentence level with a model and 1 verbal cue (placement).

4/28/2020: /th/ in isolation 90% accuracy, /th/ in syllables 90%, /th/ in initial words given a model 90%

5/5/2020: /th/ in initial position of words given a model 90%, /th/ in medial position of words given a model 75%, /th/ in final position of words given a model 90%, /th/ in initial and final position of words independently 90%.

5/8/2020: /th/ in medial position of words given a model 90%, /th/ in initial and final position of words independently 90%, /th/ in initial position of words in phrases 90%

---

4) Jamir will produce grade level multi-syllabic words in isolation and phrases with a model and 1 verbal cue.

5/7/2020: 90% accuracy for 3-syllable words at the word and phrase level.

---

**OT Data Collection**

| Data Collection | Letter a | Letter o | Letter g | Letter b | Letter d | Letter n | Letter r | Number 6 | Number 8 | Number 9 |
|---|---|---|---|---|---|---|---|---|---|---|
| 4-21-20 | 80% | | 100% | | | | | 30% | 100% | 100% |
| 4-22-20 | | | | 80% | 80% | 80% | 80% | 50% | 75% | 100% |
| 4-23-20 | 100% | 100% | 100% | | | | | | | |
| 4-28-20 | 75% | 100% | 100% | 100% | 100% | 60% | 50% | 80% | 100% | 100% |
| 4-30-20 | 100% | 100% | | | | 100% | 100% | | | |
| 5-5-20 | 100% | 100% | 100% | 80%-reversed | 80%-reversed | 100% | 100% | 100% | 100% | 100% |
| 5-6-20 | 100% | 100% | 100% | 100% | 100% | 100% | 100% | 100% | 100% | 100% |
| 5-12-20 | 100% | 100% | 100% | 100% | 100% | 100% | 100% | 100% | 100% | 100% |
| 5-14-20 | 100% | 100% | 100% | 80%-did not want to go back to middle, so it looked like a 6 | 100% | 100% | 80%-did not want to go back to top, so it looked like a v initially | 100% | 100% | 100% |

Monday and Thursdays he completed choice boards except for the last week, per schedule conflicts and parent choice.

4-23-20-worked on identifying feelings and strategies

4-24-20- teacher consult

4-30-20- agitated as he wanted to play you tube, reviewed breathing strategies and other calming techniques

4-30-20- teacher consult

5-8-20- teacher consult

5-14-20- teacher consult

Jamir will form lower case letters a,o,g,b,d,n,r with top down formation, Work Sample : Twice a Week 80% of trials for each letter

Jamir will form numbers 6,8,9 with top down formation, Work Sample : Twice a Week 80% of trials for each letter

Jamir will accurately identify his feelings including happy, sad, angry, frustrated, calm, tired frustrated when in a regulated state 2 times each day. Data Collection 2 times each day

Regarding Science and Social Studies – the District did not provide virtual instruction for elementary students in grades K-5.

Your request for compensatory services is noted. As you know we are still unable to provide face to face services to students. Are you asking for compensatory services to be provided virtually (separate from ESY) or are you asking that we provide compensatory services when school resumes?

Also, per the court order, the District was to provide Jamir compensatory services prior to moving to remote learning. Are you asking for additional compensatory services or are you referring to those services? If so, would you like to begin receiving those services virtually as well?

Regarding your question about assessments, could you clarify which assessment(s) you are referring to? I am happy to address this if you can provide more information.

Let me know if you want to talk through any of the information above.

Have a great weekend!

Tris

**Tris E. Gilland, Ed.D., BCBA**
Director |Services for Exceptional Children| Fulton County Schools
6201 Powers Ferry Road | Atlanta, GA 30339
470-254-0420 ph. | 470-254-1243 fax
gillandp@fultonschools.org | SEC | www.fultonschools.org

  

@FCS_SEC Twitter

*SEC Vision:* Through specially designed instruction in the least restrictive environment, students with disabilities will have access to a rigorous curriculum that is meaningful, challenging, and is aligned to grade level standards.

---

**From:** Jatoyia Armour <jatoyiaarmour@gmail.com>
**Sent:** Friday, May 8, 2020 9:10 AM
**To:** Gilland, Patricia (Tris) <gillandp@fultonschools.org>
**Subject:** ESY For Jamir Ford 2020

WARNING - this email originated outside of Fulton County Schools. Use extreme caution even if you recognize the sender's name. Contact ITServiceDesk@FultonSchools.org with any concerns.

