# IN THE UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| FULTON COUNTY SCHOOL DISTRICT,<br><br>  Plaintiff,<br><br>v.<br><br>J.F., a minor by and through his parent and next friend J.A., and J.A.,<br><br>  Defendants. | Civil Action No. 1:20-cv-01675-ELR |

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION FOR ENFORCEMENT OF IDEA "MAINTENANCE OF PLACEMENT"**

Fulton County School District ("FCSD" of the "District") files this brief response in opposition to Defendants' Motion for Enforcement of IDEA "Maintenance of Placement" (the "Motion"), filed by J.A. and J.F. (the "Family") on September 23, 2020 (Doc. 30).

## I. INTRODUCTION.

Since January of this year, FCSD has worked tirelessly to provide all relief awarded to the Family in the underlying state administrative proceeding. Within a month, FCSD transitioned J.F. out of GNETS and into a co-taught setting, and began providing him with all SLP and OT services the administrative law judge ("ALJ")

awarded. Because of the COVID-19 pandemic, FCSD had to implement virtual learning across the board, including within its special education services.

By April of this year, FCSD was attempting to collaborate with the Family to make arrangements for J.F.'s compensatory education services. Since then, the Family has frustrated that process not only by refusing to provide information necessary to make those arrangements, but also by imposing unreasonable conditions on the provision of such services. In particular, the Family has objected to any compensatory services in a virtual setting, and they insist on unilateral discretion in selecting the providers to provide such services. Based on these unreasonable conditions, the Family has constructively refused consent to compensatory services.

FCSD has fully complied with the ALJ's order. Any delay in receipt of services is attributable to the Family. Accordingly, the Court should deny the Family's Motion.

## II.   STATEMENT OF FACTS.

### A.   The underlying state administrative proceeding.

On December 14, 2018, the Family initiated a due process hearing in Georgia's Office of State Administrative Hearings ("OSAH"). (Doc. 18-2.) On

January 21, 2020, the ALJ issued its Final Decision in the proceeding. (Doc. 18-1.) The ALJ awarded five main forms of relief.

First, the ALJ ordered the IEP team to revise J.F.'s IEP to transition him back to a co-taught setting, which the Court concluded to be the LRE in which J.F. could receive FAPE. (*Id.* at 22, ¶ 9, First Bullet Point.) Second, the ALJ ordered that J.F. "shall receive speech language therapy in accordance with recommendations of Ms. Cohen's report." (*Id.* at 22, ¶ 9, Second Bullet Point.) In her report, Cohen recommended that J.F. receive speech-language therapy 1.5 hours/day, 5 days/week—a total of 7.5 hours of SLP services each week. (*See* Cohen Report, attached hereto as **Exhibit 1**, at 23-24.) Beneath the "recommendations" section in her report, speech-language therapy is a separate line item from "Fast ForWord Auditory Processing and Reading Series", OT, and other recommendations. (*See id.*) The Final Decision did not order FCSD to implement "Fast ForWord Auditory Processing and Reading Series." (*See generally* Doc. 18-1.)

Third, the ALJ awarded 2.5 hours of OT services each week, as well as a sensory regulation program and social skills group. (*Id.* at 23, ¶ 9, Third Bullet Point.) Fourth, the ALJ awarded the Family eighteen months of individualized compensatory education services," including ESY, "to close the achievement gap." (*Id.* at 23, ¶ 9, Fourth Bullet Point.) The ALJ explained that "[e]ighteen months

approximates the amount of time that J.F. was placed in GNETS over the course of the 2018-2019 and 2019-2020 school years." (*Id.* at 23 n. 8.)

Fifth, the ALJ ordered FCSD to "hold an IEP meeting to conform J.F.'s IEP to the terms of" the Final Decision. (*Id.* at 23, ¶ 9, Fifth Bullet Point.)

