## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| **FULTON COUNTY SCHOOL DISTRICT,** *Plaintiff,* **v.** **J.F., by and through J.A., and J.A.,** *Defendants.* | **CIVIL ACTION FILE NO.  1:20-cv-1675-ELR** |

## DEFENDANTS' SUPPLEMENTAL PETITION FOR FEES AND COSTS

Defendants were brought into this Court having been "prevailing parents" by virtue of the decision of the Georgia Chief Administrative Law Judge Michael Malahi's ("Final Order") order dated January 21, 2020, receiving virtually complete relief regarding the provision of special education services and placement, under the Individuals with Disabilities Education Act, I.D.E.A.  ("IDEA"), 20 U.S.C. § 1400 *et seq.*  Again prevailing here on *de novo* appeal, Defendants pursue the full recovery of administrative and court fees under 20 U.S.C. § 1415(3)((B)-(G) and *Mitten v. Muscogee County Sch. Dist.*, 877 F.2d 932 (11th Cir. 1989), also pursuant to Fed. R. Civ. P. 54. Defendants seek a full compensatory award of their reasonable fees and expenses in these two cases as parents who have prevailed in the administrative court and then again in this Court. Such fees are an essential right of the protections Congress gave to parents. *See* e.g. *Winkelman v.Parma City Sch. Dist.,* 550 U.S. 516, 526 (2007) (parents have "enforceable rights under IDEA"

including fee recovery).

Defendants, through the administrative process established by IDEA, challenged the denial of a free appropriate public education ("FAPE") in the "least restrictive environment ("LRE") to J.F. by the Fulton County School District ("FCSD" or "the District"]).  After a five-day trial, the Final Order issued by Judge Malahi concluded that FCSD denied J.F. his right to FAPE <u>and</u> that the educational placement made by FCSD was a violation of J.F.'s right to be educated in the least restrictive environment. This established Defendants' prevailing parent status,[1] which was reaffirmed through this Court's Order and Judgment.

## <u>ARGUMENT AND CITATION OF AUTHORITY</u>

The Supreme Court has explained that when a plaintiff succeeds in bringing a civil rights claim, "he serves as a private attorney general, vindicating a policy that Congress considered of the highest priority." *Fox v. Vice*, 563 U.S. 826, 131 S.Ct. 2205, 2213 (2011) (internal quotation marks and citation omitted).  Prevailing parties in civil rights actions are entitled to an award of attorneys' fees. 42 U.S.C. § 1988; *see also Hensley v. Eckerhart* 461 U.S. 424 (1983). "This statute is

---

[1] *Mitten* applies 42 U.S.C. § 1988 jurisprudence to the IDEA fee award except where there may be specific IDEA provisions. *Mitten*, 877 F.2d at 935-936. IDEA uses the term "a parent who has prevailed" in 20 U.S.C. § 1415(i)(3)(B)(i)(I)(2004) as school districts bring appeals but parents may recover fees as "prevailing parties" even though they are defendants protecting the child's rights and services. *See e.g. Angela L. v. Pasadena Ind. Sch. Dist.*, 918 F.2d 1188, 1198 (5th Cir. 1990).

interpreted broadly since it is remedial in nature and facilitates private enforcement of civil rights." *Webster Greenthumb Co. v. Fulton Cty.*, 112 F.2d 1339, 1346 (N.D. Ga. 2000). *See Carey v. Phiphus*, 445 U.S. 247, 266 (1978); *City of Riverside v. Riveria*, 477 U.S. 561, 574 (1986) ("Regardless of the form of relief he actually obtains, a successful civil rights plaintiff often secures important social benefits that are not reflected in nominal or relatively small damages awards."). Prevailing party under IDEA has this same meaning. *Mitten*, 877 F.2d at 936 citing *Hensley,* and is a significant IDEA due process protection. *Schaffer v. Weast*, 546 U.S. 49, 61 (2005).

   The Plaintiffs have stated in a binding admission that the Defendant Parent meets this test, Doc 71, at 1 and 2, as it must as the Supreme Court has clarified that "a 'prevailing party' is one who has been awarded some relief by the court" and reiterated that "even an award for nominal damages suffices" to establish prevailing party status. *Buckhannon Bd. and Care Home, Inc. v. West Virginia*, 532 U.S. 598, 603-604 (2001) (*citing Farrar v. Hobby*, 506 U.S. 103, 113 (1992)). This is a "generous formulation." *Hensley* at 433. Defendants have prevailed on their claims related to FAPE and LRE including their right to placement in a less segregated setting. These comprise the core issues before the ALJ, and *in this Court they have completely and totally prevailed on every issue defending the ALJ Order.*[2]

---

[2]    A prevailing plaintiff "should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust." *Hensley*, 461 U.S. at

"Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee." *Hensle*y, 461 U.S. at 435; *Villano v. City of Boynton Beach*, 254 F. 3d 1302, 1308 (11ᵗʰ Cir. 2001) ("If the court determines that the result obtained was an excellent result, then the award of fees 'will encompass all hours reasonably expended on the litigation and indeed in some case of exceptional success an enhanced award may be justified.'"); *Association of Disabled Americans v. Neptune Designs, Inc.,* 469 F.3d 1357, 1359 (11ᵗʰ Cir. 2006).

