**EXHIBIT 1**

## CLG/JAZ FEE SUMMARY for
### 1. J.F., by and through J.A., and J.A. v. FCSD; Case No. 1920354, and
### 2. FCSD v. J.F., by and through J.A., J.A., Civil Action No. 1:20-cv-1675-ELR

| SUMMARY FOR J.F., by and through J.A., and J.A. v. FCSD; OSAH Case No. 1920354 (Administrative Due Process Hearing) | | | |
|---|---|---|---|
| DATES | ACTIONS COMPLETED | CLG TOTAL TIME | JAZ FIRM TIME |
| NOVEMBER 2018-FEBRUARY 2019 | ***CASE INITIATION***<br>Draft Pleadings/Attend Early Resolution Session | 23.2 | 1.85 |
| FEBRUARY 2019-MAY 2019 | ***PREHEARING PREPARATION AND DAY 1 HEARING***<br>Full Hearing Preparation<br>Pre-hearing Motions and Responses<br>**Attend Day 1 Hearing** | 99.6 | 93.5 |
| MAY 2019 – JUNE 2019 | ***POST HEARING MEDIATION***<br>Prepare Necessary Settlement Materials<br>Attend Full Day Mediation | 26.7 | 10.35 |
| JULY 2019 – SEPTEMBER 4 2019 | ***HEARING DAY 2***<br>Update Subpoenas<br>Prepare Trial Brief/Issue Briefs, Trial Prep and Attend Again 1st Day<br>**Attend Day 2 Hearing** | 71.3 | 44.2 |
| SEPTEMBER 2019-NOVEMBER 2019 | ***HEARING DAY 3,4, & 5***<br>Respond to Emergency Motion<br>Reschedule all witnesses, prep, new data and documents<br>Prepare for Respondent's Presentation of Evidence<br>**Attend Day 3, 4, 5 Hearing** | 65.5 | 60.20 |
| OCTOBER 2019-DEC. 2019 | **POST HEARING BRIEFING** | 84.9 | 21.00 |
| JANUARY 2020 – MARCH 2020 | **POST ORDER IEP MEETING/IMPLEMENT COURTS ORDER**<br>ALJ Ordered IEP<br>Post IEP Disputes re: implementation | 30.2 | 28.25 |
| SUBTOTAL FOR DUE PROCESS HEARING | | 401.4 | 259.35 |

| SUMMARY FOR | | | |
|---|---|---|---|
| FCSD v. J.F., by and through J.A., J.A., Civil Action No. 1:20-cv-1675-ELR (District Court Matter) | | | |
| DATES | ACTIONS COMPLETED | CLG TIME | JAZ TIME |
| March – April 2020 | ***POST ALJ FINAL ORDER TASKS; PREPARE FOR FEE COMPLAINT*** | 24.7 | 13.95 |
| April to July 2020 | **SERVICE, RESPONSIVE PLEADINGS; MTN. MORE DEFINITE STATEMENTS FILED:**<br>Receive and Respond to Complaint;<br>Mtn. Consolidate;<br>Two Motions for More Def. Stmt. | 52.6 | 55.1 |
| July to September 2020 | **EARLY CASE DEVELOPMENT:**<br>Motion Consolidate/Answer/Counter-claim;<br>Amended Complaint;<br>Resp. P Mtn. for More Def. Stmt. | 53.00 | 67.5 |
| September 2020 to January 2021 | **MID CASE WORK AND READY CASE FOR RESOLUTION:**<br>Motion to Enforce Stay Put;<br>D's Motion for Judgment on the Record | 49.8 | 51.7 |
| January to March 2021 | **MOVING CASE TO FINAL JUDGMENT:**<br>Cross Motions for Judgment on the Record;<br>All Briefing on Motions | 63.2 | 41.85 |
| April to June 2021 | **OBTAINING RELIEF AND POST JUDGMENT FEES/COSTS**<br>**(Does not include time spent on fee petition in March 2020)** | 24.1 | 16.15 |
| SUBTOTAL FOR DISTRICT COURT | | 267.4 | 246.25 |
| TOTALS | | | |
| TOTAL TO 3/30 | **LODESTAR TIME  (First Case and Remedy Meetings)** | 401.4 | 259.35 |
| TOTAL FROM 3/30 to 6/28 | **LODESTART TIME  (Second Case and Fee Claims)** | 267.4 | 246.25 |
| ALL TOTAL TIME | | 668.8 | 505.60 |
| COURT RATES | **$450 (CLG), $550 AND $125 (JAZ, DH, JB)** | $450 | $550 |
| NON-ADJUSTED LODESTAR | | $300,960 | $278,080.00 |
| DISCOUNT 5% - REASONABLENESS | | -$15,048 | -$13,904.00 |
| TOTAL FEES SOUGHT | | 285,912.00 | 264,176.00 |

**EXHIBIT 2**

## CLG/JAZ COSTS SUMMARY
### GEORGIA OFFICE OF STATE ADMINISTRATIVE HEARINGS
### J.F., by and through J.A., and J.A. v. FCSD; Case No. 1920354
### and
### FCSD v. J.F., by and through J.A., J.A., Civil Action No. 1:20-cv-1675-ELR

### GOODMARK LAW FIRM/ZIMRING LAW FIRM
### NON-BILL OF COST EXPENSES

|  | GOODMARK LAW FIRM | ZIMRING LAW FIRM | TOTAL |
|---|---|---|---|
| COPIES | 0 | Feb 2019 – May 2019 - 716.40 | $716.40 |
| PARKING | Parking ($20 per day) 9/24, 25, 26, 27 = $80 | Parking ($20 per day) 9/24, 25, 26, 27 = $80 | $160 |
| POSTAGE/COURIER |  | Documents/Subpoenas - 87.16 | $87.16 |
| TOTAL |  |  | $963.56 |

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | |
|---|---|
| J.F., by and through J.A., and J.A, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| vs. | ) |
| | ) |
| FULTON COUNTY SCHOOL | ) |
| DISTRICT, et al. | ) |
| | ) |

## <u>DECLARATION OF CRAIG GOODMARK</u>

Personally appeared, CRAIG GOODMARK, who, states and declares under penalty of perjury as follows:

1. My name is Craig Goodmark.  I am a member of the State Bar of Georgia and an education civil rights attorney.  I have been a practicing attorney in Atlanta, GA since 1999.  I am legally competent to make this affidavit and have personal knowledge of the facts set forth herein.

### <u>Attorney's Experience and Qualifications:</u>

2.     I graduated *cum laude* from the University of Florida School of Law in 1998.  In law school served as president of the Association of Public Interest Lawyers, participated in various clinical programs involving public interest litigation, and worked during the summers for the American Civil Liberties Union of Georgia, the Equal Employment Opportunity Commission and the law firm of

Nelson, Hill, Lord & Beasley assisting in their general litigation practice. During law school, I interned for former Florida Speaker of the House Jon Mills supporting the state constitutional revision commission addressing the constitutional language related to education. I also worked at the Southern Legal Counsel, a public interest impact litigation group working in Gainesville, Florida.

## Employment

3.      In 1999, I began working for the law firm of Kramer &Thomas, the outside counsel for the Georgia Association of Educators. My focus was on education law, representing teachers and students with regards to their legal claims against public school systems in Georgia. I was co-counsel on cases in both federal and state court, and acted as lead counsel in numerous administrative hearings.

4.      In 2000, I moved to the law firm of Zimring, Smith & Billips, a boutique law firm specializing in representation of students with disabilities regarding their educational civil rights. I served as co-counsel in numerous cases in state and federal court. I have worked on a number of education and special education cases in Georgia since 1999. This includes as an associate with working on special education cases on a daily basis, and, since that time, associating and/or litigating in the administrative courts and in the federal district courts on specific special education matters.

5.      From 2004 to 2010, I worked with and for the Atlanta Legal Aid

Society as an education civil rights attorney. In that role, I managed several education law cases for students in public schools, including many cases filed under IDEA. I supervised most cases involving public schools at ALAS and co-counseled in all education related litigation prosecuted by ALAS. I also maintained a private practice that specialized in the education civil rights of teachers and students. I represented both teachers and students in cases raising claims under both Federal constitutional and statutory authority. Over the past ten years I have participated in several cases that assert the civil rights of educators and students in Georgia.

6.     In addition to maintaining a private education civil rights practice, I have served as consulting attorney for the Office of Child Advocate and the Justice for Children Project of the Supreme Court of Georgia and the Multi-Agency Alliance for Children with regards to the educational rights of children in foster care, with a focus on their special education issues. I have lectured in local and national training programs to attorneys and judges since 2004 on education and special education matters for civil rights cases, and I have lectured to parent groups, parent associates, and other non-lawyer professional associations on educational rights many times.

7.     I am currently on the Board for the Atlanta Legal Aid Society. I also serve on the Board of the Council of Parent Attorneys and Advocates (COPAA), a national educational civil rights organization that serves families and the attorneys

that represent them. I have been named the Advocate of the Year by the State Bar of Georgia's Juvenile Law Committee and was distinguished as an attorney "On the Rise" by the Daily Report in 2012.

### IDEA as a Specialty Practice

8.      Special education cases are challenging. Families cannot afford to fully litigate the matters and the balance of power between the two parties is so disparate that resolutions without full litigation can be difficult. This imbalance includes that the IDEA fee provisions have been held not to allow reimbursement for the costs of expert witnesses whereas such witnesses are readily available in many districts with their staff, and here as augmented by the GNET staff. The cases are also difficult as districts such as FCSD often, like here, control much of the evidence and records, and provide it only reluctantly. These cases present a premium on knowledge of the system and process. To the extent relevant and the *Johnson* factors apply, this would make these cases for parent attorneys "undesirable" and support the rates sought in this matter. This has created, and continues to maintain, an unfortunate shortage of attorneys able to take special education cases. Some special education attorneys who represent parents will take cases, but <u>not</u> extend that representation into a hearing or try a case.

9.      Special education cases generally represent a specialty practice. This includes a detailed but precise administrative educational process which touches on many educational and civil rights issues and on the medical, psychiatric,

psychological and applied health sciences. The handling of the cases often requires, and significantly benefits, from experience and expertise.

### Current Cases of Similar Complexity

10.     Currently, I am representing clients with significant education civil rights claims, students with disabilities in administrative due process hearings in the administrative proceedings and in federal court.  In the past, I have handled cases identical to the instant case as well as having litigated complex educational civil rights issues in state administrative court and in federal court.  I have been both lead and co-counsel in complex federal litigation focused on the educational civil rights of students and teachers in public schools.  I have been associated with counsel on several individual civil rights cases that have been resolved without litigation.  Significant cases litigated either as lead or co-counsel include: *Walker County School District v. Bennett*, 203 F.3d. 1293 (11th Cir.), *cert denied*, 121 S.Ct. 670 (2000) (procedure for the trial of IDEA cases); *Loren F. ex rel Fisher v. Atlanta Ind. Sch. System*, 349 F.3d 1309 (11th Cir. 2003); *Draper v. Atlanta Indep. School Sys.,* 518 F.3d 1275, 1290 (11th Cir. 2008); *Smith v. City of Atlanta*, 2012 U.S. Dist. LEXIS 52096 (N.D. Ga. Apr. 13, 2012); *Swain v. Valdosta City Sch. Dist.*, 2013 U.S. Dist. LEXIS 16355 (M.D. Ga. Feb. 7, 2013); *D.H. v. Clayton County Sch. Dist.*, 52 F. Supp. 3d 1261 (N.D. Ga. 2014); *Hubbard v. Clayton County School Dist.*, 756 F.3d 1264 (11th Cir. 2014); *Powell v. Valdosta City Sch. Dist.*, 2014 U.S. Dist. LEXIS 157158

(M.D. Ga. Nov. 6, 2014); *Moon v. Brown*, 939 F. Supp. 2d 1329 (M.D. Ga. 2013); *Flanigan's Enters. v. City of Sandy Springs*, 831 F.3d 1342, (11th Cir. 2016); *Barrett v. Walker Cnty. Sch. Dist.*, 872 F.3d 1209 (11th Cir. 2017); *K.B. v. Dekalb County School District,* Civil Action No. NO. 1:18-CV-5201-MHC (Decided April 29, 2019). I have had the privilege to participate as attorney for *amicus curiae* in matters concerning children with disabilities in the Eleventh Circuit Court of Appeals and supported other amicus efforts related to similar education civil rights issues.