# Good Morning,

[Quoted text hidden]

**Exhibit 44**

Ex. 44 - Summary of Correspondence Between JF and FCSD from January 24 to July 16, 2020 (post Final Decision)  *NOTE: FCSD Actions highlighted in red; JF Actions highlighted in green.*

| 1/21/2020 | FINAL DECISION **and** SHIFT OF THE PLACEMENT UNDER 20 U.S.C. SEC. 1415(j) AND 34 C.F.R. 300.518(d) | | |
|---|---|---|---|
| **DATE** | **DATE OF FCSD ACTION** | **DATE OF J.F. ACTION** | **EXHIBIT** |
| 1/24/2020 | | Email to FCSD re: IEP Dates | 1 |
| 1/27/2020 | Email to JF saying need more time | | 2 |
| **FEBRUARY 2020** | | | |
| 2/5/2020 | | Email to FCSD re: updates on IEP meeting | 3 |
| 2/6/2020 | | Email to FCSD requesting locations for placement | 4 |
| | Email to JF proposing March 12 | | 5 |
| 2/10/2020 | | Email to FCSD re: delay | 6 |
| 2/11/2020 | Email to JF saying response 2/12 | | 7 |
| 2/12/2020 | Email to JF proposing Dolvin as location and rejecting request for experts to attend meeting at District expense | | 8 |
| 2/14/2020 | | *Gebser* Notice to FCSD re: delay and failure to approve experts for IEP meeting | 9 |
| 2/17/2020 | Email to JF re: Gebser response | | 10 |
| 2/18/2020 | Response to Gebser notice | | 11 |
| 2/19/2020 | | Email to FCSD re: Dolvin placement, IEE and lack of collaboration | 12 |
| | | Email to FCSD re: data on JF levels of academic performance | 13 |
| 2/21/2020 | Email to JF removing Dolvin as potential placement | | 14 |
| 2/25/2020 | IEP MEETING FOR J.F. | | |
| 2/26/2020 | | Email to FCSD seeking information about IEP assessments | 15 |
| 2/28/2020 | Email to JF responding to assessment objection and soliciting information about transitions | | 17 |

| MARCH 2020 | | | |
|---|---|---|---|
| 3/2/20 | | Email to FCSD re: proposed transition plan/IEP Goals attached | 18 |
| 3/3/2020 | Email to JF insisting on i-Ready assessment and proposing 4 week transition out of GNETS | | 19 |
| | | Email to FCSD demanding information requested and giving notice of intentional violations of JF civil rights | 20 |
| 3/9/2020 | Email with DRAFT IEP and restating outcome of JA meeting with FCSD | | 21 |
| 3/10/2020 | | Email to FCSD requesting data and explanations about incomplete IEP and assessment tools | 22 |
| 3/10/2020 | Email to JF responding without providing any further information | | 23 |
| 3/11/2020 | | Email to FCSD seeking Prior Written Notice and listing items requested but not included in 2/25 IEP | 24 |
| 3/17/2020 | Email to JF responding to items not included and BCBA Consent | | 25 |
| APRIL 2020 | | | |
| 4/2/2020 | Email with new draft IEP and indicating beginning transition out of GNETS. | | 26 |
| 4/3/2020 | | Email to FCSD responding to BCBA consent barrier created by FCSD | 27 |
| 4/7/2020 | Email to JF stating BCBA consent was not created or proposed by the District. | | 28 |
| 4/9/2020 | | Email to FCSD stating disagreements with the 2/25/2020 IEP | 29 |
| 4/15/2020 | Email to JF requesting a redline IEP and stating that BCBA consent is not within their control | | 30 |

| | MAY 2020 | | | |
|---|---|---|---|---|
| 5/26/2020 | Email to JF indicating IEP system is changing and the IEP is still in "Draft" form | | | 31 |
| | | | Email to FCSD stating that IEP from 2/25/2020 is being implemented | 32 |
| 5/28/2020 | Email from BCBA attorney to JF reflecting counsel for FCSD approval of consent language being proposed contrary to prior claims of no involvement | | | 34 |
| | JUNE 2020 | | | |
| 6/17/2020 | | | Letter to FCSD IEP objections, extended school year, and compensatory education | 35 |
| 7/14/2020 | | | Letter to FCSD re: denial of FAPE during COVID-19 shutdown | 36 |
| 7/16/2020 | Email to JF directing parent to FCSD personnel | | | 37 |
| | | | | |