**B.   FCSD moves to a virtual learning platform in response to the COVID-19 pandemic.**

As this Court has recognized since March 2020, the COVID-19 pandemic has dramatically impacted business and government operations across the country. (Doc. 31 at 1-3.) In fact, Georgia now ranks fourth in the U.S. in most confirmed cases. (*Id.* at 1.) And Fulton County is one of the four counties with the highest number of cases in the State. (*Id.*)

On March 14, 2020, in response to the pandemic, Governor Kemp declared a public state of emergency, and, on March 16, 2020, he ordered the closure of Georgia public schools through March 31, 2020. (*See* 03.26.20 Exec. Order, attached hereto as **Exhibit 4**, at 1.) On April 1, 2020, Governor Kemp continued that order through the end of the 2019-2020 school year to stop the spread of COVID-19. (*See* 04.01.20 Exec. Order, attached hereto as **Exhibit 5**, at 1.)

In response to the pandemic, in Spring of 2020, FCSD was forced to shut down its on-site operations and transition to a remote work and educational delivery model due to the Governor's Order shutting all public schools across the state.

Across the board, FCSD began providing both regular and special educational instruction and services virtually under a remote learning contingency plan. Unfortunately, it was impossible to provide direct face-to-face services under these circumstances. (*See* Gilland Decl., attached hereto as **Exhibit 2**, ¶ 4.)

**C.    FCSD attempts to work with the Family to implement the ALJ's Final Decision.**

After the ALJ issued the Final Decision, FCSD worked over the next month to schedule an IEP meeting with J.A. to discuss amendments to J.F.'s IEP, including his transition out of the GNETS program at New Prospect Elementary School. (*Id.*, ¶ 6.) On or about February 25, 2020, FCSD convened an IEP meeting. Approximately 12-14 individuals attended the meeting, including J.A. and her counsel. Despite meeting a full day, the IEP team was unable to agree on how to resolve all of the issues set forth in the ALJ's Final Decision. The IEP team (including J.A. and her counsel) agreed that the best course of action was for FCSD to send J.A. a draft IEP for comment, feedback, or proposed revision. (*Id.*, ¶ 7.)

FCSD then circulated a draft and specifically requested J.A.'s attorneys to "redline" their proposals and requested changes to the document. Under this draft IEP, J.F. was placed in a co-taught setting, and he received 450 minutes of SLP services and 150 minutes of OT services each week. (*Id.*, ¶ 8; *see also* 02.25.20 IEP Draft at 20-23, attached as **Exhibit A** to Gilland Decl.)

In response, the Family requested a couple of substantive changes that FCSD then included in the IEP document. Unfortunately, however, the Family never circulated a revised or redlined draft of the remaining contents of the IEP document. Consequently, FCSD was unable to finalize the IEP, and it remained in draft form. (Gilland Decl., ¶ 9.) During the summer, FCSD had to "lock" the IEP document to preserve it while FCSD transitioned to a new IEP computer system. FCSD explained to the Family, however, that this was only done as a matter of form, and the IEP was understood to be only a draft. (*Id.*, ¶ 10.)

**D.    FCSD continues working with Family to resolve the issue of compensatory education services.**

On April 15, 2020, FCSD's counsel sent the Family's counsel an email stating: "Regarding compensatory services we previously proposed the following: You choose a provider for tutoring for 3 hours per week. The District will vet the provider's credentials and reimburse accordingly. Same goes for Speech/Language (1 hour per week) and OT (1 hour per week)." (*Id.*, ¶ 11.)

On May 8, 2020, J.A. sent Gilland an email requesting compensatory education services, but she did not address the previous proposal. (*Id.*, ¶ 12.)

On May 15, 2020, Gilland sent J.A. an email explaining that, because of the COVID-19 pandemic, FCSD could not provide direct, face-to-face services to students. Gilland asked if J.A. would be agreeable to receiving compensatory

education services virtually. (*Id.*, ¶ 13.) On May 21, 2020, J.A. responded that she objected to virtual compensatory services. (*Id.*, ¶ 14.)

On May 28, 2020, Gilland sent J.A. an email reiterating FCSD's proposal for compensatory education services. (*Id.*, ¶ 15.) On May 29, 2020, J.A. responded to Gilland that she thought five hours per week was insufficient. She then explained, however, that she objected to any of her selected outside providers being subject to FCSD approval: "I can proceed to identify private providers for speech and a tutoring service, but these would only satisfy the District's obligation to provide ESY to [J.F.]. If that is the District's position, I can initiate the services of the providers as I am unaware of any process that requires 'vetting' by the District. As a courtesy, I will let the District know the identity of the providers as vendors that can receive payment from the District, but I do not agree that the District can disqualify any provider for unknown criteria." (*Id.*, ¶ 16.)