"[T]he most critical factor is the degree of success obtained." *Texas State Teachers Ass'n v. Garland Independent School Dist*., 489 U.S. at 789. A court may apply "a common-sense comparison between relief sought and relief obtained ... to indicate whether a party has prevailed." *Institutionalized Juveniles v. Sec'y of Pub. Welfare,* 758 F.2d 897, 911 (3ʳᵈ Cir. 1985) (citing *Bonnes v. Long,* 599 F.2d 1316, 1319 (4ᵗʰ Cir. 1979) (noting that a court should "look to the complaint to identify the conditions the suit sought to change, then use this as a benchmark to measure relief ultimately obtained"). This especially applies to the total success *sub judice.*

## I.    <u>DETERMINING THE LODESTAR</u>

---

429.	"[I]n the absence of special circumstances a district court not merely 'may' but must award fees to the prevailing plaintiff…" *Morscott, Inc. v. City of Cleveland,* 936 F.2d 271 (6ᵗʰ Cir. 1991) (quoting *Ind. Fed. of Flight Attendants v. Zipes,* 491 U.S. 754, 761 (1989)). Defendants do not anticipate that any "special circumstances" apply.

In determining an objective estimate of the value of a lawyer's services, this Court must multiply those hours reasonably expended by a reasonable hourly rate, or compute the "lodestar." *Hensley*, 461 U.S. at 433; *see also Norman v. Hous. Auth. of Montgomery*, 836 F.2d 1292, 1299 (11th Cir. 1988). "[There is] a strong presumption that the lodestar represents the reasonable fee." *City of Burlington v. Dague*, 505 U.S. 559, 562 (1992)(quoting *Pennsylvania v. Delaware Valley Citizens Counsel for Clean Air*, 478 U.S. 546, 565 (1986)). *See Duckworth v. Whisenant*, 97 F.3d 1393, 1396 (11th Cir. 1996); *Military Circle Pet Ctr. v. Cobb County*, 734 F. Supp. 502, 504 (N.D. Ga. 1990)("[T]he lodestar figure represents a presumptively reasonable fee."). Moreover, "[t]he Supreme Court has emphasized that the resulting figure is "more than a mere 'rough guess' of the final award." *Halderman v. Pennhurst State School and Hosp.*, 725 F. Supp. 861, 863 (E.D. Pa. 1989) (citing *Delaware Valley I*, 478 U.S. at 564). Rather, it is "'*presumed* to be the reasonable fee' to which counsel is entitled." *Id.* (quoting *Blum,* 465 U.S. at 897) (emphasis in original).

## A.  **REASONABLE HOURS.**

### 1.  Time Expended.

Where "plaintiff's claims for relief ... involve a common core of facts or [are] based on related legal theories" the district court "should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation." *Hensley*, 461 U.S. at 434. The hours claimed or spent

on a case are "[t]he most useful starting point for determining the amount of a reasonable fee." *Hensley*, 461 U.S. at 433.  Counsel must exercise "billing judgment" in determining the hours reasonably expended on the merits, *id.* at 437, and attorneys should be compensated for the time reasonably expended in seeking an award of fees from the court.  *Johnson v. Univ. Coll. of Univ. of Ala. Birmingham*, 706 F.2d 1205, 1207 (11th Cir. 1983); *Johnson v. Mississippi*, 606 F.2d 635, 638 (5th Cir. 1979). The expended hours are "reasonable" if they are consistent with the hours that would normally be "billed to a client of means who was seriously intent on vindicating similar rights." *Norman*, 836 F.2d at 1301. The "relevant issue . . . is not whether hindsight vindicates an attorney's time expenditures, but whether, at the time the work was performed, a reasonable attorney would have engaged in similar time expenditures." *Grant v. Martinez*, 973 F. 2d 96, 99 (2nd Cir. 1992), citing *Wooldridge v. Marlene Industry Corp.*, 898 F.2d 1166, 1177 (6th Cir. 1990).

Counsel's certification that the work itemized has in fact been performed is "entitled to considerable weight on the issue of time required ..." *Perkins v. Mobile Hous. Bd.*, 847 F.2d 735, 738 (11th Cir. 1988).  Indeed, this Circuit has stated that "[s]worn testimony that, in fact, it took the time claimed is evidence of considerable weight on the issue of the time required in the usual case and, therefore, it must appear that the time claimed is obviously and convincingly excessive under the

circumstances." *Perkins*, 847 F.2d at 738.