11.    I have filed fee affidavits for other attorneys if asked when I had a relevant opinion. I have made an effort to be aware of the rates commonly charged by attorneys in these and similar matters such as other civil rights cases, and to understand the practices before OSAH and in the Northern District of Georgia.

## Hourly Rate

12.    I am requesting my current hourly rate of $450.00 per hour for this case. I have billed out at similar hourly rates. This is the rate I currently charge most hourly clients as well. I believe that this rate is reasonable in light of my experience, qualifications and expertise. I represent other special education clients in the metro-Atlanta area including in Cobb County and Marietta City Schools, APS, DeKalb County, and Fulton County and this is my rate in these matters, though I also take cases on a *pro bono and contingency fee recovery* basis

to support parents.  This is rate is based upon the rate previously awarded to me in this Court for fees earned in a civil rights case.  See, *infra*, ¶10.  I had billed at $425.00 when the case began since the winter of 2014.   Like Mr. Zimring, I took this case as a "fee contingency" case since there is no damage recovery in IDEA cases and an attorney taking this case can recovery only an hourly fee. I made this decision because the importance of the legal issues and the client's needs.

### Hours and Expenses

13.     The document attached to the Petition as Exhibit 4, 6 and 7 are a true and correct summary and compilation of the contemporaneously made time records of myself and Mr. Zimring maintained for services performed in this case for which are ordinarily and customarily billed.  Major categories of the litigation and supporting tasks for each time period are identified in the headings.  These records have already been edited to reduce time entries which seem to me excessive, redundant or inefficient, and in accordance with the exercise of my prudent billing judgment itemized with the time actually spent and the tasks performed.

14.     My co-counsel and I took particular care to assign tasks and not duplicate attorney time on tasks.  My role on the legal team consisted of client advice and counsel regarding the educational civil rights of J.F., factual investigation, legal research, collection, retention and organization of voluminous

educational records, drafting of portions of the due process complaint, drafting of affirmative motions and responses to motions filed by the Defendants.

15.     I attended and assisted my co-counsel at trial and at the mediation. Tasks were managed by division between both counsel including questioning of witnesses, managing the trial briefs, legal issues, document notebooks and appearance of witnesses at trial, reforming our files at the end of the day, tracking the presentation of evidence and ensuring it was available in proper form, providing support as we each managed the questioning and arguments to which each was assigned. It is my opinion this was not duplicative time and to the extent we were both in court at the same time, appropriate and reasonable expenditures of time, and common and customary in our practice generally, and in this legal community. It is time I have billed and have been paid for by fee paying clients.  It was matched by the FCSD which had two attorneys and a representative all the time, managing the records and evidence at trial and before trial.

16.     I also prepared evidence for trial, including lay and expert witness preparation, documentary evidence preparation, and demonstrative evidence used at trial.  I participated in all required educational planning meetings, all statutory required resolution sessions, all court appearances, and mediation that required preparation of both the documents and the clients.

17. In the District Court my co-counsel and I spent time obtaining and

reviewing the administrative record. Early in the case motions were necessary to isolate and properly identify the issues Plaintiff had raised on appeal. As well, because of the failure to FCSD to implement the ALJ's Final Order in a timely fashion, multiple pleadings were necessary to preserve the student's rights, enforce the ALJ's Final Order, and seek an efficient resolution to the case forced upon the student. While the case was pending in District Court, I also appeared at multiple IEP meetings in order to enforce the ALJ's Final Order and secure the implementation of the remedy granted to J.F. Despite efforts to resolve the issues surrounding remedy and compensatory education with FCSD, Plaintiff made very clear their position they did not agree with the ALJ's Order and they would not provide those services ordered by the ALJ. These actions delayed services to the student, increased the number of meetings counsel were required to attend and protracted several issues in the litigation. Several times we sought to settle or remove the compensatory education issues. This time is included in my billing items and is compensable under 20 U.S.C. § 1415(3)(d)(II)(2004)(meeting convened as a result of an of an administrative proceeding or judicial action compensable).

18. In the appeal filed by Plaintiff, we prevailed on every issue raised using an efficient and direct litigation strategy. The District Court's Order sustained in its entirely the ALJ decision and prevailing over the Plaintiff's often unclear or later abandoned attacks on its efficacy.

19.     The decisions on billed time were made at the time it was expended and reviewed at the end of the monthly billing cycle and from time to time, based on the status and needs of the case.  As any fee generation in this case was contingent on prevailing, we managed the tasks of the case carefully, particularly in light of the aggressive trial and case strategies of the FCSD, including several delays in trial that contributed to the time spent.

20.     It is my opinion that the amounts of billable time and expenses described represent a reasonably frugal use of attorney time and expenses, in light of the issues presented in this case, its factual posture, and the results achieved. My co-counsel and I attempted to resolve this matter economically by sending offers of settlement to opposing counsel several times.  Further, we only filed necessary papers in the administrative court and avoided cumulative and redundant presentation of evidence at the five-day hearing.

21.     Costs incurred included travel to trial, copying, witness subpoena fees, parking costs, transcription, printing fees for the evidence as required.  The Georgia administrative rules and OSAH court requires that document notebooks be produced with an original and 3 additional sets or copies, that these be handled, bates stamped or numbered and exchanged with sets for the witnesses and the court, and the other party.  This comes at a considerable cost given the voluminous records that are involved in such hearings

## Conclusion

21.    I have examined the case files and the hourly time records compiled in this matter against the background of the applicable standards for determination of a reasonable attorneys' fee under 42 U.S.C. § 1988. Consistent with the "lodestar" framework for analyzing attorneys' fees claims; the information contained herein and those expressed by Mr. Zimring in his declaration, I believe, establishes the reasonableness of the fees and expenses sought.  The opinions expressed in this affidavit are made in accordance with the standards currently applied under 42 U.S.C. § 1988.

21.    Following *Norman*, we have divided this time up into significant stages of the litigation.  My review of the time based upon these stages reinforces my conclusion that the time sought was reasonable and necessary.

22.    I, along with Mr. Zimring, seek the time and fees and costs, only after the exercise of billing judgment related to our substantial prevailing party status, based on the lodestar as follows:

|  | GOODMARK LAW FIRM | ZIMRING LAW FIRM | TOTAL |
|---|---|---|---|
| OSAH Due Process Hearing | 401.4 | 246.25 |  |
| FCSD Appeal in USDC | 267.4 | 259.45 |  |
| TOTAL HOURS | 668.8 | 505.60 |  |
| RATE | $450 | $550 |  |
| TOTAL FEE EARNED | $300,960 | $278,080 |  |
| LESS 5% FOR REASONABLENESS | $15,048 | $13,904.00 |  |
| TOTAL FEES SOUGHT | $285,912 | $ 264,176.00 | $550,088.00 |

**GOODMARK LAW FIRM/ZIMRING LAW FIRM**
**NON-BILL OF COST EXPENSES**

|  | GOODMARK LAW FIRM | ZIMRING LAW FIRM | TOTAL |
|---|---|---|---|
| COPIES | 0 | 716.40 | 716.40 |
| PARKING | 80 | 80 | 160 |
| POSTAGE/COURIER |  | 87.16 | 87.16 |
| TOTAL |  |  | 963.56 |

This Declaration is provided pursuant to the laws of the United States, and I so declare based upon the pains and penalty of perjury. *See* 28 U.S.C. Sec. 1746.

DATED: This the 6th day of July, 2021.

_____
Craig Goodmark
GA Bar No. 301428

**EXHIBIT 4**

| Date | Status | Approval | Duration | |
|------|--------|----------|----------|---|
| | | **J.F. v. FCSD -- CLG BILLING ENTRIES THROUGH 3/30/20** | | |
| | | | | |
| | **PREFILING TIME** | | | |
| 10-04-2018 | Approved | | 3.500 | NC |
| | Review client docs; email to client re: MDR; research LRE issues; request timeline from client. | | | |
| 10-08-2018 | Approved | | 1.000 | NC |
| | Call/email to client re: upcoming IEP meeting; review SBG FBA; call to Jerun. | | | |
| 10-10-2018 | Approved | | 1.000 | NC |
| | Prepare client for IEP meeting. | | | |
| 10-25-2018 | Approved | | 0.800 | NC |
| | Emails from client re: IEP; review IEP and eligibility. | | | |
| 10-26-2018 | Approved | | 1.500 | NC |
| | Review new IEP; evals; begin drafting demand letter. | | | |
| 11-15-2018 | Approved | | 2.000 | NC |
| | Begin draft demand; call to client; review IEP's and corresp. | | | |
| | ***NOVEMBER 2018- FEBRUARY 2019 DRAFT DUE PROCESS/ERS/ PREHEARING REPORT*** | | | |
| 11-16-2018 | Approved | | 2.500 | |
| | Begin draft due process. | | | |
| 11-26-2018 | Approved | | 2.000 | |
| | Continue drafting due process. | | | |
| 11-27-2018 | Approved | | 1.500 | |
| | Continue draft DPR; confer counsel re: same. | | | |
| 11-28-2018 | Approved | | 0.500 | |
| | Review new data; call/email to client. | | | |
| 12-03-2018 | Approved | | 2.500 | |

| | | | |
|---|---|---|---|
| | Complete due process draft; confer client re: same. | | |
| 12-04-2018 | Approved | 0.500 | |
| | Email from client re: edits to due process; make edits. | | |
| 12-13-2018 | Approved | 1.000 | |
| | Edit DPR; email to client; review reply. | | |
| 12-14-2018 | Approved | 1.800 | |
| | Finalize and file due process; follow up with GDOE, client. | | |
| 12-21-2018 | Approved | 0.300 | PC |
| | Review PWN from FCSD.  Email to client re: same. (.8) | | |
| 01-03-2019 | Approved | 1.000 | PC |
| | Review due process response; client conference re: same;  contact evaluators re: updated psychological. (1.5) | | |
| 01-04-2019 | Approved | 0.300 | |
| | Email from/to OC re: IRS; confer client and set IRS date/time. | | |
| 01-07-2019 | Approved | 0.700 | |
| | Email to/from client re: IRS; confirm location and email OC.  Continue review evals for FAPE evidence. | | |
| 01-11-2019 | Approved | 0.400 | |
| | Call/email from client re: update from school; confer client on next steps; review IEP. | | |
| 01-14-2019 | Approved | 3.500 | |
| | Prepare for IRS; review DPR; call with client re: same.  Travel to/from IRS (No Charge).  Appear at IRS.  Call/email experts re: next steps.  Email to TW re: docs. | | |
| 01-16-2019 | Approved | 0.500 | |
| | Review notice from GDOE re: mediation; call re: same. Email to OC. | | |
| 01-23-2019 | Approved | 0.800 | |
| | Review notice from OC; confer expert re: LRE issue; call to counsel re: inclusion expert; review records for data. | | |
| 01-24-2019 | Approved | 0.500 | PC |
| | Confer counsel; call to experts; review filing from OC. (1.5) | | |