On June 1, 2020, Gilland sent J.A. an email again following up about compensatory services: "The court ordered the District to provide 18 months of compensatory education – which we have yet to agree upon a number of hours per week. I hope we are able to do this this week. You have also shared that you feel [J.F.] is entitled to additional compensatory hours for the time following the court order and through the period of remote learning." (*Id.*, ¶ 17.)

Later that day, J.A. responded, "Yes, I think we are entitled to additional compensatory services for several reasons: Fulton's delay after the Court's Order which was based at first on the time [J.F.] was held in GNETS but that this continued, and additionally on the inadequacy of the Covid-19 services to meet his transition and instruction. Compensatory services delivered this way are also not really compensatory and not really helpful." She did not propose a weekly hour total. (*Id.*, ¶ 18.)

On June 16, 2020, Gilland emailed J.A. explaining that FCSD personnel were available for an IEP meeting on July 29, 30, or 31, 2020 and asking if she was available on those dates. On July 13, 2020, after receiving no response from J.A., Gilland sent J.A. a follow-up email asking her to advise whether she was available on those dates. (*Id.*, ¶ 19.) On July 13, 2020, J.A. responded, asking if FCSD could hold the IEP meeting on the week of August 10, 2020. (*Id.*, ¶ 20.) FCSD officials and counsel then blocked off several dates in August for an anticipated IEP meeting with J.A. (*Id.*, ¶ 21.)

On August 3, 2020, Gilland sent J.A. an email explaining that FCSD was only conducting IEP meetings virtually because of the pandemic and that FCSD wanted the Family to meet J.F.'s teachers at Dolvin Elementary School before school began on August 17, 2020. At that time, Dolvin was J.F.'s home school because he was no

longer in the GNETS program. (*Id.*, ¶ 22.) On August 4, 2020, J.A. sent Gilland an email objecting to a virtual meeting: "With COVID and IEP disagreements so far, I am concerned about not having a face to face meeting." (*Id.*, ¶ 23.)

On August 5, 2020, Gilland responded that the IEP team was available for a virtual meeting on August 7, 2020. (*Id.*, ¶ 24.) On August 6, 2020, J.A. responded that she would not attend the August 7 IEP meeting. She further stated that she did not agree to an IEP meeting taking place without her being present. (*Id.*, ¶ 25.) On August 7, 2020, Gilland sent J.A. an email explaining that FCSD was not planning to hold an IEP meeting without her in attendance and that it had cancelled the meeting scheduled for that day. Gilland also asked J.A. when she was available to discuss J.F.'s compensatory education services. J.A. did not respond to the request about compensatory services. (*Id.*, ¶ 26.)

At 3:55 PM on Friday, August 14, 2020, J.A. sent Gilland an email advising her for the first time that she would be moving to Fairburn, Georgia before September and requesting that FCSD change J.F.'s school location to his new home school in that area. At that time, J.F.'s current home school was Dolvin, though J.A. had not yet withdrawn him from New Prospect and enrolled him at Dolvin. After moving, his new home school would be Liberty Point Elementary School. Hence,

J.A. waited until after business hours one business day before school started to request a new change in J.F.'s school location. (*Id.*, ¶ 27.)

Gilland did not have authorization to grant school transfers. (*Id.*, ¶ 28.) Accordingly, at 8:38 AM on Monday, August 17, 2020 (the first day of school), Gilland responded that J.A. would need to contact the Area Superintendent for the new school zone to request the transfer. Later that day, she emailed J.A. a link providing directions for enrollment at J.F.'s new home school. In the meantime, J.A. still had not enrolled J.F. at Dolvin. (*Id.*, ¶ 29.)

To accommodate J.A.'s eleventh-hour request, FCSD re-assigned and even hired additional personnel to ensure that J.F.'s new home school was equipped to implement his IEP. J.F. was able to attend Liberty Point virtually by Wednesday of the following week. (*Id.*, ¶ 30.)

**E.     FCSD and the Family eventually agree to a new IEP addressing all issues in the Family's Motion.**

On September 24, 2020, FCSD convened an IEP meeting with J.A. (*See* 09.24.20 IEP attached hereto as **Exhibit 3**.) Under this IEP, J.F. receives 30 minutes of speech-language consulting once a week, separate 90-minute speech-language classes five times per week, 30-minute OT pull-out sessions five times per week, and 30 minutes of OT consultation each week. (Ex. 3 at 23-24.)