Defendants' counsel verify in their affidavits that they maintained accurate and contemporaneous records of time spent and expenses incurred in this matter. Zimring Decl ¶ 14-15, 16, 20; Goodmark Decl. ¶ 13, 19-20**.** Counsel also declare that they have carefully reviewed their time sheets and exercised prudent billing judgment with regard to the billable time and out-of-pocket expenses claimed. *Id*. Counsel's hours represent a specific division of labor and were *reduced* for any time that could be construed as "excessive, redundant or inefficient." *Id.*; *see also In Re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. 297, 354 (N.D. Ga. 1993). Defendants have both documented time by task, and extensively reduced time when appropriate. *Id.; see also* Goodmark Decl., ¶ 13, 19-20; Zimring Declaration ¶ 14-15, 20, 26; Petition Ex. 6, 7. This establishes their appropriate exercise of "billing judgment." *Norman*, 836 F. 2d at 1301. As this case includes not only an administrative hearing but a *de novo* review, there are really two matters. Defendants have divided the time into these two matters for efficiency on this motion, and followed the *Norman* guideline of dividing each case into conceptual stages. Defendants refer the Court to Ex. 1, 2 as charts and summaries and 4 and 6 for the hours spent by Mr. Goodmark and Mr. Zimring.

2.  The Johnson Factors with the *Hensley* entitlement.

Although the Eleventh Circuit has followed Supreme Court precedent in

7

modernizing the *Johnson* test in favor of the lodestar formula, the twelve *Johnson* factors are still used in calculating a reasonable fee. *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974); *Loranger v. Stierheim*, 10 F.3d 776, 781 (11th Cir. 1994). These support Defendants' time, rates and lodestar in each case.

Four *Johnson* factors - the time and labor required, the novelty and difficulty of the case, the "amount" involved and the result obtained, and the skill of the attorneys requisite to perform the legal service properly – help assess the reasonableness of the hours sought. *See, Norman*, 836 F.2d at 1299-1302.

     a.  <u>Time and Labor Required</u>.

In making a fee request, "[c]ounsel ... should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary." *Hensley*, 461 U.S. at 434; *Norman*, 836 F.2d at 1301. Counsel should provide in the fee request the hours spent "with sufficient particularity." *ACLU v. Barnes*, 168 F.3d 423 (11th Cir. 1999). Defendants' counsel affirmed they have carefully reviewed their time records and exercised prudent billing judgment with regard to the billable time and out-of-pocket expenses claimed. Zimring Decl. ¶ 14-18; Goodmark Decl. ¶ 13, 20-21**,** *see also* Smith Decl., ¶ 11. One area where particular care was taken was on otherwise compensable time they spent coordinating their work as much of this time was reduced to ensure reasonableness,

and it made the overall time efficient, even though such time is compensable, especially where there were important issues manned by multiple <u>adverse</u> counsel. *See Johnson v. Univ. College of Ala.,* 706 F.2d 1205, 1208 (11th Cir. 1983).

This exercise of billing judgment, *see* e.g., *Norman* , 836 F.2d at 1301, when self-imposed as here, ensures that the time that is sought is as if it was sought from a fee paying client, *id.* at 1301, and has an additional indicia of reasonableness. *Turton v. Crisp Cnty. Sch. Dist.*, 688 F. Supp. 1535 (M.D. Ga. 1988).  Other examples of billing judgment included the many times that Defendants sought to resolve the case and avoid fees, for example Defendants spent time and considerable effort to make the pre-hearing mediation meaningful, as well as the ALJ ordered meetings, *see discussion*, Zimring Decl. ¶ 28, 30-31. Similarly, Defendants sought to limit the needed briefs or to consolidate the pleadings in this Court.  These efforts all support that the time sought was needed and necessary.

### b.  Novelty and Difficulty of the Issues Presented.

 In determining a reasonable attorney fee, this Court should consider the novelty and difficulty of the questions presented in this case and the skill requisite to perform the services properly. *See Blanchard v. Bergeron*, 489 U.S. 87, n. 5 (1989) (*citing Johnson,* 488 F.2d at 717-19).  The questions presented in this case involved complex factual issues that relied upon voluminous data and the

specialized opinions of multiple experts in several different areas of the allied

sciences and education.  Like most special education disputes under IDEA, the legal

issues can be straight forward, however, the educational data, the expert reporting

and the winding chronological narrative make the cases difficult to litigate. This

case raised complex issues of behavioral science and therapy, occupational therapy,

speech and language, reading, measurement and how to track growth and progress.

A wholly specialized practice area, special education litigation requires

expertise in the federal statute and supporting regulations, the state and local

regulations and policies that dictate implementation of the special education

process, administrative law, and the many facets of educational pedagogy.

Goodmark Decl., ¶ 8-9; Zimring Decl. ¶ 7-9; Smith Decl. ¶ 10, Tefalski, ¶ 6,9;

Orland, ¶ 10. *See Dochet v. Chelton County Sch. Dist.*, 65 F. Supp. 2d 1249 (M.D.

Ala. 1999) (specialized IDEA practice impacts the fee).[3] For Defendants' counsel,

prior case expertise contributed to their efficiency, especially without discovery in

the administrative court.  That meant the Family was forced to question adverse

witnesses and cross-examine novel experts without reports and/or depositions, in

order to meet their burden of proof.  Indeed, Defendants called adverse

---

[3] For example, at issue in this case was the use and meaning of the BASC -3,
and other assessments, and the novel and convoluted placement and release
procedures created by the GNETS called "triangularization".

administrators on the first day for cross-examination and presented testimony about technical issues involving IDEA rights and procedures.