| 01-28-2019 | Approved | 0.500 | PC |
|---|---|---|---|
| | Confer counsel re: mediation; email to OC re: same. (.8) | | |
| 01-29-2019 | Approved | 0.600 | |
| | Call to client; review email from client; draft email language. | | |
| 01-31-2019 | Approved | 0.800 | |
| | Email to/from OC re: mediation; draft joint status report and send to OC. | | |
| 02-05-2019 | Approved | 0.500 | |
| | File Joint Status report; email SBG, counsel re: next steps. | | |
| 02-06-2019 | Approved | 0.500 | |
| | Meeting with counsel re: experts and inclusion issues. | | |
| | ***TOTAL*** | ***23.200*** | |
| | | | |
| | ***FEBRUARY 2019-MAY 2019*** ***HEARING PREP PART 1*** ***DAY 1 HEARING*** | | |
| 02-07-2019 | Approved | 1.000 | PC |
| | Email from client; request records from FCSD, draft letter to CBC re: records; call to OT re: IEE. (2.0) | | |
| 02-08-2019 | Approved | 0.600 | |
| | Review order from ALJ re: hearing dates; confer counsel re: same. | | |
| 02-12-2019 | Approved | 1.000 | PC |
| | Email to client re: IEE/notice; confer counsel re: hearing issues; review response from CBC re: documents; draft reply and send.  Confer experts re: observations. (1.6) | | |
| 02-14-2019 | Approved | 0.500 | |
| | Emails to OC re: docs, IEP meeting date and reason; follow up on email from counsel. | | |
| 02-18-2019 | Approved | 0.500 | |
| | Email to OC re: IEP, hearing dates, docs; call to counsel; experts re: observations. | | |
| 02-19-2019 | Approved | 0.300 | |
| | Review email from OC; confer counsel; email reply re: IEP dates; email client re: same. | | |

| Date | Status | Hours | |
|---|---|---|---|
| 02-20-2019 | Approved | 1.000 | |
| | Emails to/from OC re: IEP, hearing dates; email to counsel; review response to ORR re: GNETS; email to OSAH re: hearing. Follow up experts. | | |
| 02-21-2019 | Approved | 0.300 | |
| | Review ORR and begin response. | | |
| 02-27-2019 | Approved | 1.000 | |
| | Begin document review; emails to experts; client; review IEE response from OC. | | |
| 02-28-2019 | Approved | 0.800 | |
| | Confer counsel; email to OC re: IEE; follow up. | | |
| 03-05-2019 | Approved | 0.600 | |
| | Call from/to TW re: IEE; follow up email. | | |
| 03-11-2019 | Approved | 1.300 | |
| | Review ORR response; draft letter to FCSD; draft ORR to N. Metro. Confer counsel. | | |
| 03-19-2019 | Approved | 0.800 | |
| | Email from/to OC re: IEE; confer experts re: eval timing; | | |
| 03-22-2019 | Approved | 1.000 | |
| | Emails to client; experts; follow up re: release/evaluation. Confer expert re: same. | | |
| 04-08-2019 | Approved | 0.000 | NC |
| | Confer counsel re: trial prep. (.8) | | |
| 04-11-2019 | Approved | 1.500 | |
| | Hearing prep; review data, call to expert/client; emails to client/experts re: prep. | | |
| 04-12-2019 | Approved | 0.700 | |
| | Call to counsel; email to client re: update and work samples. | | |
| 04-17-2019 | Approved | 1.500 | |
| | Edit motion, subpoena and notice to produce; confer experts, counsel re: reports. | | |
| 04-22-2019 | Approved | 2.500 | |
| | Prepare hearing; call with experts (Whitney, Troutman); draft Notice to Produce; confer counsel re: prep list; | | |
| 04-23-2019 | Approved | 1.500 | PC |

|  |  |  |
|---|---|---|
|  | Continue document collection; review data; confer counsel re: hearing theme.   Call with K Wing re: observation: email from OC re: same. (2.8) |  |
| 04-24-2019 | Approved | 4.200 |
|  | Hearing prep - draft witness list; begin doc list; review IEP timeline; prepare demonstrative draft; review emails re: ORR. witnesses. |  |
| 04-25-2019 | Approved | 8.000 |
|  | Assembly document notebook; continue review all educational records; confer expert re: vita; review emails re: ORR and documents not produced; call/email to client re: audiological assessment.  Draft witness list; finalize and send to counsel; review edits and send to OC. |  |
| 04-26-2019 | Approved | 5.500 |
|  | Hearing prep - prepare all exhibits for printing; call from expert; review expert report (Whitney). |  |
| 04-29-2019 | Approved | 8.000 |
|  | Hearing prep - continue document notebook assembly; prepare direct outlines (Whitney); confer experts, counsel on issues; draft letter to OC (x2); review order from J. Malahi re: evidence. |  |
| 04-30-2019 | Approved | 6.500 |
|  | Hearing Prep - Begin draft JA direct; meeting with JA; finalize all documents for exchange; review OC docs and doc list: confer counsel re: same. |  |
| 05-01-2019 | Approved | 8.000 |
|  | Hearing prep - draft direct exam Trotman, complete direct JA and TW; continue review records |  |
| 05-02-2019 | Approved | 8.000 |
|  | Hearing Prep; continue review exhibits; prepare examinations.  Call to client re: update. |  |
| 05-03-2019 | Approved | 8.000 |
|  | Review all tasks for trial; continue witness examinations; outline issues for cross examination. |  |
| 05-04-2019 | Approved | 6.000 |
|  | Continue trial preparations; direct/cross examination; trial and issue briefs; research issues related to evidence questions; prepare charts/calendars. |  |
| 05-05-2019 | Approved | 7.000 |
|  | Continue preparation of all cross examinations for witnesses listed by FCSD. Edit direct exam; prepare client testimony. |  |
| 05-06-2019 | Approved | 9.000 |

| | | | |
|---|---|---|---|
| | Final hearing preparation; prepare all examinations; final document review and confer all witnesses re: testimony/obligations. | | |
| 05-07-2019 | Approved | 3.000 | PC |
| | Travel to/from hearing (NC); hearing for J. Ford; meeting with OC/court; follow up with witnesses; confer counsel; reach out to Harold Smith re: facilitator. | | |
| | *TOTAL* | *99.600* | |
| | **MAY 2019 - SEPT 2019** **POST HEARING MEDIATION/** | | |
| 05-08-2019 | Approved | 1.500 | PC |
| | Follow up to hearing; email from/to OC re: SLP; set up SLP evals; confer experts re: hearing postpone; review invoices. (2.5) | | |
| 05-09-2019 | Approved | 2.900 | |
| | Draft settlement proposal; update letters to OC re: spoliation; draft transition memo; email to SLP re: IEE; review IEE form; email to OC. | | |
| 05-10-2019 | Approved | 0.500 | PC |
| | Update and send spoliation notices to FCSS and GNETS. (1.0) | | |
| 05-13-2019 | Approved | 2.000 | |
| | Review settlement; transition proposals.  Edit and update; confer client, counsel re: same;  call to JT re: same.  Exchange proposal with OC; review FCSS proposal.  Draft, edit and file status | | |
| 05-14-2019 | Approved | 0.800 | |
| | Emails from/to OC re: proposals and facilitators.  Confer counsel re: status of proposal; call to client re: same. (1.3) | | |
| 05-16-2019 | Approved | 0.300 | PC |
| | Email reply to SL re: meeting; email to expert; review BIP and 10/18 IEP. (.6) | | |
| 05-17-2019 | Approved | 1.000 | |
| | Secure IEE for SLP; call to SLP, call to client re: same; review IEE notices re: payments. Update experts on case status. | | |
| 05-20-2019 | Approved | 1.300 | |

| Date | Status | Description | Hours | |
|---|---|---|---|---|
| | | Email to expert re: docs/eval; email to client re: same; review SLP reports; confer counsel re: mediation dates and mediator. | | |
| 05-23-2019 | Approved | | 0.300 | |
| | | Review mediation scheduling emails; confer counsel re: same. | | |
| 05-24-2019 | Approved | | 1.000 | |
| | | Continue coordinate meeting/mediation;  email to OC; email to mediator; review placement proposals. Call to client. | | |
| 05-31-2019 | Approved | | 0.500 | |
| | | Email to experts re: mediation/meeting. | | |
| 06-04-2019 | Approved | | 0.500 | PC |
| | | Review behavior data; begin chart. (1.0) | | |
| 06-05-2019 | Approved | | 0.500 | |
| | | Email from/to mediator re: issues for mediation; follow up on invoice from IEE. | | |
| 06-10-2019 | Approved | | 0.500 | |
| | | Review email from OC re: mediation; draft, edit and send reply. | | |
| 06-12-2019 | Approved | | 1.400 | |
| | | Review emails from OC re: mediation payment; draft email reply; draft Status Update for Court. | | |
| 06-14-2019 | Approved | | 1.200 | |
| | | Review response from OC re: mediation; confer counsel and reply re: same.  Confer expert SLP re: eval and findings. | | |
| 06-17-2019 | Approved | | 0.500 | |
| | | Confer counsel; draft status report and file. | | |
| 06-19-2019 | Approved | | 1.500 | |
| | | Mediation prep - call/email to expert; confer counsel re: terms of mediation; review mediator and OC emails re: scope of mediation. | | |
| 06-24-2019 | Approved | | 3.000 | PC |
| | | Mediation prep; opening; offer chart; data from 18-19 (5.0) | | |
| 06-25-2019 | Approved | | 5.500 | |
| | | Travel to and from Mediation (NC); attend mediation at Justice Center of Atlanta. | | |

| | | | |
|---|---|---|---|
| | TOTAL | 26.700 | |
| | | | |
| | **HEARING PREP/HEARING DAY 2** | | |
| 06-25-2019 | Approved | 0.700 | |
| | Draft Status Update; notice of leave; prepare to file. | | |
| 07-03-2019 | Approved | 0.000 | NC |
| | Review order from Court re: hearing; calendar dates; confer witnesses re: same; follow up with CPR re: expert fees. (1.0) | | |
| 07-09-2019 | Approved | 0.400 | |
| | Review order from OSAH; call/email to client re: same; update experts. | | |
| 07-29-2019 | Approved | 2.500 | |
| | Update exhibit list; prepare exhibits; email to counsel re: same; email OC re: new records. | | |
| 07-31-2019 | Approved | 2.800 | |
| | Prepare exhibit notebook for printing; confer JB re: same; email to JAZ; review Cohen eval | | |
| 08-01-2019 | Approved | 2.000 | |
| | Finalize and produce all exhibits; draft letter to OC; file document list with OSAH. | | |
| 08-02-2019 | Approved | 0.800 | |
| | Hearing prep; confer SBG; client; other experts. | | |
| 08-07-2019 | Approved | 1.700 | |
| | Email to experts; confer JAZ re: trial prep; draft Gebser letter to District; review email from OC re: personnel files; | | |
| 08-08-2019 | Approved | 0.800 | |
| | Draft email to AB re: experts; confer JAZ re: IEE and trial prep; call from SLP re: invoice. Begin review Respondent notebook for cross. | | |
| 08-12-2019 | Approved | 0.500 | PC |
| | Edit, finalize and send Gebser notice. (1.0) | | |
| 08-21-2019 | Approved | 2.300 | |
| | Begin draft response to Resp. Motion in Limine; emails to expert; email to OC re: subpoenas. | | |
| 08-23-2019 | Approved | 2.800 | |