### III.     ARGUMENT AND CITATION OF AUTHORITY.

This Court should deny the Family's Motion because it is moot, and FCSD has complied with the ALJ's Final Decision during the pendency of this appeal. In an IDEA state administrative proceeding, if the Administrative Law Judge ("ALJ") orders a change of placement at the request of the student's parent, that new placement is treated as an agreement between the State and the parent. 34 C.F.R. § 518(d). Under the IDEA's stay-put provision (20 U.S.C. § 1415(j)), school districts may not unilaterally alter a child's special education placement during the pendency of any appeals of that decision. *CP v. Leon Cnty. Sch. Bd. of Fla.*, 483 F.3d 1151, 1156 (11th Cir. 2007); *G.J. v. Muscogee Cnty. Sch. Dist.*, 668 F.3d 1258, 1270 (2012). The provision maintains the status quo between the parties. *Id.* Any interim change in placement requires parental consent. *Id.* at 1156-57.

This Court should deny the Family's Motion for four reasons. First, the Motion is moot because J.F.'s IEP team (including J.A.) has already agreed to a new IEP that provides the SLP and OT services they contend FCSD has not provided. Second, even before this new IEP was finalized, JF had been fully transitioned out of GNETS into a co-taught setting and was receiving SLP and OT services, pursuant to a draft IEP from February 2020. Third, contrary to the Family's position, the ALJ

did not order FCSD to provide J.F. with the "Fast ForWord Auditory Processing and Reading Series" Cohen recommended in her report. Fourth, the Family has constructively refused any compensatory education services by refusing to collaborate with FCSD and by imposing unreasonable conditions on the provision of any such services.

**A.     The Family's Motion is moot because they have agreed to a new IEP that provides the SLP and OT services they seek.**

Article III of the U.S. Constitution limits this Court's subject-matter jurisdiction to live cases and controversies. *Strickland v. Alexander*, 772 F.3d 876, 882-83 (11th Cir. 2014). Courts may not issue "opinions upon moot questions or abstract propositions, or . . . declare principles or rules of law which cannot affect the matter in issue in the case before it." *Christian Coalition of Fla., Inc. v. U.S.*, 662 F.3d 1182, 1189 (11th Cir. 2011). Thus, to invoke federal subject-matter jurisdiction, a litigant "must show a personal stake in the outcome of the action." *U.S. v. Sanchez-Gomez*, 138 S. Ct. 1532, 1537 (2018) (internal quotation marks omitted). "[A]n issue is moot when it no longer presents a live controversy with respect to which the court can give meaningful relief." *Christian Coalition*, 662 F.3d at 1189.

Under the mootness doctrine, a district court must assess whether the litigant has the requisite personal interest "at all stages of review, not merely at the time the complaint is filed." *Sanchez-Gomez*, 138 S. Ct. at 1537. If a claim becomes moot

after its filing, the court must dismiss it. *Soliman v. U.S. ex rel. INS*, 296 F.3d 1237, 1242 (11th Cir. 2002). If the court reaches the merits of the moot issue, it has issued an impermissible advisory opinion. *Id.*

When a party seeks prospective relief, the claim becomes moot when the opponent voluntarily terminates the challenged conduct and it is not reasonably likely to recur. *Reich v. Occupational Safety and Health Review Com'n*, 102 F.3d 1200, 1201 (11th Cir. 1997); *Uzuegbunam v. Preczewski*, 378 F. Supp. 3d 1195, 1200 (N.D. Ga. 2018). Generally, the party asserting mootness has the burden of showing the challenged conduct will not likely recur. *Nat'l Ass'n of Bds. of Pharmacy v. Bd. of Regents of the Univ. Sys. of Ga.*, 633 F.3d 1297, 1310 (11th Cir. 2011). Government entities, however, enjoy a rebuttable presumption that the challenged action will not recur. *Id.* Thus, to overcome a government entity's mootness defense, a party must show a "substantial likelihood" that it "will reverse course and reenact" the challenged policy. *Keohane v. Fla. Dep't of Corr. Sec'y*, 952 F.3d 1257, 1268 (11th Cir. 2020).