The legal issues in this case were not particularly novel for special education (denial of FAPE/LRE) though in the administrative court they covered the spectrum of IDEA rights and raised serious GNETS questions. The case included behavioral issues that required understanding of the science of behavioral assessment. The case included issues about the need and use of occupational therapy and J.F.'s speech language disorder[4]. Moreover, the placement of the student was in a regional facility of a statewide program separately administered and segregated from the local school district, made the factual issues unique and factual investigation in the case more complex given the multiple agencies and providers engaged with the student. A case where the student is educated by the local school district may be more discreet. Here, J.F. received his services from a segregated program that

_____

[4] FCSD called its chief speech and language pathologist Dr. Sherry Johnson who did not provide a report and had not conducted an evaluation of the Plaintiff child but who challenged the independent expert evaluation and testimony of Ms. Cohen, Defendants' expert witness. Transcript Vol. 5, Sept. 27, 2019, at 1620 *et seq.* This left her cross-examination by Defendants' counsel an unknown going into the last day of trial. This expert testified that the issues in Ms. Cohen's report were so complex she spent over twenty (20) hours reviewing and re-reviewing it. *Id.* at 1642-43. Any review of her testimony or that of Ms. Cohen, Transcript Vol. 1, September 4, 2019, at 256 *et seq.*, or of the Defendants' expert occupational therapist, Ms. Wing, Transcript Vol. 2, September 24, 2019, at 541 *et seq.,* or of the behavioral analysts demonstrate the attorney experience and expertise in special education by Petitioners/Defendants' counsel.

provides services through agreement with the school district. This layered the case

and the evidence and made the matter more complex and time consuming.

In this Court, Defendants' counsel worked to manage the appeal, and the

implementation of an approach to sustain the ALJ decision in this Court. This

included whether to seek discovery, or additional evidence, to try to get the Plaintiff

to actually state the alleged error, and to demonstrate to this Court the "deference"

and evidence found in a multi-thousand page record.

c.  The Amount Involved and the Results Obtained.

As the Eleventh Circuit has explained, where all the theories of recovery

arise from a common core of facts, a district court should focus on "the significance

of the overall results as a function of total reasonable hours." *Norman,* 836 F.2d at

1302.  Additionally, the public benefit advanced by civil rights litigation is far more

important than the amount of money received. *City of Riverside v. Rivera*, 477 U.S.

561, 574 (1989) ("Unlike most private tort litigants, a civil rights plaintiff seeks to

vindicate important civil and constitutional rights that cannot be valued solely in

monetary terms."). As IDEA does not allow damages, the attorney fees analysis

may look to whether the case promotes "some public purpose." *Duckworth v.*

*Whisenant*, 97 F.3d 1393, 1396 (11th Cir,. 1996)(addressing nominal damages on

constitutional rights); *see also Webster Greenthumb Co.*, 112 F. Supp. 2d at 1376-

789 ("the most important factor is the results obtained" and enhancement may be

appropriate for public advancement "spillover benefits for non-parties"); *Barber v. T.D. Williamson, Inc.*, 254 F.3d 1223 (10th Cir. 2001) (attorney fees to civil rights claimant to be construed broadly to allow recovery when attorneys are encouraged to represent civil rights clients, important right is affirmed, or need to improve or change conduct is established).   Here, Defendants counsel advocated J.F.'s "important rights" and sought to "change the conduct" of the Plaintiff.  Through this victory, not only were J.F. interests served, perhaps many others students illegally interred in these alternative and isolated programs will be affected.

The results achieved by Defendants before the ALJ included the relief sought at the outset of the case -- removal from the segregated program, placement in the more integrated setting and significant compensatory educational services for the time the student was illegally placed in the overly restrictive GNETS. *See Koster v. Perales*, 903 F.2d 131, 135 (2nd Cir. 1990) (where full measure of attorney fees' were awarded because "[p]laintiffs ... obtained the relief contemplated at the outset of the litigation."); *see also Hewitt v. Helms*, 482 U.S. 755, 761 (1987) ("At the end of the rainbow lies not a judgment, but some action (or cessation of action) by the defendant that the judgment produces... ."); *Hensley* 461 U.S. at 435 ("[T]he court's rejection of *or failure to reach certain grounds* is not a sufficient reason for reducing a fee. The result is what matters.") (emphasis added); *Brooks v. Georgia State Bd. of Elections*, 997 F.2d 857, 861 (11th Cir. 1993) ("compensable time …

[on] these fee statutes is that time spent *'on the litigation.'"*) (emphasis in orig.).