CLG BILLING ENTRIES AS OF 3/3/20

| | | | |
|---|---|---|---|
| | Email from OC re: subpoenas; confer counsel re: same; multiple emails re: appearance of witnesses, production of documents; confer experts re: attendance; outline trial prep and update issues memo.   Draft, finalize and send updated subpoena to Dr. Holifield through counsel for | | |
| 08-26-2019 | Approved | 4.000 | |
| | Update trial brief; draft motion in limine; research LRE and Greer; re-draft intro and fact section; add citations.  Call with counsel for BCBA Alexander: confer counsel re: same. | | |
| 08-27-2019 | Approved | 3.500 | |
| | Hearing prep - prepare SLP expert; update direct outline; file subpoena with OSAH; confer client re: update and next steps in prep. | | |
| 08-28-2019 | Approved | 5.000 | |
| | Hearing prep - update demonstrative charts; confer client on prep issues; email/calls with experts on prep/hearing issues.  Email from OC re: out of country witness. | | |
| 08-29-2019 | Approved | 5.000 | |
| | Hearing prep - update direct for BCBA; prep BCBA for trial; update client direct; confer counsel on subpoena issue: review new documents served by counsel for D's. | | |
| 08-30-2019 | Approved | 6.000 | |
| | Hearing prep; continue drafting cross outlines; review document notebook and continue creating trial exhibits. | | |
| 09-01-2019 | Approved | 4.000 | |
| | Trial prep - Continue to prepare cross ex re: Jordan; Knight; review SLP eval, BCBA, data. | | |
| 09-02-2019 | Approved | 8.000 | |
| | Trial prep.  Continue draft/edit motion; prepare cross outlines Jordan; prepare direct Mom. Meeting with client to prepare. | | |
| 09-03-2019 | Approved | 10.000 | |
| | Final hearing prep. Organize all outlines and issue briefs; final review of direct testimony and outlines for cross. | | |
| 09-04-2019 | Approved | 8.500 | PC |
| | Travel to and from hearing (NC); appear at day 2 of hearing. | | |
| | | | |
| | **TOTAL** | **71.300** | |
| | ***SEPTEMBER 2019-NOVEMBER 2019*** | | |

| | **_HEARING DAY 3,4,5_** | | |
|---|---|---|---|
| 09-05-2019 | Approved | 5.000 | PC |
| | Travel to and from OSAH (NC); respond to emergency motion for continuance; follow up with experts, client re: reset; draft Status Report re: update; review Court's order; reset. | | |
| 09-06-2019 | Approved | 1.000 | |
| | Email from/to OC re: update; confer experts re: reset time; draft, edit and file Status Update re: dates for hearing; review email from Court re: same, reply. | | |
| 09-12-2019 | Approved | 1.000 | |
| | Review emails re: expert scheduling; confer counsel re: witness order; call/email client re: | | |
| 09-13-2019 | Approved | 1.500 | |
| | Confer counsel re: GNETS reintegration process; review email from Dr. re: same. | | |
| 09-18-2019 | Approved | 3.000 | |
| | Continue draft cross GNETS employees. | | |
| 09-19-2019 | Approved | 1.500 | |
| | Hearing prep - Draft memo for client re: testimony; | | |
| 09-20-2019 | Approved | 5.000 | |
| | Review all trial materials; prepare and update outlines. | | |
| 09-21-2019 | Approved | 3.000 | |
| | Hearing prep - complete GNETS cross of providers; edit cross of experts. | | |
| 09-23-2019 | Approved | 10.000 | |
| | Pre-hearing prep; complete direct of Mom; cross of all witnesses.  Organize all files for court. | | |
| 09-24-2019 | Approved | 11.000 | |
| | Travel to and from OSAH (NC); Hearing at OSAH - Day 3; prepare for day 4. Follow up and review for day 4. | | |
| 09-25-2019 | Approved | 8.000 | |
| | Hearing Prepare - Beginning of Resp. case. | | |
| 09-26-2019 | Approved | 8.000 | |
| | Travel to and from OSAH (NC); Hearing at OSAH - day 4. Follow up with client and prepare for day 5. | | |
| 09-27-2019 | Approved | 7.500 | |

|  |  |  |  |
|---|---|---|---|
|  | Travel to and from OSAH (NC); Hearing at OSAH - Day 5. |  |  |
|  | TOTAL | 65.500 |  |
|  | **OCTOBER 2019-DECEMBER 2019** |  |  |
|  | **POST HEARING BRIEFING** |  |  |
| 09-30-2019 | Approved | 0.500 |  |
|  | Draft notice to court; confer counsel, expert re: followup. |  |  |
| 10-03-2019 | Approved | 2.300 |  |
|  | Begin prepare records for court reporter; draft and edit motion/notice; confer counsel. |  |  |
| 10-04-2019 | Approved | 2.500 |  |
|  | Edit motion, notice; continue prepare exhibits for court reporter. Confer counsel. File with OSAH. |  |  |
| 10-07-2019 | Approved | 1.500 |  |
|  | Finalize doc preparation for court reporter.   Confer counsel re: issues for post-hearing. |  |  |
| 10-09-2019 | Approved | 1.300 |  |
|  | Draft and edit letter to OC re: IEP; review emails re: same.  Follow up counsel. |  |  |
| 10-10-2019 | Approved | 1.500 |  |
|  | Confer counsel; edit letter to OC; finalize and send to OC. Follow up court reporter re: |  |  |
| 10-14-2019 | Approved | 0.500 |  |
|  | Review email from client with IEP docs; confer counsel; review email reply to client. |  |  |
| 10-15-2019 | Approved | 0.900 |  |
|  | Draft reply re: closing; review emails from client, counsel re: IEP; confer counsel re: response. Follow up. |  |  |
| 10-21-2019 | Approved | 2.600 |  |
|  | Draft letter to OC re: IEP; Bus issue; confer counsel, edit, finalize and send to OC.  Confer client re: same. |  |  |
| 10-22-2019 | Approved | 1.000 | PC |
|  | Review email from OC; draft reply; confer counsel.  Finalize and send. (1.8) |  |  |
| 10-24-2019 | Approved | 0.500 |  |
|  | Email to client re: update; attach correspondence; update counsel. |  |  |

| 10-28-2019 | Approved | 0.400 | |
| | Review email from OC; draft reply; update letter re: bus, finalize and send. | | |
| 11-18-2019 | Approved | 4.500 | |
| | Review Transcript Vol 1 and 2; prepare summary of trascript for FOF. | | |
| 11-19-2019 | Approved | 5.400 | |
| | Review Transcript Vol 3; prepare summary of transcripts for FOF. | | |
| 11-20-2019 | Approved | 6.000 | |
| | Review Transcript Vol. 3/4; prepare summary of transcripts for FOF. | | |
| 11-21-2019 | Approved | 4.500 | |
| | Review transcripts; continue outline FOF. | | |
| 11-22-2019 | Approved | 3.500 | |
| | Continue transcript summary; begin FOF intro. | | |
| 11-25-2019 | Approved | 5.500 | |
| | Begin draft findings of facts. | | |
| 11-26-2019 | Approved | 7.000 | |
| | Continue draft findings of facts | | |
| 11-27-2019 | Approved | 5.000 | |
| | Continue draft findings of facts | | |
| 11-29-2019 | Approved | 4.000 | |
| | Continue findings of facts | | |
| 12-01-2019 | Approved | 3.500 | |
| | Continue draft findings of facts | | |
| 12-02-2019 | Approved | 5.000 | |
| | Continue draft FOF; review research and conclusions draft. | | |
| 12-03-2019 | Approved | 7.500 | |
| | Complete FOF_COL draft; check cites; being edits. | | |
| 12-04-2019 | Approved | 8.000 | |
| | Complete FOF_COL; edit and finalize; prepare to file. | | |
| | TOTAL | 84.900 | |

| Date | Status | Hours | |
|---|---|---|---|
| 01-23-2020 | Approved | 0.700 | |
| | Review order from OSAH; confer counsel re: implementation; email to experts re: order and next | | |
| 01-24-2020 | Approved | 0.400 | PC |
| | Draft email re: Order implementation to OC; confer counsel, client; send. (.7) | | |
| 02-05-2020 | Approved | 0.400 | |
| | Review timing of courts order; email to opposing counsel re: IEP dates, information; update client re: same. | | |
| 02-10-2020 | Approved | 0.800 | |
| | Confer counsel; draft notice re: liability and damages; edit and send to OC. | | |
| 02-11-2020 | Approved | 0.900 | |
| | Review email from OC; review Court order and research on post-decision procedures; confer counsel re: same. Email to experts re: upcoming IEP. | | |
| 02-13-2020 | Approved | 0.800 | |
| | Review email from OC re: placement; confer counsel re: objections to Dolvin; begin response to OC. | | |
| 02-14-2020 | Approved | 1.500 | |
| | Confer client re: placement; emails to experts re: IEP meeting on 2/25; review emails re: IEE issue and determination of payment for IEE participation; draft, edit and send letter to OC re: | | |
| 02-18-2020 | Approved | 0.400 | |
| | Review email from OC; confer counsel re: response to OC. | | |
| 02-19-2020 | Approved | 1.300 | |
| | Review data; email from OC. Draft response to OC re: IEP; emails to experts re: IEP; review replies. Review emails to client re: IEP goals. | | |
| 02-20-2020 | Approved | 1.200 | |
| | Review draft IEP; SLP eval re: services required; confer counsel on IEP prep; continue IEP prep re: issues to be decided: remedy. | | |
| 02-21-2020 | Approved | 1.300 | PC |
| | IEP prep - research attendees, review draft IEP, confer experts re: present levels and G&O's. | | |

| 02-25-2020 | Approved | 7.000 | |
|---|---|---|---|
| | Travel to and from IEP meeting at Dolvin;participate in IEP meeting for Jamir. Follow up with client and counsel following meeting. | | |
| 02-26-2020 | Approved | 1.200 | |
| | IEP follow up; review transition proposals; items outstanding for email to OC; confer counsel and review follow up email. | | |
| 02-27-2020 | Approved | 1.300 | |
| | Review email from OC re: follow up information, documents discussed, BCBA consent.  Confer counsel.  Draft and send email to OC re: proposed SLP/Reading goals. | | |
| 03-02-2020 | Approved | 0.900 | |
| | Confer counsel on IEP followup; draft email to OC re: same; review letter to GNETS.  Confer counsel and client. | | |
| 03-03-2020 | Approved | 0.800 | |
| | Review email from OC; confer counsel, client; draft email response to OC. | | |
| 03-04-2020 | Approved | 0.700 | |
| | Prepare for client call; call client re: meeting prep; email follow up re: proposal. | | |
| 03-09-2020 | Approved | 0.400 | PC |
| | Review email and draft IEP from OC; confer counsel re: same; begin compare draft to proposal. | | |
| 03-10-2020 | Approved | 0.800 | |
| | Email to OC re: draft IEP and eligibility; email to client re: consent forms. | | |
| 03-12-2020 | Approved | 1.200 | |
| | Review consent issue for client re: BCBA; edit and resend to client; email to client re: transition and next steps;  continue compare IEP and prepare response to FCSD re: draft IEP. | | |
| 03-13-2020 | Approved | 1.700 | |
| | Confer client re: consent; draft settlement letter. | | |
| 03-16-2020 | Approved | 1.300 | |
| | Confer counsel re: demand letter; continue draft and edit letter; review counsel edits. | | |
| 03-17-2020 | Approved | 0.400 | |
| | Confer counsel; edit settlement letter; review edits from counsel; prepare to send to OC. (.8) | | |
| 03-18-2020 | Approved | 0.400 | |