Here, the Family's Motion is moot because FCSD is already providing the SLP and OT services that the Final Decision ordered. The day after the Family filed their Motion, FCSD held a previously scheduled IEP meeting to update J.F.'s IEP. The new IEP provides all SLP and OT services that the ALJ awarded them, including

-13-

eight hours of SLP services each week and three hours of OT each week. Accordingly, with the respect to the SLP and OT services, there is no live controversy between the parties, and the Family's Motion is moot. Accordingly, the Court should deny their Motion.

**B.     FCSD has fully complied with the ALJ's Final Decision to the extent possible under the District-wide virtual learning.**

Contrary to the Family's assertion, FCSD has fully complied with the ALJ's Final Decision. Though the COVID-19 pandemic has rendered direct face-to-face instruction impossible, FCSD has continued to implement J.F.'s IEP under its remote learning contingency plan. J.F. has been fully transitioned out of GNETS, and he has received SLP and OT services virtually.

Any delays in the receipt of those services are not attributable to FCSD. The Final Decision did not require J.F. to remain at New Prospect; it ordered his transition out of GNETS. J.F. only attended New Prospect because that is where GNETS was located. Accordingly, J.F. was required to return to Dolvin (his home school), where FCSD had made arrangements to implement his IEP at the start of the 2020-2021 school year. Despite this policy, J.A. did not withdraw J.F. from New Prospect, and she never enrolled him at Dolvin.

To compound matters, J.A. did not inform FCSD that she was moving to a new school zone until after business hours one business day before the new school

year began. She had not requested a transfer to Liberty Point. Nevertheless, FCSD facilitated the eleventh-hour transfer, and re-assigned and hired new personnel to ensure that Liberty Point could implement J.F.'s IEP. J.F. was receiving his special education services at Liberty Point by the following Wednesday. He has continued to receive those services since then. Furthermore, it is important to note that at all relevant times, Dolvin ES remained ready and able to accept J.F. and provide him FAPE from the first day of school opening. The only thing that prevented J.F. from attending school the first few days of learning was his family's refusal to enroll him.

Given their own delays in making J.F. available for services, the Family cannot now complain about any delay in services at the beginning of this school year. Accordingly, the Court should deny their Motion.

**C.     The ALJ's Final Decision did not require FCSD to implement any of Mindy Cohen's recommendations other than speech-language therapy.**

The Family also misconstrues the Final Decision, taking an overbroad reading of the provision awarding SLP services. The ALJ ordered that J.F. "shall receive speech language therapy in accordance with recommendations of Ms. Cohen's report." (*Id.*, p. 22, ¶ 9, Second Bullet Point.) In her report, Cohen made numerous recommendations, such as OT, that the ALJ did not award.[1] The ALJ awarded only

---

[1] The ALJ awarded OT based on the recommendations of Kim Wing, a different witness. (Doc. 18-1 at 23, ¶ 9, Third Bullet Point.)

-15-

the "speech-language therapy" described in Item II of Cohen's recommendations. (Doc. 18-1 at 22, ¶ 9, Second Bullet Point.) The Final Decision did not order FCSD to implement "Fast ForWord Auditory Processing and Reading Series," which was a separate line item from speech-language therapy. (*See generally* Doc. 18-1.)

Because the Final Decision did not order FCSD to provide SLP services other than the speech-language therapy Cohen specifically recommended, this Court should deny the Family's Motion.

**D.    The Family has constructively refused any compensatory education services.**

The Court should also deny the Family's Motion because they have frustrated FCSD's ability to arrange and provide compensatory education services to J.F. Under the IDEA, the design and implementation of an IEP is a "collaborative process between parents, teachers, and school administrators." *L.M.P. et al. v. Sch. Bd. of Broward Cnty., Fla.*, 879 F.3d 1274, 1277-78 (11th Cir. 2018). Thus, a parent is not entitled to IDEA relief where they frustrate a school district's ability to provide educational services by insisting on unreasonable conditions. *See G.J.*, 668 F.3d at 1264-65. For instance, in *G.J. v. Muscogee County School District*, the parents (also represented by Jon Zimring) alleged that the school district violated the IDEA by not timely evaluating their child. *Id.* The parents had refused to consent to the evaluation unless the school district agreed to several conditions, including who conducted the

evaluation. *Id.* The Eleventh Circuit rejected their claim, holding that the parents had constructively withheld consent to that evaluation, based on their unreasonable conditions. *Id.*