Indeed, the Supreme Court has instructed that "[w]here a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee.... In these circumstances the fee award should not be reduced simply because the plaintiff failed to prevail on every contention raised in the lawsuit." *Hensley*, 461 U.S. at 435; *see also Brooks*, 997 F.2d at 868 ("This principle is no less applicable where the plaintiff did not receive all the relief requested.") (*citing* and *quoting Hensley*, 461 U.S. at 435-36 n. 11).[5]   Where a prevailing parent has brought a case with "a common core of facts" and "related legal theories," such as this case, the reasonableness of the time can turn on the "overall relief obtained … in relation to the hours reasonably expended on the litigation." *Hensley*, 461 U.S. at 435. This is because "counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide hours expended on a claim-by-claim basis." *Id.*

Many civil rights cases will present only a single claim. In other cases the

---

[5]     In *Brooks,* voters challenged Georgia's redistricting and method of electing superior court judges. 997 F.2d at 859.  The district court heard and decided only the Section 5 claim and that defendant objected to the inclusion of hours spent on the non-adjudicated Section 2 claims, also arguing to reduce the award on grounds of "limited success." 997 F.2d at 868.  The Eleventh Circuit determined that "[t]he State's argument ... is without merit" reasoning that the "object of the Section 5 claim, the only claim litigated, was to block continued application of the challenged changes … Because this was, in fact, the ultimate result in this case, the district court's refusal to reduce Brooks' fee award for limited success was not an abuse of discretion." *Id*. This is on par with both the ALJ and this Court's final orders.

> plaintiff's claims for relief will involve a common core of facts or will be based on related legal theories. Much of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis. Such a lawsuit cannot be viewed as a series of discrete claims. Instead the district court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation.

*Hensley* at 435. *See also Carmichael v. Birmingham Saw Works*, 738 F.2d 1126, 1137 (11th Cir. 1984), *quoting, Hensley* at 435, *Morgado v. Birmingham-Jefferson Co. Civil Def. Corps.,* 706 F.2d 1184, 1192-93 (11th Cir. 1983), *cert. denied*, 104 S.Ct. 715 (1984). *Accord, Williams v. Roberts*, 904 F.2d 634, 639-40 (11th Cir. 1990), *citing, e.g.*, *Goodson v. City of Atlanta*, 763 F.2d 1381 (11th Cir. 1985).

The results obtained in this case were excellent and arose out of the same course of conduct, timeline and share a "common core of fact," even if a specific argument raised solely before the ALJ on procedural violations did not succeed. *Hensley* at 435; *Davis v. Locke,* 936 F.2d 1208, 1214 (11th Cir.1991); *Jean v. Nelson,* 863 F.2d 759, 771 (11th Cir.1988); *Popham v. City of Kennesaw,* 820 F.2d 1570, 1578 (11th Cir. 1987). In determining whether claims are related by a common core of fact, the 11th Circuit has taken an "expansive view." *See Popham,* 820 F.2d at 1579. There is a single core of events here on FAPE and placement that encompass the other issues raised by J.F.

Defendants were awarded significant and substantial relief. The recovery included changing the challenged placement through a court ordering a new

15

placement; support services to address the time J.F. spent in the inappropriate placement and provide new and more intensive therapies. Defendants sought and received an award of compensatory educational services for each day that J.F. was required to attend the segregated school.

In this Court, the Family having borne their burdens before the ALJ, *completely* prevailed on every issue they pled and all defenses raised. The Court rejected all the FCSD's claims and granted complete relief. Defendants having been dragged into federal court on appeal, as prevailing parents, should receive the full amount of fees requested for successfully prevailing in this case in *both* courts.

   d. <u>Skill and Expertise of the Attorneys</u>.

 Detailed information regarding the skill and expertise of the Defendants' counsel is contained in the Declarations of Counsel, experts, and in the discussion of reasonable hourly rate. Zimring Decl. ¶¶ 2-6; Goodmark Decl. ¶¶ 2-7; Smith Decl., ¶ 11, Tefalski Decl., ¶ 10. Defendants' legal team included counsel with substantial special education experience, and prior related litigation specifically involving what has become the 11th Circuit standards for addressing claims of students placed in overly restrictive educational settings. *See* e.g. *Greer v. Rome City*, 950 F.2d. 950 F.2d 688(11th Cir. 1991), *vacated*, 956 F.2d 1025, *reinstated*, 967 F.2d 470 (11th Cir. 1992) (least restrictive environment for students with disabilities), and was guardian ad litem in the ADA case establishing the legal

definition of least restrictive environment in *Olmstead v. L.C. and E.W. ex rel Zimring,* 527 U.S. 581(1999). Counsel have litigated a large number of special education and disability rights cases before OSAH, in the district courts of Georgia, in the Eleventh circuit and in the Supreme Court. See Zimring Decl. ¶¶ 4-5; Goodmark Decl. ¶¶ 3-6, 10. Many of these cases established the process and standards applicable to this case. This specialized experience enabled Defendants to pursue this case successfully and efficiently.  *See discussion*, Section I, A, 2, B, p.8-10 *text* and n. 5 and 6.

     e.    The Court May Consider Defendant's Actions in Exacerbating the Costs of Litigation.