CLG BILLING ENTRIES AS OF 3/3/20

| | | | |
|---|---|---|---|
| | Email to client re:settlement; review reply; finalize and prepare to send to OC. | | |
| 03-20-2020 | Approved | 0.500 | |
| | Edit settlement letter; send to OC. | | |
| 03-25-2020 | Approved | 0.400 | |
| | Confer counsel on failure to implement Order; email to client re: same; follow up. | | |
| 03-26-2020 | Approved | 0.700 | |
| | Follow up with client/counsel re: IEP at home; confer client on email to FCSD re: same. | | |
| 03-30-2020 | Approved | 0.800 | |
| | Confer client/counsel re: email/text from FCSD; call to client; follow up. | | |
| | | | |
| | TOTAL | 30.200 | |
| | | | |
| **Matter Total** | | **401.400** | |
| | | | |
| | Note:PC or Partial  Charge identies a reduction from actual time. Such time is not included in summary as to time sought. | | |
| | Note: NC or No Charge is an elimination of time entry or one aspect of the larger time entry. Such time is not included in the summary as to time sought. | | |
| | Note: Time and fee are after initial summary and billable time reductions, but before further 5% reducation for Petitioner purposes. | | |

| Date | Status | Duration |
|------|--------|----------|
| | CLG TIME FROM MARCH 2020 to JUNE 2021 | |
| | | |
| | **MARCH/APRIL 2020 - Post AJL Final Order Tasks; Prepare for fee complaint** | |
| 03-31-2020 | Approved | 0.800 |
| | Confer client on recent update in services; counsel on communication with school; follow up with counsel re: fees. | |
| 04-02-2020 | Approved | 0.300 |
| | Review email from Plaintiff Counsel; confer counsel re: response and update on client; call to client. | |
| 04-03-2020 | Approved | 2.000 |
| | Begin drafting complaint for Fed Ct./Fees.  Confer counsel re: response to email from Plaintiff Counsel re: services, stayput. | |
| 04-03-2020 | Approved | 0.700 |
| | Confer counsel; email to Plaintiff Counsel re: appeal; review email reply and email from counsel. | |
| 04-07-2020 | Approved | 1.300 |
| | Continue draft complaint for fees; review IEP draft, email from Plaintiff Counsel; update memo on objections. | |
| 04-09-2020 | Approved | 3.800 |
| | Draft petition for fees; declaration; email counsel re: experts. | |
| 04-10-2020 | Approved | 0.500 |
| | Continue edit petition/Complaint; email to counsel re: experts; begin organize billing chart. | |
| 04-12-2020 | Approved | 2.000 |
| | Prepare billing summaries; chart; update petition. | |
| 04-13-2020 | Approved | 2.000 |
| | Continue prepare petition; complaint and declarations for fee action. Review edits from counsel. | |
| 04-15-2020 | Approved | 1.500 |
| | Continue edit complaint; research IDEA citations; review email from Plaintiff Counsel; confer counsel re: billing entries.  Begin edit | |
| 04-16-2020 | Approved | 1.500 |
| | Review expert affidavit and confer re: same; edit worksheet for JAZ billing; update Fee Summary; prepare chart of costs; continue edit | |
| 04-16-2020 | Approved | 0.500 |
| | Email to counsel for CBC re: consent; review reply and confer counsel;  email to client re: same. | |
| 04-17-2020 | Approved | 3.800 |
| | Continue drafting/editing complaint for fees.  Confer counsel re: filing tasks. | |
| 04-20-2020 | Approved | 4.000 |
| | Edit all pleadings, petition; edit exhibits and declarations; prepare to file in USDC; file in USDC. | |
| | | TOTAL  24.700 |
| | **April to July 2020**<br>**SERVICE, RESPONSIVE PLEADINGS; MTN. MORE DEFINITE STATEMENTS FILED** | |
| 04-21-2020 | Approved | 0.700 |
| | Edit follow up to CBC counsel; send to CBC counsel. Email to client re: same. | |
| 04-23-2020 | Approved | 0.800 |
| | Review appeal filed by FCSD; email from Plaintiff Counsel; reply to email re: service. | |
| 04-27-2020 | Approved | 0.800 |

| | | |
|---|---|---|
| | Draft notice/waiver; begin draft motion to consolidate/stay. | |
| 04-28-2020 | Approved | 0.500 |
| | Review emails from Plaintiff Counsel re: service; confer counsel re: compulsory claims. | |
| 04-29-2020 | Approved | 1.800 |
| | Draft motions, order; prepare waivers; research on same. | |
| 04-30-2020 | Approved | 1.500 |
| | Edit and finalize consent motions; complete waivers and send to Plaintiff Counsel. | |
| 05-01-2020 | Approved | 0.400 |
| | Finalize all motions; file with USDC; follow up emails with client re: same. | |
| 05-06-2020 | Approved | 3.500 |
| | Draft letter for client to school; begin answer. | |
| 05-07-2020 | Approved | 3.000 |
| | Continue draft answer; confer counsel re: failure to implement; update and send letter to client re: same. | |
| 05-08-2020 | Approved | 1.500 |
| | Continue draft answer.  Emails with client re: data points.  Review counsel email re: same. | |
| 05-11-2020 | Approved | 2.800 |
| | Continue draft answer.  Confer counsel re: allegations in complaint; review email from client re: support for assessment; followup. | |
| 05-13-2020 | Approved | 3.500 |
| | Continue draft answer; confer JAZ re: same; review cases on GNETS ADA claims, confer counsel re: answer and counterclaims. | |
| 05-14-2020 | Approved | 2.500 |
| | Begin draft counterclaim; edit answer; review/edit motion from counsel. | |
| 05-15-2020 | Approved | 3.500 |
| | Continue draft/edit counterclaims on ADA/Failure to implement.  Review stat language from JAZ; insert and edit. | |
| 05-18-2020 | Approved | 1.500 |
| | Continue draft and edit counterclaim/answer. | |
| 05-18-2020 | Approved | 1.000 |
| | Email from client/experts re: ESY issues; contact client re: same; follow up with counsel on moving ahead with ESY. | |
| 05-21-2020 | Approved | 1.200 |
| | Confer counsel re: IEE demand; email from/to client re: ESY; edit letter to Plaintiff Counsel; follow up. | |
| 05-22-2020 | Approved | 0.600 |
| | Review Plaintiff Counsel response to IEE; confer counsel re: same. | |
| 05-26-2020 | Approved | 0.700 |
| | Review emails from Plaintiff Counsel re: ESY; confer counsel re: same; edit email reponse. | |
| 05-29-2020 | Approved | 1.300 |
| | Review email re: ESY; confer client and counsel; counsel client on email response. | |
| 06-01-2020 | Approved | 0.500 |
| | Review email from client re: EYS issues; JAZ followup. | |
| 06-02-2020 | Approved | 1.500 |
| | Call to client re: ESY; confer counsel re: same; counsel client on response to District; review emails re: experts from counsel. | |
| 06-04-2020 | Approved | 0.400 |
| | Review Amended Answer; email from Counsel re: same. | |
| 06-09-2020 | Approved | 0.800 |

| | | |
|---|---|---|
| | Counsel client re: email to District re: ESY; confer counsel re: same; review Amended Complaint filed by Plaintiff Counsel. | |
| 06-10-2020 | Approved | 0.800 |
| | Confer counsel; begin edit Notice; review rule 12(e). | |
| 06-11-2020 | Approved | 2.000 |
| | Edit Notice; draft letter to Plaintiff Counsel; confer client on email to District. | |
| 06-15-2020 | Approved | 0.800 |
| | Review response to Notice from Plaintiff Counsel; email from counsel re: same. | |
| 06-17-2020 | Approved | 1.500 |
| | Letter to Plaintiff Counsel re: demand for comp ed and IEP/ESY issues. | |
| 06-22-2020 | Approved | 2.400 |
| | Draft and edit answer to Amended Complaint; confer counsel re: same. | |
| 07-01-2020 | Approved | 0.300 |
| | Confer client; counsel re: summer and start of school. | |
| 07-20-2020 | Approved | 0.800 |
| | Review P's motion for more def. statement; confer counsel; outline response; review FRCP 10. | |
| 07-21-2020 | Approved | 1.800 |
| | Continue drafting response to motion. | |
| 07-22-2020 | Approved | 2.000 |
| | Continue draft/edit motion response. | |
| 07-23-2020 | Approved | 2.700 |
| | Continue edit brief; research Rule 10(c) and check cites for JAZ.  Reorganize last section and proof read. | |
| 07-27-2020 | Approved | 0.800 |
| | Call with client; review email from FCSD; email to client re: same. | |
| 07-27-2020 | Approved | 0.400 |
| | Finalize motion response; file. | |
| | | TOTAL  52.600 |
| | **JULY 2020 to September 2020: Early Case Development**<br>**Motion Consolidate/Answer/CounterClaim; Amended Complaint; Resp. P Mtn for More Def. Stmt.** | |
| 07-28-2020 | Approved | 0.300 |
| | Edit client email; reply to client re: same. | |
| 08-04-2020 | Approved | 1.300 |
| | Review email from District; call to/from client re: same; counsel client on response email. | |
| 08-17-2020 | Approved | 3.500 |
| | Draft multiple Gebser notices; confer client on start of school, no services; counsel client.  Email to/from Plaintiff Counsel re: | |
| 08-18-2020 | Approved | 2.000 |
| | Confer client; draft email to Plaintiff Counsel re: no services; counsel client on transfer and access services. | |
| 08-24-2020 | Approved | 0.300 |
| | Review letter from Plaintiff Counsel re: Gebser; confer counsel, client re: same and school update. | |
| 09-08-2020 | Approved | 4.500 |
| | Begin draft MJP; research motion; review record and facts; review claims; begin drafting fact section. | |
| 09-09-2020 | Approved | 3.500 |
| | Continue drafting MJP - complete fact section and begin outline argument. | |

| 09-14-2020 | Approved | 2.500 |
| | Continue draft SUMF; SJ brief; edit letter to Hooks; finalize and send. | |
| 09-15-2020 | Approved | 1.800 |
| | Research Rule 16/26 issues; draft and edit JPPR; confer counsel re: same; email from/to client re: upcoming IEP meeting. | |
| 09-16-2020 | Approved | 4.300 |
| | Drafting facts for motion; review record/transcripts; prepare timeline for counsel on proposals. | |
| 09-17-2020 | Approved | 6.500 |
| | Continue drafting MSJ; SUMF; affidavits; research citations; complete cross cites. | |
| 09-18-2020 | Approved | 4.300 |
| | Continue draft motion to enforce IDEA Placement; prepare timeline summary of correspondence; confer client on FCSD emails. | |
| 09-21-2020 | Approved | 1.500 |
| | Continue IEP prep; confer counsel re: BCBA consent issue; draft email to CBC counsel re: same, review reply from Hooks. | |
| 09-22-2020 | Approved | 6.000 |
| | Complete draft of motion/brief for Stayput; confer counsel on evidence; update brief with all citations; draft and edit declarations. | |
| 09-23-2020 | Approved | 4.500 |
| | Continue review and edit brief; prepare index of exhibits; exhibits; review materials for IEP meeting.  finalize all dPlaintiff Counsels and file | |
| 09-24-2020 | Approved | 5.500 |
| | Prepare for and attend IEP meeting for JF. | |
| 09-25-2020 | Approved | 0.700 |
| | Confer counsel; prepare notes of IEP tasks/promises. | |
| | | TOTAL  53.000 |

<div style="background-color: yellow">

**SEPTEMBER 2020 to January 2021 - MID CASE WORK AND READY CASE FOR RESOLUTION**
**Motion to Enforce Stay Put; D's Motion for Judgment on the Record**