Like the parents in *G.J.*, the Family has constructively withheld consent to any compensatory education services for J.F. In April 2020, FCSD provided the Family with a proposal for J.F.'s compensatory services. In response to that proposal, J.A. objected that the proposed weekly hours were insufficient, but she did not submit a counter-proposal of what she considered to be an appropriate amount. Her failure to participate in this collaborative process has impeded FCSD's ability to arrange a plan for providing J.F.'s compensatory services.

Moreover, J.A. has also imposed unreasonable conditions on any compensatory services. Most problematically, she objected to any compensatory services in a virtual setting. This condition was unreasonable given the safety concerns relating to the ongoing COVID-19 pandemic.

J.A. has also unreasonably insisted on having unilateral discretion in selecting the providers who will provide J.F.'s compensatory services. Though she has stated she would be willing to identify providers, she has flatly objected to FCSD vetting these providers to ensure they meet educational criteria to provide the services as well as requirements for payment from the school district. Effectively, she has

refused to participate in the process unless FCSD first agrees to give her carte blanche to select a provider, regardless of cost, availability, or qualifications.

These unreasonable conditions have frustrated FCSD's ability to provide compensatory education services to J.F. Because the Family has constructively refused to consent to compensatory services, they are not entitled to any injunctive relief enforcing that provision of the Final Decision. Accordingly, the Court should deny their Motion.

## IV. CONCLUSION

For the foregoing reasons, FCSD respectfully requests that this Court DENY the Family's Motion for Enforcement of IDEA "Maintenance of Placement."

This 7th day of October, 2020.

>  */s/ Jeffrey R. Daniel*
> Laurance J. Warco (GA Bar No. 736652)
> Jeffrey R. Daniel (GA Bar No. 949075)
> *Counsel for Plaintiff Fulton*
> *County School District*

**NELSON MULLINS RILEY & SCARBOROUGH LLP**
Atlantic Station / Suite 1700
201 17th Street, NW
Atlanta, GA 30363
(404) 322-6000 (phone)
(404) 322-6050 (facsimile)
laurance.warco@nelsonmullins.com
jeff.daniel@nelsonmullins.com

## CERTIFICATE OF COMPLIANCE

I certify that the foregoing was prepared using Times New Roman font, 14-point type, which is one of the font and print selections approved by the Court in L.R. 5.1(C).

This 7th day of October, 2020.

>  */s/ Jeffrey R. Daniel*
> Jeffrey R. Daniel
> Georgia Bar No. 949075
> *Counsel for Plaintiff Fulton*
> *County School District*

**NELSON MULLINS RILEY & SCARBOROUGH LLP**
Atlantic Station / Suite 1700
201 17th Street, NW
Atlanta, GA  30363
(404) 322-6000 (phone)
(404) 322-6050 (facsimile)
jeff.daniel@nelsonmullins.com

# CERTIFICATE OF SERVICE

I hereby certify that I have on this day filed the within and foregoing **PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION FOR ENFORCEMENT OF IDEA "MAINTENANCE OF PLACEMENT"** with the Clerk of Court using CM/ECF which will send an email notification of such filing to the following:

| | |
|---|---|
| Craig Goodmark, Esq.<br>Goodmark Law Firm<br>1425-A Dutch Valley Place<br>Atlanta, GA 30324<br>Email: cgoodmark@gmail.com | Jonathan A. Zimring, Esq.<br>Zimring Law Firm<br>1425-A Dutch Valley Place<br>Atlanta, GA 30324<br>Email: zimring@zlawyers.com |

This 7th day of October, 2020.

                                            */s/ Jeffrey R. Daniel*
                                            Jeffrey R. Daniel
                                            Georgia Bar No. 949075
                                            *Counsel for Plaintiff Fulton*
                                            *County School District*

**NELSON MULLINS RILEY & SCARBOROUGH LLP**
Atlantic Station / Suite 1700
201 17th Street, NW
Atlanta, GA 30363
(404) 322-6000 (phone)
(404) 322-6050 (facsimile)
jeff.daniel@nelsonmullins.com