     Defendants prevailed at an extended hearing after having advocated for the relief sought prior to the case even being filed.  Defendants attempted to resolve the matter *many times* including sending an offer to resolve the case before filing, attendance at an early resolution session, and participating in a mediation suggested by ALJ Malahi prior to the opening of testimony[6]. In this case, J.F. was in the contested placement and FCSD controlled the core documents, the teacher-witnesses, and the many administrators used at trial and subsequent ALJ ordered

---

[6] The case was convened for trial in May 2019 after Defendants had completed trial preparation with their last offer rejected, and when unsuccessful, resulted in a substantial delay before the hearing commenced, creating new events and renewed final preparation. This impact is set out in the time summaries Def. Exh. 4 and 6.

meetings. Defendants were forced to overcome positions taken by Plaintiff that obstructed their access to critical information about the student's performance. Following the January 21, 2020 Final Order, FCSD openly admitted their disagreement with the Court's decision as they failed, then refused to implement the Court's order for over forty-five days, while seeking to delay the ordered IEP, and when it allowed the meeting as ordered, it was contentious, all as the student remained in a placement deemed illegal by the ALJ and now this Court.

At virtually every stage of this case, Plaintiff has acted to protract and extend the litigation, causing Defendants to respond, incur expenses and expend time securing a Final Order, then implement the ALJ ordered remedy, and now the Judgment. Plaintiff may raise good faith obstacles but in turn this Court is entitled to consider its approach in determining the amount of attorney fees.[7] *See City of Riverside v. Rivera,* 477 U.S. 561, 580 n. 11 (1986) (a defendant "cannot litigate tenaciously and then be heard to complain about the time necessarily spent by plaintiff in response")*; Knighton v. Watkins*, 616 F.2d 795, 799 (5th Cir. 1980), *rehearing denied*, 620 F.2d 300 (5th Cir. 1981)(former Fifth Ciruit); *Connolly v. National School Bus Service, Inc.,* 177 F.3d 593, 598 (7th Cir. 1999) (upholding an

_____

[7] Courts should adjust fee awards to account for delay. *See Missouri v. Jenkins,* 491 U.S. 274, 283-84 (1989); *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air (Delaware Valley II),* 483 U.S. 711, 716 (1987). *See discussion,* below at p. 22. Here with appeal and 2 cases, delay is embedded in IDEA cases.

18

attorney fee reduction to plaintiff because "[counsel's] dilatory litigation tactics had unduly prolonged the litigation."); *Shipes v. Trinity Indus.,* 987 F.2d 311, 321 (5th Cir.1993) ("obstinate conduct by opposing counsel is compensated by the additional number of hours required to prevail over such obstinancy"); *Powell v. U.S. Dept. of Justice*, 569 F. Supp. 1192 (D.C.Cal.1983) (awarding interim fees to plaintiff based, in part, on the fact that "the government has engaged in inordinate delay" and the fact that "this litigation has been pending for over a year and a half and is likely to continue for a substantial period of time."); *Marbled Murrelet v. Pacific Lumber Co.,* 163 F.R.D. 308, 326 (N.D.Cal.1995) (defendant's counsel "may have the right to play 'hardball' when defending its client's interests, but it should bear the costs associated with pursuing this type of obstructionist strategy"). Further, looking in from the other direction any reduction in the lodestar must be rejected even where "[t]he strenuous defense may force the plaintiff 'over budget.'" *McKenzie v. Cooper, Levins & Pasktko, Inc.*, 990 F.2d 1183, 1185, n. 4 (11th Cir. 1993), citing, *Lipsett v. Blanco*, 975 F.2d 934, 941 (1st Cir. 1992).[8]

Defendants have overcome FCSD's "hardball" strategy, delays and restarts and are now entitled to the time expended in doing so, as all was "necessary at the

---

[8] *Lipsett*, the "case was bitterly contested. … resisting Lipsett at every turn and forcing her to win her hard-earned victory from rock to rock and from tree to tree." *Id.* at 939. It rejected defendant's objection to full fees and excessive time.

time" and related directly to prevailing party status. FCSD maintained at every stage of this litigation that the student, despite objective data to the contrary, could not attend a non-segregated school. At multiple negotiations, FCSD maintained that the student's placement would not change because "the data" said so. It then refused to share much of this data with Defendants, requiring J.F. to overcome multiple motions regarding this information. Teachers and therapists were unavailable to J.F. in OSAH hearing preparation, a trial conducted without a right of discovery. Ultimately, Defendants overcame a vigorous defense presented by FCSD at a five-day trial on the merits. FCSD did almost nothing to streamline the case and used every tactic and motion it had available. Thus, Defendants' time spent engaged in this hard fought litigation is reasonable and compensable.