</div>

| 09-29-2020 | Approved | 0.500 |
| | Review and edit motion for more pages; research IPlaintiff Counselal rules; appellate rules; email to counsel re: same. | |
| 10-01-2020 | Approved | 3.500 |
| | Continue draft/edit fact in support of MtnRecord. | |
| 10-06-2020 | Approved | 2.500 |
| | Cite check SOF; begin edit brief for MJR; confer OSAH re: record transfer; follow up. | |
| 10-07-2020 | Approved | 2.000 |
| | Edit MJR brief; confer counsel re: page extension; add citations. | |
| 10-08-2020 | Approved | 2.500 |
| | Continue edit/cut MJR brief; confer counsel re: same. | |
| 10-09-2020 | Approved | 1.800 |
| | Finalize motion and file; counsel client re: comp ed issue; review email from OSAH. Email to OSAH with exhibits. | |
| 10-12-2020 | Approved | 1.300 |
| | Continue edit brief; complete citations. | |
| 10-16-2020 | Approved | 1.500 |
| | Edit and draft reply ISO StayPut motion | |
| 10-19-2020 | Approved | 1.800 |
| | Continue edit/draft StayPut Reply. | |
| 10-20-2020 | Approved | 5.000 |

|  |  |  |
|---|---|---|
|  | Continue drafting reply StayPut Mtn; confer counsel; edit graphic. |  |
| 10-21-2020 | Approved | 1.500 |
|  | Prepare all exhibits for reply; finalize brief, edit and file. |  |
| 10-22-2020 | Approved | 1.300 |
|  | Draft letter to Plaintiff Counsel re: comp ed. |  |
| 10-28-2020 | Approved | 1.000 |
|  | Confer counsel; email re: page extension; draft stipulations. |  |
| 10-29-2020 | Approved | 1.400 |
|  | Draft motion to exceed pages; confer counsel; review edits to SUMF. Finalize letter re: IEE; send to Plaintiff Counsel. |  |
| 11-03-2020 | Approved | 0.300 |
|  | Finalize letter to Plaintiff Counsel re: Comp Ed; send to Plaintiff Counsel. |  |
| 11-04-2020 | Approved | 2.500 |
|  | Convert cites to docket record for SUMF (3.5) |  |
| 11-05-2020 | Approved | 3.200 |
|  | Continue edit/draft SUMF; add citations; update brief. |  |
| 11-10-2020 | Approved | 4.500 |
|  | Convert ALJ's citations to cites to record on appeal (5.5). |  |
| 11-12-2020 | Approved | 1.100 |
|  | Review email from Plaintiff Counsel re: comp ed; prepare response re: comp ed. Finalize and send to Plaintiff Counsel. |  |
| 11-18-2020 | Approved | 1.200 |
|  | Review reply brief; confer counsel re: progress report; email to client re: conference on comp ed. |  |
| 11-20-2020 | Approved | 1.300 |
|  | Call with client; confer counsel; draft and edit letter to Plaintiff Counsel re: comp ed; email to Plaintiff Counsel re: same. |  |
| 11-23-2020 | Approved | 0.500 |
|  | Edit letter to Plaintiff Counsel; finalize letter and send. |  |
| 11-24-2020 | Approved | 2.500 |
|  | Continue edit MJOTR brief; update cites to dPlaintiff Counselket record. |  |
| 12-07-2020 | Approved | 1.800 |
|  | Draft response to Lewis re: comp ed; confer counsel re: same. |  |
| 12-08-2020 | Approved | 0.500 |
|  | Confer counsel; review edits to letter re: comp ed demand; email final letter to Plaintiff Counsel. |  |
| 01-08-2021 | Approved | 0.500 |
|  | Review and respond to email from Plaintiff Counsel re: IEP meeting; confer counsel re: same. |  |
| 01-19-2021 | Approved | 2.300 |
|  | Review and final edit MJOTR and brief; prepare all filings; file. |  |
|  |  | TOTAL 49.800 |

| **January 2021 to March 2021: MOVING CASE TO FINAL JUDGMENT** |
|---|
| **Cross Motions for Judgment on the Record; All Briefing on Motions** |

|  |  |  |
|---|---|---|
| 01-26-2021 | Approved | 2.300 |
|  | Confer counsel re: emergency notice; draft facts and argument; research SUMF and IDEA MJOTR. |  |
| 02-02-2021 | Approved | 1.500 |

| | | |
|---|---|---|
| | Review comments from counsel; draft and edit response to Emergency Notice (.8); begin review of P's MJOTR. | |
| 02-02-2021 | Approved | 0.300 |
| | Review P's Response to D's MJOTR; email counsel re: same. | |
| 02-07-2021 | Approved | 1.500 |
| | Draft motion for extension; email to counsel. | |
| 02-08-2021 | Approved | 0.700 |
| | Confer counsel on task division of responses; email to Plaintiff Counsel re: extension to respond; consolidation. | |
| 02-09-2021 | Approved | 1.400 |
| | Call with client re: IEP; email from Plaintiff Counsel re: extension; confer counsel re: same; email to Plaintiff Counsel re: documents for IEP | |
| 02-10-2021 | Approved | 1.800 |
| | Confer counsel re: Extension, response/reply, begin drafting fact section; review Plaintiff Counsel response to motion. | |
| 02-11-2021 | Approved | 3.000 |
| | Continue draft response/reply. | |
| 02-12-2021 | Approved | 3.500 |
| | Continue drafting response to MJOTR (facts section). | |
| 02-15-2021 | Approved | 0.800 |
| | Continue draft facts portion of response/reply; confer counsel re: same. | |
| 02-17-2021 | Approved | 2.400 |
| | Continue drafting statement of facts; confer counsel; review hearing transcripts for citations. | |
| 02-18-2021 | Approved | 0.800 |
| | Review email from Plaintiff Counsel re: comp ed; prepare offer chart and email to counsel re: counterproposal. | |
| 02-18-2021 | Approved | 1.500 |
| | Continue drafting/editing facts portion of briefs. | |
| 02-22-2021 | Approved | 3.200 |
| | Continue draft facts for response brief.  Confer counsel re: IEP meeting; review draft agenda and comp ed proposals.  Email to client re: | |
| 02-23-2021 | Approved | 1.500 |
| | Prepare outline for briefs; draft response to Plaintiff Counsel re: comp ed; IEP issues. | |
| 02-24-2021 | Approved | 4.500 |
| | Prepare for and appear at IEP meeting with client re: compensatory and implementation of required services. | |
| 02-25-2021 | Approved | 2.000 |
| | Continue draft reply (progress on goals). | |
| 02-26-2021 | Approved | 1.500 |
| | Continue drafting reply (begin LRE section) | |
| 03-01-2021 | Approved | 2.500 |
| | Continue draft reply brief on MJOTR (Harm, Placement) | |
| 03-03-2021 | Approved | 2.500 |
| | Continue draft reply (remedy section). | |
| 03-04-2021 | Approved | 3.500 |
| | Continue drafting reply; begin draft response insert (placement). | |
| 03-05-2021 | Approved | 6.000 |
| | Continue draft reply/response, edit sections. | |
| 03-08-2021 | Approved | 7.000 |

| | | |
|---|---|---:|
| | Continue draft and edit reply and response briefs; confer counsel; research LRE cases; update. | |
| 03-09-2021 | Approved | 7.500 |
| | Edit and finalize response and reply briefs; file. | |
| | TOTAL | 63.200 |
| | **April 2021 to June 2021**<br>**Obtaining Relief And Post Judgment Fees/Costs** | |
| 04-26-2021 | Approved | 0.800 |
| | Confer client on ESY issues; review email to District re: same. | |
| 05-03-2021 | Approved | 1.000 |
| | Email to Plaintiff Counsel re: ESY and IEP issues; confer counsel re: same; email to client on availability. | |
| 05-20-2021 | Approved | 1.500 |
| | Confer counsel; review eligibility dPlaintiff Counsels; draft email to Plaintiff Counsel re: comp ed; review parent concerns. | |
| 05-24-2021 | Approved | 1.500 |
| | Review eval/elig/draft IEP; prepare for client call. Call with client re: IEP. | |
| 05-25-2021 | Approved | 7.000 |
| | Prepare for and attend IEP meeting for JF. | |
| 06-03-2021 | Approved | 1.300 |
| | Edit IEE request; confer client on Eligibility; Order from J. Ross | |
| 06-08-2021 | Approved | 2.300 |
| | Confer counsel; research and draft motion for fees; email to client re: ESY/IEE; draft response to Plaintiff Counsel re: ESY. | |
| 06-08-2021 | Approved | 1.000 |
| | Review prior filings re: fees (see March/April 2020 billing); determine procedures and filings; prepare edits to prior filings; draft fee motion | |
| 06-09-2021 | Approved | 1.800 |
| | Continue drafting/editing motions; finalize all motions, file in USDC. | |
| 06-14-2021 | Approved | 1.500 |
| | Confer counsel re: global resolution; prepare chart of terms; confer client, counsel re: same; finalize chart and sent to Plaintiff Counsel. | |
| 06-22-2021 | Approved | 1.000 |
| | Confer counsel re: fee petition; email to experts re: same; research timing of petition filing. | |
| 06-23-2021 | Approved | 1.500 |
| | Confer counsel on fee petition; call with experts on fee petition; research declarations for experts, edit same. | |
| 06-24-2021 | Approved | 1.900 |
| | Draft, edit declarations for fee petition, get feedback from counsel re: petition. | |
| | TOTAL | 24.100 |
| | | |
| | TOTAL FOR ALL TIME FROM MARCH 31 to JUNE 28 | 267.400 |

| | |
|---|---|
| **FULTON COUNTY SCHOOL DISTRICT,** *Plaintiff,* **v.** **J.F., by and through J.A., and J.A.,** *Defendants.* | **CIVIL ACTION** **FILE NO. 1:20-cv-1675-ELR** |

## DECLARATION OF JONATHAN A. ZIMRING, ESQ.

I, JONATHAN A. ZIMRING, Esq., being duly sworn depose and declare:

## A. BACKGROUND AND EXPERIENCE

1.     I am an adult resident of the State of Georgia. My business address is the Zimring Law Firm, LLC, 1425A Dutch Valley Place, Atlanta, Georgia, 30324. This declaration is based on my own personal knowledge and offered in support of the Defendants' petition for an award of attorney fees and costs.

2.     I am an attorney licensed to practice in the State of Georgia and the focus of my practice and of my firm is special education and related education law issues for children and parents, and occasionally teachers/educators concerning IDEA, Section 504 and the ADA and other civil rights.

3.     I am a 1971 graduate of the State University of New York at Buffalo, summa cum laude, a N.Y. Regents Scholarship recipient, and of Duke

University School of Law class of 1974. I am currently a member of the United States District Courts for the Northern and Middle Districts of Georgia, the Eleventh Circuit Court of Appeals and the United States Supreme Court.  I was admitted to the Bar first in North Carolina and there served as Special Counsel to the Mentally Ill at Dorothea Dix Hospital in Raleigh North Carolina. In 1977 I came to Georgia as director of a program of the American Bar Association Commission on Mental Disability to work with attorneys in representing persons with disability and to work with the Georgia Legal Services Program. I left GLSP in 1983 for private practice, maintaining a practice in education, special education and civil rights.

4.    I am a member and serve on the Board of Directors of the Council of Parent Attorneys and Advocates ("COPAA"), a parents' national trade organization of parents, special education professionals and attorneys. I have presented to their professional training programs on attorney fees and administrative due process hearings and trial practice and federal court litigation in special education. I have presented on special education law and related civil rights claims in Georgia ICLE programs, in Mercer University School of Law and Atlanta Bar programs and in judge and administrative law judge training programs.  This has included the Danforth Lectures to United States District Court judges on educational law. I have presented in CLE to

special education administrative law judges at Seattle University School of Law. I have been chairperson of the State Bar of Georgia School and College Law Section, and (many years ago) chairperson of the ABA YLD Committee on Law and the Handicapped. I have represented the State Bar of Georgia on Georgia legislative study committees on disability law, including committees which redrafted civil commitment and guardianship codes.