### B. <u>REASONABLE HOURLY RATE</u>

In assessing the reasonable rate for Defendants' counsel, this Court first evaluates the attorneys' "knowledge of trial practice and knowledge of the substantive law." *Norman*, 836 F.2d at 1301. "A reasonable hourly rate is the prevailing market rate in the relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation." *Id.* at 1299. In short, the rate should "reflect what an attorney with similar experience, background, skill, and reputation would charge under the same circumstances." *In re Chicken Antitrust Litig.,* 560 F. Supp. at 971; *In re Domestic Air Transp. Litig.*, 148 F.R.D. at 355; *Pub.*

*Interest Group of N. J., Inc. v. Windall*, 51 F.3d 1179, 1185 (3rd Cir. 1995). The market rate applies whether the attorney is in public interest or private practice. *Mason v. Pierce*, 806 F.2d 1556, 1557-58 (11th Cir. 1987). Further, "[w]hat the attorney charges clients is powerful and perhaps the best evidence of his market rate, that is most likely to be what he is paid as 'determined by supply and demand.'" *Dillard v. City of Greensboro,* 213 F 3d 1347, 1354-55 (11th Cir. 2000)(quoting *Blum v. Stenson*, 465 U.S. 886, 895 n. 11 (1984)). *See Norman*, 836 F.2d at 1299. The Court may also give weight to the speciality nature of the available bar and case, and IDEA is long recognized as a specialty practice. *Dochet v. Chelton County Sch. Dist.*, 65 F. Supp 2d 1249 (M.D. Ala 1999).

The *Norman* analysis also directs a court look at the skill and manner in which the case has been handled. This arises first in an attorney's analysis of the case and the judgments made concerning the action, *id.* at 1300, moves into the development of the case, *id.*, and "the word 'skill' incorporates the notions of organization and efficiency." *Id.* This includes a logical presentation, and "means doing well just what ought to be done." *Id.* at 1301.[9] This *Norman* consideration fullly supports the rate of $550.00 for Mr. Zimring and $450.00 for Mr. Goodmark. Counsel systematically

---

[9] Anticipating a potential defense, the rates of government attorneys are <u>not relevant</u> to a family's rates. *Norman* at 1300. Lower government rates have no probative value. *Brooks v. Ga. State Bd. of Elections*, 997 F. 2d 857,869 (11th Cir. 1993).

handled the case, - obtaining documents, experts, evaluations, and then structured a completely successful trial approach and presentation, and then filed a proposed order addressing the reality of the evidence, all leading to a fully successful final judgment.

The reasonableness of Defendants' counsel Goodmark's earlier hourly rate has been affirmed by Judge Murphy from the Rome Division of this Court. *See Barrett. v. Walker County School District*, No. 4:15-cv-0055 (June 8, 2018); *see also* Zimring Decl., ¶ 30. Mr. Zimring's earlier rate was awarded by Judge Story under IDEA. Due to the passage of time, Mr. Goodmark and Mr. Zimring had small common general increases in their market and client rates, by $25.00 to $450.00 for Mr. Goodmark and to $550.00 for Mr. Zimring, as current rates awardable historically to compensate for delay, the time value of money and using the current rate. *See Missouri v. Jenkins*, 490 U.S. 274, 282-83, 284 (1989)("an appropriate adjustment for delay in payment – whether by application of current rather than historic rates or otherwise"); *Norman* at 1302 ("time value of money"); *Loranger v. Steirheim*, 3 F.3d 357, 361 n.3 (11th Cir. 1993)("simply to apply current … rates.")

1. *Johnson* Factors Relevant to Hourly Rate.

As noted a review of the factors delineated in *Johnson* is still useful in calculation of a reasonable fee.  *Norman*, 836 F.2d at 1299.  "[T]he district court may wish to consider any of the *Johnson* factors to the extent that they may … affect the weight to be given to the comparables being offered the court." *Id.* at

22

1299-1300.  Several factors are relevant to the requested hourly rate.

a.  <u>The Customary Fee</u>.

There is no doubt that the attorneys' own usual billing rate is an "appropriate factor to be considered by the court." *Blum v. Stenson*, 465 U.S. 886, 895 (1984). This Court has described the customary fee as the "best evidence" of hourly rate. *Webster Greenthumb*, 112 F.Supp.2d at 1368. Both Zimring and Goodmark have prior fee awards in civil rights and special education litigation cases and their hourly rates are both consistent with those awards and the actual hourly rates that they charge fee paying clients.[10]  Zimring Decl. ¶¶ 29-30; Goodmark Decl. ¶¶ 12; Smith Decl. ¶ 11.  The marketplace has established these rates as compensable.

b.  <u>Experience, Reputation, and Ability of Attorneys</u>.

The experience, reputation and ability of counsel are set forth in the attached Declarations, and weigh heavily in favor of their offered hourly rates. Zimring Decl. ¶ 2-6, 29; Goodmark Decl. ¶ 3-7, 10, 12; Smith Decl. ¶11; Tefalski Decl. ¶ 10.

c.  <u>The Nature and Length of the Professional Relationship</u>.

*Johnson* stated that a lawyer "may vary his fee for similar work in the light of the professional relationship of the client with his office." *Johnson*, 488 F.2d at

---

[10] The relevant legal community is the Northern District of Georgia. *Carey v. Rudeseal*, 721 F.Supp. 294, 298 n. 5 (N.D. Ga. 1989) ("'relevant community' for purposes of this fee petition is the Northern District of Georgia"); s*ee* 20 U.S.C. § 1415(i)(3)(F)(ii).