5.     In my forty-six (46) years of experience representing children and persons with disabilities, I have litigated a number of cases in Georgia's administrative court and in the federal courts up to and including the United States Supreme Court on special education and disability matters, starting with the first enforcement date of the IDEA (then the EHA) in September 1978, and on attorney fees including in special education matters. These include but are not limited to: *Georgia Ass'n. for Retarded Citizens v. McDaniel,* 516 F.2d 1565 (11th Cir.1983), *vacated and remanded*, 104 S.C.t. 2581 (1984), *on remand* 740 F.2d 902, *cert. denied*, 105 S.Ct. 1228 (1985) (extended school year services for children); *Georgia Conference of Branches of NAACP v. State of Georgia*, class order at 99 F.R.D. 16 (S.D. Ga. 1983), unreported trial court order, *aff'd in part and reversed in part,* 775 F.2nd 1403 (11th Cir. 1985) (inappropriate placement of children of color in special education classes); *Mitten v. Muscogee County School District, et. al.*, 877 F.2d 932 (11th Cir. 1989), *cert. denied*, 493 U.S. 1072

(1990) (independent claim for attorney fees and costs under IDEA for prevailing in administrative hearings); *Walker County School District v. Bennett*, 203 F.3d. 1293 (11th Cir.), *cert denied*, 121 S.Ct. 670 (2000) (procedure for the trial of IDEA cases); *Georgia Department of Education v. Derrick C.*, 314 F.3d 545 (11th Cir. 2002) (provision of services to 3 year old disabled students); *G.J. ex rel E.J. v. Muscogee Cnty Sch. Dist.*, 704 F.Supp. 2d 1299 (M.D. Ga. 2010); *Greer v. Rome City Sch. Dist.*, 762 F. Supp. 936 (N.D. Ga. 1990), *aff'd*, 950 F.2d 688(11th Cir. 1991),*vacated*, 956 F.2d 1025, *reinstated*, 967 F.2d 470 (11th Cir. 1992) (least restrictive environment for students with disabilities); *Loren F. ex rel Fisher v. Atlanta Ind. Sch. System*, 349 F.3d 1309 (11th Cir. 2003); *Swain v. Valdosta City Sch. Dist.*, 2013 U.S. Dist. LEXIS 16355 (M.D. Ga. Feb. 7, 2013)(educator retaliation case under the ADA). Besides *Mitten,* I have litigated EHA/IDEA fees in reported decisions including *Grinsted v. Houston County Sch. Dist.*, 826 F.Supp 482 (M.D. Ga. 1993); *Turton v. Crisp County Sch. Dist.*, 688 F.Supp. 1535 (M.D. Ga 1988), and others.  I have been granted the privilege to participate as attorney for amicus curiae in matters concerning children with disabilities in the United States and Georgia Supreme Courts, and in the Fifth and Eleventh Circuit Court of Appeals. I served as *guardian ad litem* in *Olmstead v. L.C. and E.W. and L.C.  ex rel Zimring,* 527 U.S. 581(1999), which established the definition of disability discrimination under the ADA.

6.    I have filed fee affidavits for other attorneys if asked when I had a relevant opinion, and I have represented attorneys on their fee petitions. I have made an effort to be aware of the rates commonly charged in these and similar matters such as other civil rights cases before OSAH and in this Court.

**B. IDEA AS A SPECIALITY PRACTICE**

7.    Special education cases before OSAH can be particularly challenging for parents' attorneys as many parents do not have adequate financial resources to litigate the cases and usually school districts/Local Educational Agencies ("LEAs") are aware of this imbalance of power and oppose parents and their disabled children vigorously. School districts litigate these cases using public funds and often take an unfortunate approach to the litigation which can expand the cases and on occasion is designed to stress the resources of the family. Some districts such as FCSD in this case, refuse to meaningfully negotiate a resolution of the services, taking the approach that nothing will change unless they are ordered to change. This imbalance also includes that the IDEA fee provision does not allow reimbursement for the costs of expert witnesses whereas such witnesses are readily available to districts with their staff, and here as augmented by the GNET staff. The cases are also difficult as districts such as FCSD here, control much of the evidence and records, but provide it only reluctantly in a "non-discovery" case. Often

the costs of the case outstrip the parents' resources or have to be brought by the attorney on a limited contingency of a fee hour recovery. These cases present a premium on knowledge of the system and process. If the *Johnson* factors apply, this would make these cases for parent attorneys "undesirable."

8.     There is an unfortunate shortage of attorneys able and willing to take special education cases requiring administrative trials and then perhaps appeal *de novo* into district court. There are several special education attorneys who represent parents in meetings but who will <u>not</u> try a case and we constantly get referrals from them. J.A. sought such representation and ultimately was represented by Goodmark on a contingency fee recovery. When the case required a second attorney, I accepted on those terms as well.

9.     Special education cases are a specialty practice.  This includes a detailed precise administrative educational process which touches on many educational and civil rights issues and on the medical, psychiatric, psychological and applied health sciences. The handling of the cases requires experience and expertise, especially without discovery.  I have had many attorneys with civil rights experience decline them and refer them to our firm.

10.    This lack of attorneys for children and parents extends into district court representation on appeal. Parents with child with disabilities often cannot afford the appeal. When, like here, the district appeals, the parent has

no option but to defend her/his hard fought victory or order in federal court while the law puts any recovery of costs, fees, or for service reimbursement on hold until there is a final decision.  These delays in payment are not generally imposed on the school's counsel who usually receive on-going payment.

**C.    FAMILIARITY WITH BILLING AND FEE RATES**

11.    I have managed a small law firm for almost four decades. I have kept abreast of the billing rates prevalent in the metropolitan Atlanta legal community and in special education cases, civil rights cases which have some analogy to these cases and similar rates.

12.    I manage my firm's billing of fees and costs to clients.

13.    We bill and are paid for costs without mark-up on any expense.

**D.    RECORDS RELATED TO THIS REPRESENTATION AND PETITION**

14.    Exhibit 6 is a summary chart with accurate information taken from our records which sets out the fees sought. It separates the time by case, tasks, time, and by attorney and paralegal. The costs are summarized. These are divided into cases by the administrative case and the district court case including the time spent at IEP meetings related to the ALJ judgment.

15.    Exhibit includes a true copy of a summary of all the time this firm expended which is sought on this petition during the <u>administrative hearing</u>

procedure and all of the time expended on the appeal and fees. This was compiled from contemporaneously kept billing records. This time was reviewed by me, and as necessary adjusted to ensure its reasonableness and my "billing judgment." The time sought of case 1 covering fifteen months of mediation, trial preparation, trial, post-trial pleadings and implementation of the Final Order through meetings of 259.45 hours, and then reduced further by 5% was necessary and reasonable under IDEA.

16.    Our client was forced into federal court to defend her/his ALJ victory and for a fee recovery. We made attempts to avoid this and settle the case without success with Fulton County. At each stage of the case we attempted to limit the issues or consolidate the time needed, but we were often unsuccessful. An example in this Court was an attempt to limit the briefing and cross-briefs which Plaintiff rejected and insisted on separate filings on essentially duplicative issues. The time sought is not all the time spent and from beginning to prepare for fee pleadings in the district court as established in *Mitten* by the Eleventh Circuit, and then to defend the ALJ judgment against the District's complaint, and then the amended complaint, was 246.25 hours of my time working co-counsel to Mr. Goodmark and time I consider necessary and reasonable as of the time and on review.

17.    The exhibits are true summaries of all the costs and expenses

sought on this petition. This was taken from contemporaneously kept bills, invoices, and other records.  It is my opinion that these costs are reasonable and compensable in this legal community as reflected in the summaries.  Copy charges are at $ 0.10 a page, rates charged by school districts. The expenses do not include substantial expenses which are not permitted under IDEA including expert witness fees. We made a decision not to seek additional testimony or evidence and therefore streamlined the time and costs of the case.

18.    Addressing the expenses sought, we include costs in copying, witness subpoena fees, parking, transcription, printing fees for the evidence as was required.  The Georgia administrative rules require that document notebooks be produced with an original and 3 additional sets or copies, that these be handled, bates stamped or numbered and exchanged with sets for the witnesses, the court, and the other party. The transcript was of the most relevant IEP meeting and was used at trial.  The more limited district court expenses were reduced by business judgment of avoiding discovery costs and mostly represents necessary copies used in the litigation of the case.  Some of these costs are in the Bill of Costs and not duplicated in the costs sought here.

E.    **APPROPRIATE AND REASONABLE EXPENDITURE OF TIME**

19.    The total time sought in this case is broken down into categories of work for review in Def. Exh. 1 and 2 (Summary Per *Norman*), Exh. 4 (CGL) and

Exh. 6 (JAZ).  We exercised billing judgment, i.e., not all the time spent was billed or billed at the full rate but each bill resulted in reductions of time. In addition, reductions were made in my firm's charges where I believed that my work did not require my level of experience or the skills of an attorney and though meeting and working with co-counsel is generally reasonable and compensable, there are reductions in this time as well. The time sheets reflect NC or PC or Partial Charge or No Charge, respectively, where these occur and the time shown is <u>after</u> this reduction. The decisions on time were made at the time it was expended and reviewed at the end of the monthly billing cycle as with our fee paying clients. We had to carefully manage this time to still perform all necessary tasks, recognizing our obligations in a case on a contingency of prevailing parent status. We had to respond to the aggressive trial and case strategies of the FCSD, and to its delay, which contributed to the time spent, especially before the ALJ. We had to file GORA requests and seek documents from third parties including the GNETS and FCSD private experts which each had separate counsel to obtain records.  We were not permitted access to such persons, nor to any FCSD employee or expert.

20.    In the District Court time was spent obtaining the administrative record and its review, a necessary task, in trying to understand a complaint that was clear and direct as to the alleged error, and in presenting the needs of

the child and parent, as well as of the case. We seek time in the ALJ ordered IEP meetings, which is the IDEA exception to limiting attorney fee reimbursement for such meetings. Several times we sought to settle or remove the compensatory education issues from such IEP meetings, but Fulton County refused to allow this and reset meetings with this at issue, and we include this time as compensable under 20 U.S.C. § 1415(3)(d)(II)(2004) (meeting as a result of an of an administrative or judicial action compensable).

21. Time is sought for a small amount of work of additional attorneys and for a small amount of paralegal services. A paralegal (Ms. Bender or JB) managed some of the documents and files, scheduling and aspects of the production of evidence before OSAH. She worked on creating and finalizing the document notebooks ALJs require. Special education cases produce an enormous load of material and records all at once, as did this case, and require Georgia Open Records Act and document requests under the educational record laws (FERPA, 34 C.F.R. Part 99). The management of these materials, and of the docket, was efficiently done by an experienced paralegal.

22. Ms. Bender has worked at our firm for many years. She is a master's level special educator and has handled client document and school files in hundreds of cases, including preparing for hearings and trial. I have billed Ms. Bender at $ 125.00 an hour for several years, as a very low

community and market rate for an experienced paralegal. This is a rate we charge and receive for her time from fee paying clients. It is a reasonable market rate for the work she performed in this legal community.

23.    An experienced associate, Ms. Debra Haverstick, Esq., worked with me on a division of my tasks, managing subpoenas, pleadings, some research and drafting and responding to specific portions of motions, and specific legal trial preparation. As to the legal work, this was work most efficiently done with the assistance of an experienced associate in IDEA and at a reduced associate rate than requiring me to complete all these same tasks. We bill Ms. Haverstick at $150.00 an hour but to ensure reasonableness I have reduced her time to $125.00 an hour.

24.    I would briefly meet or coordinate with Mr. Craig Goodmark, lead counsel. We have handled a number of cases together and perhaps 15 years ago Mr. Goodmark was an associate in my firm. We divided the tasks and conferred to manage the tasks and ensure that we were prepared, the work was completed and to avoid duplication. This consultation time was regular but it was minimal time and most often was reduced with billing judgment. Tasks were often shared but not duplicated. This might include dividing up the review of records, or drafting or editing discrete portions of pleadings. I have worked with Mr. Goodmark before and we are familiar with each other's

approach to cases and how to avoid unnecessary duplication. When I entered

the case, it was underway so I billed very little time to understand the case,

again avoiding duplication.

25.    There were small issues which we raised but did not win before the

ALJ but which did not impact the overall relief or significantly add to the time.