719.  This factor does not apply to this case in such a way as to suggest any reduction of the fees based on the rate. Defendants' counsel took on a significant case on important legal issues including the segregation of a young student with a disability.  Defendants' counsel filed the case without an expectation of client payment and having to bear the payment of costs but for a civil rights' attorney fee recovery. This supports the compensatory recovery sought on rates reasonable in the community.  *See* Smith Decl. ¶ 11; Zimring Decl.  ¶ 7, 8.

## C.  <u>REASONABLE EXPENSES</u>

Defendants also seeks an award of expenses.  *Loranger v. Stierheim*, 3 F.3d 356, 363 (11th Cir. 1993), *vacated on other grounds*, 10 F.3d 776 (11th Cir. 1994); *Dowdell v. City of Apopka*, 698 F.2d 1181, 1192 (11th Cir. 1983) ("all reasonable expenses incurred in case preparation, during the course of litigation, or as an aspect of settlement of the case may be taxed as costs under § 1988."); *Ryder Truck Lines, Inc. v. Goren Equip. Co.*, 576 F. Supp. 1348 (N.D. Ga. 1983). These are not duplicative of the bill of costs and eliminate Defendants' filing fee but include other expenses related to the presentation of evidence at trial and on appeal, including preparation of multiple document notebooks with over 1500 pages of evidence, transcripts of educational planning meetings, and witness fees before the ALJ (including the fee for the FCSD director who cashed his check but failed to appear for hearing) should be approved. These are all at cost and common

and customary in this market. Exhibit 2 is an accurate summary of these costs.

### D.    TIME AND FEE CALCULATION

Defendants following the directions of *Norman* and its progeny have divided the time and fees sought into major stages of the case in both a summary chart, Def. Exhibit 1, and within their contemporaneous keep time and cost accounting. Def.  Exhibit 4, 6.  Filed with this petition is Defendants' Exhibits in Support of Petition for Fees and Costs and supporting evidence. In summary:

### GLF/ZLF FEE BREAKDOWN

|  | GOODMARK LAW FIRM | ZIMRING LAW FIRM | TOTAL |
|---|---|---|---|
| OSAH Due Process Hearing | 401.4 | 259.35 |  |
| FCSD Appeal in USDC | 267.4 | 246.25 |  |
| TOTAL HOURS | 668.8 | 505.60 |  |
| RATE | $450 | $550 |  |
| TOTAL FEE EARNED | $300,960 | $278,080 |  |
| LESS 5% FOR REASONABLENESS | $15,048 | $13,904.00 |  |
| TOTAL FEES SOUGHT | $285,912 | $ 264,176.00 | $550,088.00 |

### GLF/ZLF NON-BILL OF COST EXPENSES

|  | GOODMARK LAW FIRM | ZIMRING LAW FIRM | TOTAL |
|---|---|---|---|
| COPIES | 0 | $716.40 | $716.40 |
| PARKING | $80 | $80 | $160 |
| POSTAGE/COURIER |  | $87.16 | $87.16 |
| TOTAL |  |  | $963.56 |

## CONCLUSION

For the reasons set forth herein, and upon the record in the case, Defendants submit that this request for reasonable attorneys' fees and expenses be granted.

This 7th day of July, 2021.

/s/ Jonathan A. Zimring                     /s/ Craig Goodmark
Jonathan A. Zimring                         Craig Goodmark
Georgia Bar No. 785250                      Georgia Bar No. 301428
ZIMRING LAW                                 GOODMARK LAW FIRM
1425-A Dutch Valley Place                   1425 Dutch Valley Place Suite A
Atlanta, GA 30324                           Atlanta, GA  30324
404-607-1600                                404-719-4848
zimring@zlawyers.com                        cgoodmark@gmail.com

## **CERTIFICATE OF COMPLIANCE**

Counsel certifies that this brief was prepared using Times New Roman point 14, a font and type approved by the Northern District of Georgia and complies with the page and word limits.

So stated:     ***/s/Craig Goodmark***
Craig Goodmark
Georgia Bar No. 301428
*Counsel for Defendants*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| **FULTON COUNTY SCHOOL DISTRICT,** *Plaintiff,* v.<br><br>**J.F., by and through J.A., and J.A.,** *Defendants.* | **CIVIL ACTION** **FILE NO. 1:20-cv-1675-ELR** |

## CERTIFICATE OF SERVICE

I hereby certify that I have this day served the within and foregoing via the Court's electronic filing and service system to *Fulton County School District via counsel:*

> Samantha P. Lewis, Jeff Daniel, Laurance Warco
> Email: samantha.lewis@nelsonmullins.com;

Respectfully submitted this the 7th day of July, 2021.

> */s/Craig Goodmark*
> Craig Goodmark
> Georgia Bar No. 301428
> *Counsel for Defendants*

GOODMARK LAW FIRM
1425A Dutch Valley Place
Atlanta, GA 30324
404-719-4848
cgoodmark@gmail.com