The significant issues were placement/LRE and missing services for J.F.,

changing the legal relationship between the parties. One issue we did not win

is the procedural claim as to parent participation. Procedural violations of

IDEA are difficult to win but are often subsumed in the evidence of the IEP

and its implementation which has to be presented on the substantive denial of

FAPE. Relief from such participation claims often is not supplemental to the

relief we won, i.e., that FAPE was denied and compensatory services. This

claim was a part of Ms. J.A.'s testimony but there is very little aspect of the

claim that was not otherwise needed on the law or facts for other issues upon

which we prevailed. My time does not include time working on this beyond a

*de minimus* amount, and it is all time subsumed in the factual presentation and

denial of FAPE. I see this as *Hensley/Norman* "overlap" time on winning and

issues which is generally compensable especially where as here we had

significant success. We have reduced time in preparation and at trial on these

issues to ensure all the time sought is compensable, though I had little to no

work on this claim. Thus, the time found in Exhibits 4 (CLG) and 6 (JAZ) is not all the time spent and is the product of billing judgment. In the further exercise of billing judgment, we have further reduced the time by 5%.

26. The time on the appeal in the district court was time spent on which we prevailed on every issue raised, i.e., was a complete victory. We determined that the case tried and the ALJ decision were sufficiently strong to reduce any need to seek additional evidence and framed the case as a pure appeal, seeking deference. We did not seek a redetermination of the parent procedural participation claim as it would not provide additional relief. We completely prevailed in the this Court, sustaining in its entirety the ALJ Final Order over the Plaintiff's often unclear or later lost attacks.

27. We sought by motion interim or additional relief to the compensatory education needs of Jamir when we could not settle or receive these in the IEP meetings following the Plaintiff's failure to implement the ALJ decision. This was within the flow of the case and warranted at the time. This did not delay the motion and briefs for final judgment, and ultimately, the Court moved very quickly in resolving the final judgment and declared this motion moot. I am of the belief that the time was appropriately spent, necessary at the time, not excessive and compensable. We discussed this with

Ms. J.A. and she agreed we should move forward with the motion as it had merit and appeared consistent with the course of the case we presented.

28.    Mr. Goodmark and I assisted each other at trial, at the mediation and on appeal in this Court. In each court we divided the witnesses based on knowledge and experience, and then paired this with a division of the Plaintiff's experts on the same issues, for efficiency. We divided other tasks such as managing trial briefs, legal issues, document notebooks and appearance of witnesses at trial and most important preparing for trial, tracking the presentation of evidence and ensuring it was available in proper form, providing support as we each managed the questioning and arguments to which each was assigned. Though we may have almost always both billed time on an issue or brief, this was not duplicative time and to the extent we were both in court at the same time, such was an appropriate and reasonable expenditure of time, and common and customary generally and in this legal community. It is time we have billed and have been paid for by fee paying clients and by school districts on previous fee claims.  It was matched by the FCSD which had at least two attorneys and a representative all the time at trial. It is common and certainly not excessive to have two attorneys work together in a trial such as in this matter.

29.    When the case came to this Court, we continued to work together but continued to divide the tasks. Members of my firm had no additional role in this Court as there was no direct evidentiary work. It is a common and community practice to have two (or more) attorneys working on a federal court case which is managed through to final judgment, as FCSD had a least three (3) attorneys we had to work with.

30.    Mr. Goodmark and I both attended some but not all of the IEP meetings related to the administrative proceeding/judicial action and seek fees for some of the IEP meeting time, all post-ALJ Order. The initial meeting held as ordered by the ALJ had issues and experts we had each worked with at trial and the scope and range of the meeting ordered made this attendance reasonable. The Plaintiff had not yet filed its complaint but had its primary counsel and a large number of administrators and experts, many we had not seen or meet in the past. This practice of FCSD overstaffing the meetings with multiple administrators continued throughout the spring, and then continued into the meetings on 2020-21. During this time we often had to communicate with more than one FCSD attorney, and the time for meetings which is sought are for meetings in which FCSD provided that the ALJ ordered issues on compensatory education were to be discussed. During this process we sought

to bifurcate this issue or negotiate it outside the meeting, or remove it from the IEP meeting but this was rejected by FCSD attorneys.

31. There are some additional factors to consider in the reasonableness of the time. The case was tried for five (5) days over several weeks. On one occasion – the first setting in May – in a prehearing conference generated by Chief Judge Malahi to discuss settlement and mediation as he called the case for trial, there emerged a stipulation to mediate. This took us from having fully prepped for all initial examinations and opening statements and remaining motions, into a holding pattern and mediation. We had opened this door as we tried to have settlement discussions throughout the case. We had to prep for mediation as we were asked to present a proposal with placement and instructional programs to meet J.F.'s needs, and we had to prepare our client. This mediation was not successful and it was my opinion at the time that it was prudent to seek such a meeting especially as Jamir was to return to FCSD schools. In hindsight, we see FCSD using this to derail the hearing and delay the case. We had made several settlement overtures over the course of months, and I understand that Mr. Goodmark had initiated the case only after an attempt to resolve the dispute. In the spring before the complaint, J.A. had obtained counsel and had a meeting in which she sought to revisit the GNETS placement decision but that was shut down by FCSD's counsel. In deciding on

mediation rather than into trial on the day it was first called in May of 2019, we thought we had been given assurances by FCSD which did not hold. During this time even as the situation shifted, FCSD counsel were aware of our demands, and for more than 2 years, no realistic offers or counteroffers were made which would resolve the GNETS LRE placement issue. In fact, in a way never explained in its complaint, FCSD was still pleading for putting Jamir back in the GNETS in 2020, a cause it had well lost and made no sense. As we compile these materials we are not aware whether the FCSD planned to appeal the Judgment, we have made a proposal on fees and have no response.

32.  The time includes actions necessary to obtain documents under the Georgia Open Records Act, in a case under OSAH Rules without discovery. It includes having to work with adverse or unfriendly separate counsel for the GNETS, and also separate counsel for Dr. Alexander, one of the District's witnesses, so three sets of attorneys. This use of the GORA with government is common and customary in this legal community and is billed as time to fee paying clients.

33.  The ALJ Chief Judge ordered a time consuming process after the hearing of post-hearing briefs cited directly to the transcripts and documents in proposed findings of fact and conclusions of law.  We divided these tasks

without duplication. We had filed a pre-trial brief on the law which readily became the heart of the proposed conclusions of law, reducing that time.

34.     The Final Order required implementation of services for J.F. and an IEP Team meeting to specify services. Our experts had to present their evaluations and proposed services and this required preparation. We had renewed difficulty obtaining FCSD's cooperation. We had to spend time just getting FCSD to the meeting, trying to obtain J.F.'s new school documents, seeking a broader meeting than FCSD would initially allow and then the meeting was contentious. FCSD was ill-prepared for the meeting with little to propose, and on some issues it opposed services it had lost in the Final Order. It brought staff which had inadequate information and some staff claimed they had not been told of our requests for records or shown our proposals or seen the Order.  This misfeasance and other issues meant we did not finish the development of the ordered services and additional implementation tasks were needed. Mr. Goodmark and I divided these tasks before, at and after the meeting as our dual attendance proved necessary.

35.     The time before OSAH and through that first meeting under the order that the ZLF seeks is 259.47 hours, which for 14 months, trial preparation, mediation, trial preparation again four months later, trial, delayed trial, five days of hearings, post-trial pleadings based on a reading of

the thousands of pages of transcripts, and then implementation meetings, is in my opinion reasonable, necessary and compensable in this legal community. It is time that is the product of reductions and billing judgment. It is time we would bill fee paying clients. The overall time sought by Mr. Goodmark I believe is also reasonable, stretching over months, delays from FCSD, and other tasks, including trial and briefing. This is the time and fees sought:

**TIME AND FEE ZLF ADMINISTRATIVE HEARING**

|     | INDIVIDUAL | ADMIN TIME |
|-----|------------|------------|
| DH  | Debbie Haverstick | 11.3 Hours |
| JAZ | Jon Zimring | 242.15 Hours |
| JB  | Jill Bender | 6 Hours |

36.   Proceeding into federal court, the Plaintiff did not give notice that it was going to appeal the case. This contributed to additional uncertainty and time as we had to prepare for it <u>not</u> appealing, a judgment I saw as warranted. Nevertheless, it appealed a day after we filed a *Mitten* complaint on fees. We immediately took action to stay and consolidate these cases.

37.   In this Court, we attempted to streamline and reduce the time and costs of the case. We sought consolidated briefing as the issues on cross-motions would overlap, but we could not get agreement from FCSD. We sought it define its case hoping to narrow the initial Complaint which was just

a broadside calling virtually everything error. The Amended Complaint was filed in response and was an improvement but still approached everything as error. We decided to limit our case and did not seek additional evidence and decided to forego discovery. During the case and the parallel IEP meetings also addressing compensatory services which FCSD called, we continued to try to resolve the issues and to have FCSD initiate the required compensatory education. It failed to do so and the motion on that issue we believed was reasonable and appropriate at the time. Currently FCSD still has not implemented compensatory education as ordered eighteen months ago.

38.    We seek the time in this Court. It is the product of reductions and billing judgment, time we would bill fee paying clients, reasonable and necessary from complaint to judgment in federal court. The time of 267.4 hours sought by Mr. Goodmark I believe is reasonable. I billed 246.25 hours which I also in my opinion reasonable and based on billing judgment.

### F.    APPROPRIATE HOURLY RATE

39.    My hourly rate for this work in special education cases is Five Hundred Fifty ($550.00) Dollars per hour. This is the rate I currently receive from all new fee paying clients for similar work on similar issues as was spent in this case, and it is in the range of rates I apply to *pro bono* fee contingency representation. I had billed at $ 500.00 when the case began since the winter of

2014. I bill some long standing clients at the $ 500 an hour rate if I had

contractually committed to maintain that rate in their matter. I have been

awarded a lower rate in the Middle District of Georgia due to legal rates

available under 20 U.S.C. § 1415(i)(3)(C) providing for the rate from "the

community in which the action or proceeding arose." This case is a "fee

contingency" as there is no damage recovery in IDEA cases and an attorney

taking this case can recovery only an hourly fee. I took this case as a fee award

– *pro bono* case due to the legal issues and their importance, Jamir and J.A.'s

needs, and as Mr. Goodmark sought co-counsel once it was clear he had to

prepare and try the case. Further, the petition reflects that we advance all the

costs, and there is no expert witness recovery except for a subpoena witness

fee, and therefore the attorneys and clients have to bear these costs, though

J.A. was not able to afford such charges.

40.    I understand Mr. Craig Goodmark seeks a current hourly rate at

$450.00 an hour, having started the case in December 2019 at $425.00 an hour.

This is a customary increase and the current rate is a reasonable rate for his

time and work in this legal community based on his skills and experience on

like and similar legal issues and matters.

41.    I find it inappropriate to compare government attorney rates to

representation of parents. *See also e.g. Norman v. Housing Authority of City of*

*Montgomery*, 836 F.2d 1292, 1299-1300 (11th Cir. 1988).

### G. OTHER CONSIDERATIONS

42.    In the exercise of billing judgment and to manage any objection to any individual issue or time entries, we have reduced the fees sought by 5%.

43.    Heeding the admonition for the Supreme Court in *Hensley v. Eckerhart*, we have tried to avoid making the attorney fee recovery a second class or stage of this of litigation.  Our attempts at settling this claim has had no counter or offer from FCSD as I sign this affidavit.

44.    This was hard fought and at times technical litigation. The time spent was in significant part a product of the difficulties and demands of the case but also the litigation approach of the District.

45.    Following *Norman*, we have divided this time up into significant stages of the litigation.  My review of the time based upon these stages reinforces my conclusion that the time sought was reasonable and necessary.

46.  We seek the time and fees only after the exercise of billing judgment related to our substantial prevailing party status, based on the lodestar.

This Declaration is provided pursuant to the laws of the United States, as I so declare based upon the pains and penalty of perjury. *See* 28 U.S.C. Sec. 1746.

Dated: June 30, 2021.                    By: *s/Jonathan A. Zimring*

Jonathan A. Zimring, Esq.
State Bar of Georgia No. 785250